UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CAROL ALVAREZ,

                Plaintiff,                CASE NO.: 1:24-CV-24135-JEM

v.                                    JURY TRIAL DEMANDED

GOAT HOSPITALITY GROUP LLC,
and WGOAT15 LLC,

                Defendants.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CAROL ALVAREZ ("Plaintiff" and/or "Ms. Alvarez"), by and through her undersigned counsel, hereby complains of Defendants, GOAT HOSPITALITY GROUP LLC ("Defendant GHG"), and WGOAT15 LLC ("Defendant WGOAT15"), and alleges as follows:

## INTRODUCTION

1.      This case involves a pregnant female employee who was unlawfully discriminated against and retaliated against by her employer on the basis of her pregnancy and sex.

2.      Ms. Alvarez brings this action against Defendants for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"); the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA"); and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26 ("MDHRO").

## PARTIES

3.      Ms. Alvarez is an individual female residing in Miami-Dade County, Florida.

4.      Defendant GHG is a Florida Limited Liability Company, with its principal place of business located at 485 Brickell Avenue, Floor 49.5, Miami, Florida 33131.

5.      Defendant WGOAT15 is a Delaware Limited Liability Company, with its principal place of business located at 485 Brickell Avenue, 15th Floor, Miami, Florida 33131.

6.      At all relevant times, Defendant GHG and Defendant WGOAT15 were Ms. Alvarez's sole and/or joint employer.

7.      Defendant GHG and Defendant WGOAT15 collectively exercised shared authority and control over the terms and conditions of Ms. Alvarez's employment, including hiring, firing, and work assignments.

8.      By means of example, Ms. Alvarez's payroll was administered by Defendant WGOAT15, while Defendant GHG's management was directly and actively involved in the events surrounding Ms. Alvarez's complaints of unlawful discrimination, even issuing her FMLA paperwork that identified her employer as "GOAT Hospitality Group."

9.      Defendants' interrelated operations, centralized management, and economic dependence on their combined businesses make them collectively liable for the unlawful conduct to which Ms. Alvarez was subjected.

10.     Defendants solely and/or jointly employed at least fifteen (15) employees or more for the applicable statutory period, which is sufficient to meet the numerosity requirements under Title VII, the PWFA, the FCRA, and the MDHRO.

11.     At all relevant times, Defendants employed Ms. Alvarez at their Miami restaurant known as "ADDiKT", located at 485 Brickell Avenue, Miami, Florida 33131.

12.     At all relevant times, Ms. Alvarez was a "qualified employee" within the meaning of 42 U.S.C. § 2000gg(6).

13.     At all relevant times, Defendants were an "employer" within the meaning of 42 U.S.C. § 2000e(b), and § 11A-25 of the MDHRO.

14.     At all relevant times, Defendants were a "covered entity" within the meaning of 42 U.S.C. § 2000gg(2).

15.     At all relevant times, Defendants were a "person" within the meaning of § 760.02(6), Florida Statutes, and an "employer" within the meaning of § 760.02(7), Florida Statutes.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f), and 29 U.S.C. § 2000gg-2(a).

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida. The Defendants were and are still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

18.     Ms. Alvarez has complied with all administrative requirements to file this action.

19.     On April 16, 2024, Ms. Alvarez timely dual-filed a charge of discrimination against Defendant GHG (Charge No.: 510-2024-06393) with the Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

20.     On April 16, 2024, Ms. Alvarez timely dual-filed a charge of discrimination against Defendant WGOAT15 (Charge No.: 510-2024-06394) with the Equal Employment Opportunity

Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), and the Miami-Dade Commission on Human Rights ("MDCHR").

21.     On or about July 26, 2024, the EEOC issued Ms. Alvarez a Notice of Right to Sue.

22.     On or about October 15, 2024, the MDCHR issued Ms. Alvarez a Notice of Right to Sue.

23.     Ms. Alvarez is timely commencing this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue and the MDCHR's Notice of Right to Sue.

24.     Ms. Alvarez is timely commencing this action more than one-hundred eighty (180) days following the filing of her charge of discrimination.

## FACTUAL ALLEGATIONS

25.     At all times material, Ms. Alvarez was an individual pregnant female and was therefore a protected class member.

26.     In or around September 2023, Ms. Alvarez was hired by Defendants as a Line Cook.

27.     At all times material, Ms. Alvarez was considered an exemplary employee and had a history of positive performance.

28.     Approximately one month after the start of her employment, Ms. Alvarez learned that she was pregnant.

29.     At all relevant times, Ms. Alvarez experienced significant physical impairments and limitations related to her pregnancy, including but not limited to, persistent fatigue, frequent nausea, episodes of lightheadedness, difficulty standing for prolonged periods, and an inability to perform heavy lifting, among others. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

30.    Despite pregnancy-related medical conditions, Ms. Alvarez was able to perform the essential functions of her job with reasonable accommodations. Ms. Alvarez was considered an exemplary employee and had a history of positive job performance.

31.    Ms. Alvarez informed Richard Fuentes ("Fuentes"), an individual male who was employed by Defendants as Chef Coordinator, and Maximilliano Carvallo ("Carvallo"), an individual male who was employed by Defendants as Executive Chef of her pregnancy.

32.    At all times material, Fuentes and Carvallo held supervisory authority over Ms. Alvarez, including the power to hire, fire, demote, and promote Ms. Alvarez.

33.    Rather than celebrating Ms. Alvarez's pregnancy, Fuentes and Carvallo reacted angrily toward her. Fuentes and Carvallo accused Ms. Alvarez of lying during her hiring process, claiming that Ms. Alvarez had concealed her pregnancy to obtain her position with Defendants.

34.    Fuentes' and Carvallo's response made Ms. Alvarez extremely uncomfortable and felt she was being demeaned solely for her pregnancy.

35.    Almost immediately after learning of her pregnancy, Carvallo drastically cut Ms. Alvarez's scheduled work hours, which, in turn, substantially reduced Ms. Alvarez's pay.

36.    Carvallo also engaged in sexually harassing conduct towards Ms. Alvarez on the basis of her gender, often asking Ms. Alvarez if she was in a relationship, as well as making inappropriate comments such as, "Massage that chicken like you massage your Cuban husband" and "You put makeup on your face so you should put it on your ass too."

37.    In or around November of 2023, Ms. Alvarez reported Fuentes and Carvallo's discriminatory conduct to Eric Garcia ("Garcia"), an individual male who was employed by Defendants as Human Resources Manager. At all times material, Garcia held supervisory authority over Ms. Alvarez, including the power to hire, fire, demote, and promote Ms. Alvarez.

38.     In response, Garcia informed Ms. Alvarez that he would look into the issues she reported.

39.     Several weeks later, Fuentes and Carvallo stopped working for Defendants. Ms. Alvarez was not aware whether Fuentes and Carvallo's departures were related to her complaints but was nonetheless relieved by the news.

40.     After Fuentes and Carvallo's departures, Ms. Alvarez began to be supervised by Abelardo 'Tito' Vargas ("Vargas"), an individual male who was employed by Defendants as Executive Chef. At all times material, Vargas held supervisory authority over Ms. Alvarez, including the power to hire, fire, demote, and promote Ms. Alvarez.

41.     Shortly after assuming supervision over Ms. Alvarez, Vargas began exhibiting discriminatory conduct directed at Ms. Alvarez because of her pregnancy and associated medical needs.

42.     During her employment, Ms. Alvarez repeatedly sought reasonable accommodations due to her pregnancy-related conditions, which included adjusting her work schedule to permit a meal break, allowing sufficient restroom breaks, and excusing her from heavy-lifting tasks her doctor had advised against.

43.     Defendants failed to reasonably accommodate Ms. Alvarez' pregnancy-related medical conditions without justification and blatantly disregarded her protected rights.

44.     By means of example, when Ms. Alvarez informed Vargas she needed more frequent restroom access for medical reasons, he persistently denied her the necessary time away from the kitchen to use the facilities.

45.     On one occasion, when Ms. Alvarez arranged coverage with a coworker so she could quickly tend to her pregnancy-related restroom need, Vargas called her cell phone and

demanded that she return immediately. Even after she explained that her duties were covered for that brief period, Vargas stated he "did not know if it was covered" and ordered her back to the kitchen at once

46.     Vargas went so far as to impose an unreasonable requirement that Ms. Alvarez seek his explicit permission every single time she needed to use the restroom, effectively denying her the most basic pregnancy accommodation she had requested.

47.     Likewise, Ms. Alvarez required periodic meal breaks due to her pregnancy, yet Vargas routinely denied her the opportunity to eat. On the rare occasions he allowed her to have a brief meal, Vargas subjected Ms. Alvarez to ongoing harassment, telling her she was "paid to work, not paid to eat," and at times yelling at her in a demeaning manner.

48.     Vargas took further steps to ridicule Ms. Alvarez, making comments such as, "Fifty-year-olds take their breaks faster than you," and openly laughing whenever Ms. Alvarez pointed out that her slower pace stemmed from her pregnancy-related limitations.

49.     Because of her pregnancy, Ms. Alvarez requested that she be excused from lifting heavy objects. Instead of accommodating this reasonable request, Vargas flatly dismissed her concerns, stating her pregnancy "meant nothing," and insisting she perform the same strenuous lifting tasks as other employees without limitations.

50.     In or around January 2023, Ms. Alvarez notified Garcia of Vargas's conduct, specifically informing him that she was being compelled to lift weighty items in direct conflict with her medical restrictions.

51.     Shockingly, in response, Garcia agreed with Vargas and informed Ms. Alvarez that she could, in fact, lift heavy objects because she was only seven (7) months pregnant.

52.     Ms. Alvarez was extremely upset at Garcia's response and felt helpless.  Although Ms. Alvarez repeatedly informed Mr. Garcia in writing and verbally that she required limited lifting and scheduled bathroom breaks due to her pregnancy, Defendants never engaged in any interactive dialogue, never offered any alternative, and instead threatened to fire Ms. Alvarez if she could not keep up with the same physical demands.

53.     On or around February 7, 2024, Ms. Alvarez informed Vargas that she was in the hospital because she was experiencing pregnancy-related pain and would miss her work shift that evening.

54.      In response, Vargas demanded documentation from Ms. Alvarez's medical provider and insisted she inform him of any absences two (2) hours prior to the start of her shifts. Ms. Alvarez agreed to produce documentation but explained that she could not control the timing of the pain she was experiencing due to her condition.

55.     Ms. Alvarez's medical provider recommended she take medical leave from February 7, 2024, to February 12, 2024, and Ms. Alvarez informed both Vargas and Garcia accordingly.

56.     On or around February 10, 2024, while Ms. Alvarez remained on authorized medical leave, Vargas demanded to know whether she would still be reporting to work, disregarding her doctor's specific instructions to rest and recover.

57.     By this point, Ms. Alvarez recognized that Defendants' unrelenting hostility and refusal to accommodate her pregnancy rendered her work environment intolerable. Ms. Alvarez concluded that she had no choice but to resign, as remaining under these oppressive conditions threatened her own safety and well-being, and that of her unborn child.

58.     On or around February 11, 2024, Defendants constructively terminated Ms. Alvarez.

59.     The events described above are just some of the examples of unlawful discrimination and retaliation that Defendants subjected Ms. Alvarez to on a continuous and on-going basis throughout her employment.

60.     Defendants unlawfully discriminated against Ms. Alvarez because of her sex and pregnancy.

61.     Defendants failed to reasonably accommodate Ms. Alvarez's pregnancy-related accommodation requests as required by law.

62.     Defendants retaliated against Ms. Alvarez for exercising her leave benefits and for requesting pregnancy-related accommodations.

63.     Defendants violated Title VII, the Pregnant Workers Fairness Act, the Florida Civil Rights Act, and the Miami-Dade County Human Rights Ordinance by subjecting Ms. Alvarez to a hostile work environment, disparate treatment, and retaliation.

64.     Defendants exhibited a continuous practice of discrimination, and Ms. Alvarez therefore makes all claims herein under the continuing violations doctrine.

65.     As a result of the acts and conduct complained herein, Ms. Alvarez has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Alvarez has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Alvarez has further experienced severe emotional and physical distress.

66.     As a result of Defendants' actions, Ms. Alvarez felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

67.     Defendants are liable for violating Ms. Alvarez's personal dignity, and depriving Ms. Alvarez of her civil right to pursue an equal employment opportunity.

## COUNT I
### 42 U.S.C. § 2000e-2
#### *Title VII Discrimination*

68.     Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

69.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

70.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

71.     Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

72.     Ms. Alvarez was a member of multiple protected classes as she was a female and she was pregnant.

73.     Ms. Alvarez was qualified for her position and was pregnant when Defendants constructively terminated her.

74.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

75.     Defendants subjected Ms. Alvarez to discriminatory treatment on the basis of her sex and pregnancy, including but not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

76.     Defendants targeted Ms. Alvarez because of her sex and pregnancy. No similarly situated employees outside of Ms. Alvarez's protected class endured the discriminatory conduct that Ms. Alvarez was forced to endure.

77.     The discriminatory actions of the Defendants against Ms. Alvarez, as described and set forth above, constitute an adverse employment action for the purposes of Title VII.  In subjecting Ms. Alvarez to adverse employment actions, the Defendants intentionally discriminated against Ms. Alvarez with respect to the compensation, terms, conditions, or privileges of her employment.

78.     Even if Defendants could assert legitimate reasons for their adverse actions taken against Ms. Alvarez, her protected class status, at a minimum, was a motivating factor for Defendants' discriminatory conduct and Ms. Alvarez explicitly reserves the right to pursue a mixed-motive theory against Defendants.

79.     As a direct and proximate result of the Defendants' intentional discriminatory conduct in violation of Title VII, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages

80.     Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Alvarez's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

81.     The conduct of the Defendants deprived Ms. Alvarez of her statutory rights guaranteed under Title VII.

82.     Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT II**
**42 U.S.C. § 2000e-3**
***Title VII Retaliation***

83.     Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

84.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

85.     Ms. Alvarez was an individual pregnant female and was therefore a member of a protected class.

86.     Ms. Alvarez was qualified for her position and was pregnant when Defendants constructively terminated her.

87.     Ms. Alvarez engaged in protected activities when she informed Defendants of known limitations due to her pregnancy, requested reasonable accommodations from Defendants on account of her known limitations, and when she opposed Defendants' unlawful discriminatory conduct on account of her sex and pregnancy.

88.     In response to Ms. Alvarez asserting her right to enjoy the same terms and conditions of employment as every other employee, the Defendants retaliated against Ms. Alvarez.

89.     Defendants retaliated against Ms. Alvarez by engaging in conduct including, but not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

90.     Defendants took the above-mentioned materially adverse actions, among others, against Ms. Alvarez because of her protected activities.

91.     Any reasonable employee in Ms. Alvarez's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Alvarez was forced to endure.

92.     Defendants' alleged basis for its adverse employment actions against Ms. Alvarez are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

93.     As a direct and proximate result of the Defendants' retaliatory conduct in violation of Title VII, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

94.     Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Alvarez's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

95.     The conduct of the Defendants deprived Ms. Alvarez of her statutory rights guaranteed under Title VII.

96.     Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT III**
**42 U.S.C. § 2000e-2**
***Title VII Hostile Work Environment***

97.     Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

98.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

14

99.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

100.    Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

101.    Ms. Alvarez was an individual pregnant female and was therefore a member of a protected class.

102.    Ms. Alvarez was qualified for her position and was pregnant when Defendants constructively terminated her.

103.    Defendants' discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected classes believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

104.    Defendants' severe and pervasive conduct included, but was not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez, such as "Massage that chicken like you massage your Cuban husband" and "You put makeup on your face so you should put it on your ass too"; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; failing to treat Ms. Alvarez with basic dignity by denying her access to meal and restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation

requests; coercing Ms. Alvarez to perform physical tasks that posed risks to her pregnancy; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

105.    Defendants targeted Ms. Alvarez because she was a female and because she was pregnant. No similarly situated employees outside of her protected class endured the discriminatory conduct that Ms. Alvarez was forced to endure.

106.    Defendants' discriminatory conduct toward Ms. Alvarez negatively impacted both her professional life and her personal life. Defendants' conduct made Ms. Alvarez feel isolated, embarrassed, and ashamed.

107.    As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of Title VII, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

108.    Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Alvarez' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

109.    The conduct of Defendants deprived Ms. Alvarez of her statutory rights guaranteed under Title VII.

110.    Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

<u>**COUNT IV**</u>
**42 U.S.C. § 2000gg-1**
*PWFA Discrimination*

111.    Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

112.    The PWFA provides that it is unlawful for an employer to not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 2000gg-1(1).

113.    It is also unlawful under the PWFA for an employer to require a qualified employee affected by pregnancy, childbirth, or related medical conditions to accept accommodations that were not arrived at through an interactive process, or to take leave when another reasonable accommodation could be provided. 42 U.S.C. §§ 2000gg-1(2), (4).

114.    The PWFA further provides that it is unlawful for an employer to deny employment opportunities, or to take an adverse action in the terms, conditions, or privileges of employment, against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee. 42 U.S.C. §§ 2000gg-1(3), (5).

115.    A known limitation under the PWFA includes any physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000gg(4).

116.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

117.    Ms. Alvarez was a qualified employee and had known physical impairments and limitations related to her pregnancy including, but not limited to, inability to perform heavy lifting,

the need for more frequent breaks to eat, increased restroom usage, and episodes of intense pain. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

118.   Ms. Alvarez requested reasonable accommodations on account of her pregnancy and pregnancy-related conditions, including but not limited to, restrictions on heavy lifting and physically strenuous tasks, short meal breaks to have sufficient time to eat, restroom breaks to use the bathroom, and short-term leave requests.

119.   Defendants failed to reasonably accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions and failed to engage in an interactive process regarding her accommodation requests.

120.   Defendants further subjected Ms. Alvarez to discriminatory treatment on the basis of her sex and pregnancy including, but not limited to, denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to meal and restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

121.   Defendants targeted Ms. Alvarez because she was pregnant and because of her known limitations related to her pregnancy. No similarly situated employees outside of her protected class endured the discriminatory conduct that Ms. Alvarez was forced to endure.

122.   The discriminatory actions of the Defendants against Ms. Alvarez, as described and set forth above, constitute an adverse employment action for the purposes of the PWFA.  In subjecting Ms. Alvarez to an adverse employment action, the Defendants intentionally

discriminated against Ms. Alvarez with respect to the compensation, terms, conditions, or privileges of her employment.

123.    As a direct and proximate result of the Defendants' intentional discriminatory conduct in violation of the PWFA, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

124.    Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Alvarez's rights under the PWFA, warranting the imposition of punitive damages, in addition to compensatory damages.

125.    The conduct of the Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the PWFA.

126.    Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT V**
**42 U.S.C. § 2000gg-2(f)**
*PWFA Retaliation*

127.    Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

128.    The PWFA prohibits retaliation in any manner against a person who has opposed an unlawful discriminatory practice or act, or who has participated in any investigation, proceeding, or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000gg-2(f)(1).

129.    The PWFA further prohibits an employer from coercing, intimidating, threatening, or interfering with any individual's exercise of any protected rights, or on account of any individual having exercised any protected rights. 42 U.S.C. § 2000gg-2(f)(2).

130.    Ms. Alvarez was a qualified employee and had known physical impairments and limitations related to her pregnancy including, but not limited to, inability to perform heavy lifting, the need for more frequent breaks to eat, increased restroom usage, and episodes of intense pain. These conditions substantially limited her ability to perform major life activities such as standing, walking, and lifting.

131.    Ms. Alvarez engaged in a protected activity under the PWFA when she informed Defendants of known limitations due to her pregnancy, requested reasonable accommodations from Defendants on account of her known limitations, and when she opposed Defendants' unlawful conduct in violation of the PWFA.

132.    In response to Ms. Alvarez asserting her protected rights under the PWFA, Defendants retaliated against Ms. Alvarez.

133.    Defendants retaliated against Ms. Alvarez and interfered with Ms. Alvarez's rights by engaging in conduct including, but not limited to, denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to restroom breaks; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

134.    Defendants took the above-mentioned materially adverse actions, among others, against Ms. Alvarez because of her protected activities.

135.    Any reasonable employee in Ms. Alvarez's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Alvarez was forced to endure.

136.    Defendants' alleged bases for its adverse employment actions against Ms. Alvarez are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

137.    As a direct and proximate result of the Defendants' retaliatory conduct in violation of the PWFA, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

138.    Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Alvarez's rights under the PWFA, warranting the imposition of punitive damages in addition to compensatory damages.

139.    The conduct of the Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the PWFA.

140.    Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT VI
### § 760.10(1), Fla. Stat.
#### *FCRA Discrimination*

141.    Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

142.     The FCRA prohibits employment discrimination against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex, pregnancy, or disability. § 760.10(1)(a), Fla. Stat.

143.     Ms. Alvarez was a member of multiple protected classes under the FCRA, as she was a female and she was pregnant.

144.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

145.     Ms. Alvarez was a qualified individual under the FCRA as she could perform the essential functions of her job with or without reasonable accommodations.

146.     Defendants subjected Ms. Alvarez to discriminatory treatment on the basis of her sex and pregnancy, including but not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

147.     Defendants targeted Ms. Alvarez on the basis of her protected class status. No similarly situated employees outside of her protected class endured the discriminatory conduct that Ms. Alvarez was forced to endure.

148.     The discriminatory actions of the Defendants against Ms. Alvarez, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.  In subjecting

Ms. Alvarez to adverse employment actions, the Defendants intentionally discriminated against Ms. Alvarez with respect to the compensation, terms, conditions, or privileges of her employment.

149.    Even if Defendants could assert legitimate reasons for their adverse actions taken against Ms. Alvarez, her protected class status, at a minimum, was a motivating factor for Defendants' discriminatory conduct and Ms. Alvarez explicitly reserves the right to pursue a mixed-motive theory against Defendants.

150.    As a direct and proximate result of the Defendants' intentional discriminatory conduct in violation of the FCRA, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

151.    Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Alvarez's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

152.    The conduct of the Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the FCRA.

153.    Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT VII**
**§ 760.10(7), Fla. Stat.**
***FCRA Retaliation***

154.    Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

155.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

156.    Ms. Alvarez was a member of multiple protected classes under the FCRA, as she was a female and she was pregnant.

157.    Ms. Alvarez engaged in protected activities under the FCRA when she informed Defendants of known limitations due to her pregnancy, requested reasonable accommodations from Defendants on account of her known limitations, and when she opposed Defendants' discriminatory conduct on account of her sex and pregnancy.

158.    In response to Ms. Alvarez asserting her right to enjoy the same employment benefits as every other employee, the Defendants retaliated against Ms. Alvarez.

159.    Defendants retaliated against Ms. Alvarez by engaging in conduct including, but not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

160.    Defendants took the above-mentioned materially adverse actions, among others, against Ms. Alvarez because of her protected activities.

161.    Defendants' retaliatory actions were causally connected to Ms. Alvarez's protected activities.

162.    Any reasonable employee in Ms. Alvarez's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Alvarez was forced to endure.

163.    Defendants' alleged bases for its adverse employment actions against Ms. Alvarez are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

164.    As a direct and proximate result of the Defendants' retaliatory conduct in violation of the FCRA, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

165.    Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Alvarez's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

166.    The conduct of the Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the FCRA.

167.    Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT VIII
### § 760.10(1), Fla. Stat.
### *FCRA Hostile Work Environment*

168.    Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

169. The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's sex. § 760.10(1), Fla. Stat.

170. Ms. Alvarez was a member of multiple protected classes under the FCRA, as she was a female and she was pregnant.

171. Defendants' discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected classes believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

172. Defendants' severe and pervasive conduct included, but was not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez, such as "Massage that chicken like you massage your Cuban husband" and "You put makeup on your face so you should put it on your ass too"; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; failing to treat Ms. Alvarez with basic dignity by denying her access to meal and restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; coercing Ms. Alvarez to perform physical tasks that posed risks to her pregnancy; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

173. Defendants targeted Ms. Alvarez because of her protected classes. No similarly situated employees outside of her protected classes endured the discriminatory conduct that Ms. Alvarez was forced to endure.

174.    Defendants' discriminatory conduct toward Ms. Alvarez negatively impacted both her professional life and her personal life. Defendants' conduct made Ms. Alvarez feel isolated, embarrassed, and ashamed.

175.    As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the FCRA, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

176.    Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Alvarez' rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

177.    The conduct of Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the FCRA.

178.    Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IX**
**§ 11A-26(1), Code of Miami-Dade County**
***MDHRO Discrimination***

179.    Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

180.    The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any

other matter related to employment because of an individual's sex, or pregnancy Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26.

181.    Ms. Alvarez was a member of multiple protected classes under the MDHRO, as she was a female and she was pregnant.

182.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

183.    Ms. Alvarez was a qualified individual under the MDHRO she could perform the essential functions of her job with or without reasonable accommodations.

184.    Defendants discriminated against Ms. Alvarez on the basis of her sex and pregnancy. This discriminatory conduct included, but was not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

185.    Defendants targeted Ms. Alvarez on the basis of her protected class status. No similarly situated employees outside of her protected classes endured the discriminatory conduct that Ms. Alvarez was forced to endure.

186.    The discriminatory actions of the Defendants against Ms. Alvarez, as described and set forth above, constitute an adverse employment action for purposes of the MDHRO.  In subjecting Ms. Alvarez to adverse employment actions, the Defendants intentionally discriminated

against Ms. Alvarez with respect to the compensation, terms, conditions, or privileges of her employment.

187.    Even if Defendants could assert legitimate reasons for their adverse actions taken against Ms. Alvarez, her protected class status, at a minimum, was a motivating factor for Defendants' discriminatory conduct and Ms. Alvarez explicitly reserves the right to pursue a mixed-motive theory against Defendants.

188.    As a direct and proximate result of the Defendants' intentional discriminatory conduct in violation of the MDHRO, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

189.    Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Alvarez's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

190.    The conduct of the Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the MDHRO.

191.    Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT X
**§ 11A-26(4), Code of Miami-Dade County**
*MDHRO Retaliation*

192.    Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

193.    The MDHRO prohibits retaliation in manner against a person who has opposed a discriminatory practice, or who has testified, assisted, or participated, in any manner in an investigation, proceeding or hearing related to an unlawful discriminatory practice. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(4).

194.    Ms. Alvarez was a member of multiple protected classes under the MDHRO, as she was a female and she was pregnant.

195.    Ms. Alvarez engaged in protected activities under the MDHRO when she informed Defendants of known limitations due to her pregnancy, requested reasonable accommodations from Defendants on account of her known limitations, and when she opposed Defendants' discriminatory conduct on account of her sex and pregnancy.

196.    In response to Ms. Alvarez asserting her right to enjoy the same employment benefits as every other employee, Defendants retaliated against Ms. Alvarez.

197.    Defendants retaliated by engaging in conduct including, but not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; restricting and/or denying Ms. Alvarez's equal access to restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

198.    Defendants took the above-mentioned materially adverse actions, among others, against Ms. Alvarez because of her protected activities.

199.     Defendants' retaliatory actions were causally connected to Ms. Alvarez's protected activities.

200.     Any reasonable employee in Ms. Alvarez's position would be dissuaded from reporting sexual discrimination if they knew that they would be subjected to the kind of treatment that Ms. Alvarez was forced to endure.

201.     Defendants' alleged bases for its adverse employment actions against Ms. Alvarez are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

202.     As a direct and proximate result of Defendants' retaliatory conduct in violation of the MDHRO, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

203.     Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Alvarez's rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

204.     The conduct of Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the MDHRO.

205.     Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

<u>**COUNT XI**</u>
**§ 11A-26(4), Code of Miami-Dade County**
*MDHRO Hostile Work Environment*

206.     Ms. Alvarez repeats and realleges paragraphs 25 through 67, as if fully set forth herein.

207.     The MDHRO prohibits discrimination with respect to the training, hire, tenure, promotion, transfer, terms, conditions, wages, benefits, or privileges of employment, or in any other matter related to employment because of an individual's sex, pregnancy, or disability. Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26.

208.     Ms. Alvarez was a member of multiple protected classes under the MDHRO, as she was a female and she was pregnant.

209.     Defendants' discriminatory conduct was severe or pervasive enough to make any reasonable person of the same legally protected classes believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

210.     Defendants' severe and pervasive conduct included, but was not limited to, making targeted sexist and discriminatory remarks towards Ms. Alvarez, such as "Massage that chicken like you massage your Cuban husband" and "You put makeup on your face so you should put it on your ass too"; subjecting Ms. Alvarez to degrading sexual harassment; denying Ms. Alvarez the same terms and conditions of employment afforded to other employees; reducing Ms. Alvarez's work hours; failing to treat Ms. Alvarez with basic dignity by denying her access to meal and restroom breaks; refusing to accommodate Ms. Alvarez's pregnancy and pregnancy-related conditions; failing to engage in an interactive process regarding Ms. Alvarez's accommodation requests; coercing Ms. Alvarez to perform physical tasks that posed risks to her pregnancy; threatening Ms. Alvarez's employment; and unlawfully constructively terminating Ms. Alvarez's employment.

211.     Defendants targeted Ms. Alvarez because of her protected classes. No similarly situated employees outside of her protected classes endured the discriminatory conduct that Ms. Alvarez was forced to endure.

212.     Defendants' discriminatory conduct toward Ms. Alvarez negatively impacted both her professional life and her personal life. Defendants' conduct made Ms. Alvarez feel isolated, embarrassed, and ashamed.

213.     As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the MDHRO, Ms. Alvarez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Alvarez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Alvarez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

214.     Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Alvarez' rights under the MDHRO, warranting the imposition of punitive damages in addition to compensatory damages.

215.     The conduct of Defendants deprived Ms. Alvarez of her statutory rights guaranteed under the MDHRO.

216.     Ms. Alvarez further requests that her attorney's fees and costs be awarded as permitted by law.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendants for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendants' conduct in violation of Title VII, the PWFA, the FCRA, and the MDHRO.

Dated this 28th day of March, 2025,

Respectfully submitted,

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No. 1038749
MacDonald Law, PLLC
420 SW 7th St, Suite 1118
Miami, FL 33130
Office: (786) 500-9675
Direct: (786) 500-9995
kyle@macdonaldemploymentlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on March 28, 2025, on all counsel of record on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

## SERVICE LIST

**PATHMAN LAW, LLC**

Tara E. Faenza, Esq.
Florida Bar No.: 106928
tfaenza@pathmanlaw.com
Alejandra Muñiz Marcial, Esq.
Florida Bar No.: 1019266
amunizmarcial@pathmanlaw.com
One Biscayne Tower, Suite 2400
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 379-2425
Telefax No.: (305) 379-2420

*Counsel for Defendants GOAT HOSPITALITY GROUP LLC and WGOAT15 LLC*