UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CAROL ALVAREZ,

        Plaintiff,                              CASE NO.: 1:24-CV-24135-JEM

v.

GOAT HOSPITALITY GROUP LLC,
and WGOAT15 LLC,

        Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, CAROL ALVAREZ, by and through undersigned counsel, hereby respectfully files her Response in Opposition to the Motion to Dismiss Plaintiff's Amended Complaint ("Defendants' Motion") [D.E. 16], filed by Defendants, GOAT HOSPITALITY GROUP LLC, and WGOAT15 LLC, and states as follows:

**I.    INTRODUCTION**

Defendants' Motion represents a flawed and ultimately unavailing attempt to evade the well-pleaded allegations set forth in Ms. Alvarez's Amended Complaint [DE 15], and must be denied. Ms. Alvarez's Amended Complaint articulates, with extensive factual support, plausible claims for relief for pregnancy discrimination, sex discrimination, hostile work environment, failure to accommodate, and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg, et seq. ("PWFA"); the Florida Civil Rights Act of 1992, § 760.01, et seq., Florida Statutes ("FCRA"); and the Miami-Dade County Human Rights Ordinance, Chapter 11A, Article IV, § 11A-26, et seq. ("MDHRO").

The Amended Complaint provides Defendants with clear and unambiguous notice of the claims asserted and the substantial factual grounds upon which they rest in accordance with federal pleading standards. Defendants' Motion, however, largely misconstrues the legal standard applicable to Plaintiff's claims, improperly attempts to resolve factual disputes that are reserved for summary judgment, and seeks to impose upon Plaintiff a pleading burden far exceeding what the law requires at this preliminary stage. For these compelling reasons, and as detailed below, Defendants' Motion is without merit and must be denied in its entirety.

II. **STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim possesses facial plausibility when the pleaded "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In its review, the Court must "assume [the] veracity" of all well-pleaded allegations, construe all "reasonable inference[s]" in the plaintiff's favor, and apply its "judicial experience and common sense" in a "context-specific" analysis. *Iqbal*, 556 U.S. at 678-79. The Federal Rules do not demand "specific evidence" from a plaintiff at this stage. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010). The complaint need only provide "fair notice of what the... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). The Supreme Court has emphatically rejected the notion that a Title VII plaintiff must

plead the elements of a prima facie case to survive dismissal, as this framework is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002).

For employment discrimination claims, a plaintiff must plausibly allege that "(1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Critically, the Court "must be mindful of the 'elusive' nature of intentional discrimination." *Id.* at 86.

### III. FACTUAL BACKGROUND

The Amended Complaint, whose detailed allegations must be accepted as true at this juncture, paints a stark picture of the unlawful treatment Ms. Alvarez endured. Ms. Alvarez was hired by Defendants as a Line Cook in or around September 2023 and approximately one month into her employment received the welcome news of her pregnancy. Am. Compl. ¶ 28. The record establishes her as a qualified employee with a history of positive performance, who was fully capable of performing her essential job functions. Am. Compl. ¶¶ 12, 27, 30. However, her pregnancy brought significant physical impairments: persistent fatigue, frequent nausea, difficulty standing for extended periods, and a medically necessary inability to perform heavy lifting, conditions that substantially limited her major life activities. Am. Compl. ¶ 29.

Upon informing her supervisors, Chef Coordinator Richard Fuentes ("Fuentes") and Executive Chef Maximilliano Carvallo ("Carvallo"), of her pregnancy, the work environment immediately soured. Am. Compl. ¶ 31. Rather than professional acknowledgment, Fuentes and Carvallo became irate, launching into baseless accusations that Ms. Alvarez had concealed her pregnancy during the hiring process, thereby demeaning her from the outset. Am. Compl. ¶¶ 33-34. Almost immediately thereafter, Defendants initiated their campaign of retaliation against Ms.

Alvarez. The adverse actions against Ms. Alvarez were swift and severe. As outlined in the Amended Complaint, Carvallo "drastically cut Ms. Alvarez's scheduled work hours, which, in turn, substantially reduced Ms. Alvarez's pay," directly impacting her livelihood. Am. Compl. ¶ 35. To make matters significantly worse, Carvallo compounded the discriminatory treatment Ms. Alvarez was experiencing on account of her pregnancy by subjecting her to sexually harassing and offensive conduct. Am. Compl. ¶ 36.

Desperate to put a stop to the mistreatment, in or around November 2023, Ms. Alvarez reported the discriminatory conduct of Fuentes and Carvallo to Human Resources Manager Eric Garcia ("Garcia"). Am. Compl. ¶ 37. Although Fuentes and Carvallo subsequently left Defendants' employ (Am. Compl. ¶ 39), this offered no reprieve. Ms. Alvarez's new supervisor, Executive Chef Abelardo 'Tito' Vargas ("Vargas"), promptly initiated a new wave of discriminatory actions, specifically targeting her due to her pregnancy and her attendant medical needs. (Am. Compl. ¶¶ 40-41).

The Amended Complaint details Ms. Alvarez's repeated efforts to secure reasonable accommodations, which included basic necessities such as adjusted work schedules for meal breaks, sufficient restroom access, and an exemption from heavy-lifting tasks as per her doctor's directive. Am. Compl. ¶ 42. Defendants, however, failed to reasonably accommodate Ms. Alvarez' pregnancy-related medical conditions without justification and blatantly disregarded her protected rights. Am. Compl. ¶ 43. This failure was not passive; it was an active denial of her rights. Vargas, for instance, "persistently denied her the necessary time away from the kitchen to use the facilities," imposed the "unreasonable requirement that Ms. Alvarez seek his explicit permission every single time she needed to use the restroom," and "routinely denied her the opportunity to eat," at times yelling and callously informing her she was "paid to work, not paid to eat." Am.

4

Compl. ¶¶ 44-47. Vargas also subjected her to ridicule for her pregnancy-related slower pace and, when she reiterated her medical need to avoid heavy lifting, Vargas contemptuously dismissed her concerns, stating her pregnancy "meant nothing," and insisted she perform the strenuous labor. Am. Compl. ¶¶ 48-4).

In a further attempt to assert her rights, Ms. Alvarez again reported to Garcia in or around January 2024, specifying Vargas's dangerous insistence on heavy lifting against her medical restrictions. Am. Compl. ¶ 50. In a shocking display of indifference, Garcia did not intervene on Ms. Alvarez's behalf; instead, he sided with Vargas, informing Ms. Alvarez that she could, in fact, perform heavy lifting because she was "only seven (7) months pregnant." Am. Compl. ¶ 51. The Amended Complaint underscores that despite Ms. Alvarez's repeated written and verbal notifications seeking pregnancy accommodations mandated by law, Defendants "never engaged in any interactive dialogue, never offered any alternative, and instead threatened to fire Ms. Alvarez if she could not keep up." Am. Compl. ¶ 52.

The situation escalated further. On or around February 7, 2024, after Ms. Alvarez informed Vargas she was hospitalized due to pregnancy-related pain Am. Compl. ¶ 53, Vargas's response was not one of concern but a strict demand fir medical documentation and an inflexible insistence on two hours' notice for absences. While Ms. Alvarez agreed to provide documentation, she reasonably explained that the timing of her pregnancy-related pain was often uncontrollable. Am. Compl. ¶ 54. Her medical provider recommended leave from February 7 to February 12, 2024, which she communicated to both Vargas and Garcia. Am. Compl. ¶ 55. Demonstrating a profound lack of compassion and respect for medical directives, Vargas then demanded, on February 10, 2024, while Ms. Alvarez was on this authorized medical leave, to know if she would still be reporting to work. (Am. Compl. ¶ 56).

5

The Amended Complaint makes clear that, by this stage, Defendants' "unrelenting hostility and refusal to accommodate her pregnancy rendered her work environment intolerable." Am. Compl. ¶ 57. Due to Defendants conduct, Ms. Alvarez was faced with the untenable decision of either: (a) continuing in her position in a demeaning and humiliating work environment that directly "threatened her own safety and well-being, and that of her unborn child," or (b) resign from her position. Just as any reasonable woman in her shoes would have done, Ms. Alvarez was resigned from her employment on or around February 11, 2024—a constructive discharge directly forced by Defendants' callous and unlawful actions. Am. Compl. ¶¶ 57-58.

Regarding Defendants' corporate structure, the Amended Complaint clearly asserts that Defendant GHG and Defendant WGOAT15 were Ms. Alvarez's sole and/or joint employers, who "collectively exercised shared authority and control over the terms and conditions of Ms. Alvarez's employment." Am. Compl. ¶¶ 6-7. This is evidenced by specific examples, such as Defendant WGOAT15 administering her payroll while Defendant GHG's management was directly involved in her discrimination complaints and issued FMLA paperwork identifying "GOAT Hospitality Group" as the employer. Am. Compl. ¶ 8. The Complaint further details their "interrelated operations, centralized management, and economic dependence." Am. Compl. ¶ 9. Finally, the Amended Complaint confirms that Defendants, individually or jointly, employed at least fifteen (15) employees, thereby satisfying all statutory numerosity prerequisites. Am. Compl. ¶ 10.

### III. LEGAL ARGUMENT

**A. Plaintiff Complaint Properly Pleaded Joint Employer Status and Statutory Employee Numerosity, Making Dismissal Improper**

In their Motion, Defendants contend dismissal of Plaintiff's claims is warranted because the Amended Complaint fails to adequately plead a joint employment relationship between the Defendants and in doing so, seek to make a highly fact-intensive determination inappropriate at

6

the pleading stage. These arguments conveniently ignore the detailed factual allegations within the Amended Complaint and misapply pleading standards in a premature attempt to evade liability for their conduct. Accordingly, Defendants' Motion must be denied.

**1. Plaintiff Sufficiently Pleads Joint Employer Status, Rendering Defendants' Challenge Premature**

Defendants incorrectly assert that Ms. Alvarez offers only "conclusory allegations" regarding the joint employer status of GHG and WGOAT15. Defs.' Mot. at 5. This contention conveniently disregards the specific, material facts pleaded in the Amended Complaint that create a strong and plausible inference of an integrated enterprise and shared control over Ms. Alvarez's employment. Far from being conclusory, the Amended Complaint asserts that GHG and WGOAT15 "collectively exercised shared authority and control over the terms and conditions of Ms. Alvarez's employment, including hiring, firing, and work assignments." Am. Compl. ¶ 7. This is no mere label; it is substantiated by demonstable examples of interrelated operations and mutual control over all aspects of Plaintiff's employment. WGOAT15 administered Ms. Alvarez's payroll, while GHG's management was "directly and actively involved in the events surrounding Ms. Alvarez's complaints of unlawful discrimination, even issuing her FMLA paperwork that identified her employer as 'GOAT Hospitality Group.'" Am. Compl. ¶ 8. Direct involvement in responding to complaints of unlawful discrimination, scheduling and payroll, and benefits administration are classic indicia of a joint employer relationship. The Amended Complaint further details their "interrelated operations, centralized management, and economic dependence." Am. Compl. ¶ 9.

These factual averments are more than sufficient to satisfy the pleading standard for joint or integrated employment. This is especially true in light of the recognized principal that determining the existence of a joint employment relationship requires "fact intensive inquiries that

7

need to be developed, and are not readily amenable to resolution on a motion to dismiss." *Dawkins v. Picolata Produce Farms, Inc.*, 2005 U.S. Dist. LEXIS 28789, at *11; *see also Fernandez v. Great Havana Inc.*, 2023 U.S. Dist. LEXIS 59143, at *6 (S.D. Fla. April 3, 2023) (denying defendant's motion to dismiss arguing the plaintiff had failed to plead a joint employment relationship). Defendants' reliance on *Waldron v. Signal Specialties, Inc*., No. 21-14295-CIV, 2022 U.S. Dist. LEXIS 14175 (S.D. Fla. Jan. 25, 2022), is entirely misplaced, as *Waldron* does not impose an obligation to plead an exhaustive list of control factors before discovery has illuminated Defendants' corporate structure. Instead, the court's reasoning in *Waldron* focused on the plaintiff's single allegation used to assert claims against three defendants as being insufficient. In stark contrast, Plaintiff has more than satisfied the notice pleading requirements under *Swierkiewicz*, 534 U.S. at 510-14, by alleging specific facts supporting joint employer status. The full extent of Defendants' integration is a matter properly explored through discovery.

**2. Plaintiff Allegations of Statutory Employee Numerosity Are Adequately Pleaded**

Defendants' claim that Ms. Alvarez failed to adequately plead the requisite employee numerosity. Defs.' Mot. at 6. is equally without merit. The Amended Complaint explicitly states: "Defendants solely and/or jointly employed at least fifteen (15) employees or more for the applicable statutory period, which is sufficient to meet the numerosity requirements under Title VII, the PWFA, the FCRA, and the MDHRO." Am. Compl. ¶ 10. This direct factual assertion is sufficient at this preliminary stage.

Defendants' challenge to the sufficiency of Ms. Alvarez's numerosity allegations is equally unpersuasive. Defendants' feigned confusion regarding whether this number is met individually or jointly is a thinly veiled attempt to create ambiguity where none exists; the allegation clearly encompasses both possibilities. Defs.' Mot. at 6. The allegation clearly and logically encompasses

8

both scenarios. Coupled with the plausible allegations of joint employer status, the inference that the combined employee count meets the statutory minimum is not only reasonable but compelling. As recognized by courts in the Eleventh Circuit, a plaintiff's general allegation of meeting the employee-numerosity requirement is usually sufficient to survive a motion to dismiss. *See Rodriguez v. Accurate Painting of Northwest Fla.*, 2021 U.S. Dist. LEXIS 172572, at *4 (N.D. Fla. Jan. 12, 2021) (denying motion to dismiss based on numerosity because plaintiff had not been given an opportunity to conduct discovery). Defendants' remedy, if they genuinely dispute this fact, lies in presenting evidence at a later stage, not in a premature motion to dismiss based on feigned confusion. Defendants' preliminary challenges regarding joint employer status and numerosity are therefore without merit and must be rejected.

### B. Plaintiff Has Stated Plausible Claims for Discrimination and Hostile Work Environment under Title VII, FCRA, and MDHRO

Defendants' attempt to dismantle Ms. Alvarez's discrimination and hostile work environment claims by imposing a summary judgment-like standard at the pleading stage is improper and fails to acknowledge the extensive factual support within the Amended Complaint.

#### 1. Plaintiff States Plausible Claims for Pregnancy and Sex Discrimination

While strict adherence to the *McDonnell-Douglas* prima facie case is not a pleading requirement, *Swierkiewicz*, 534 U.S. at 510-11, Ms. Alvarez's Amended Complaint comfortably outlines such a case. As a pregnant woman Am. Compl. ¶¶ 25, 72), she is a member of a protected class, and the Complaint establishes her qualifications Am. Compl. ¶¶ 27, 30.

Defendants baselessly contend that the Amended Complaint fails to plead any cognizable adverse employment action (Defs.' Mot. at 7). An adverse employment action constitutes a "serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001); *see also Crawford v. Carroll*, 529 F.3d

9

961, 970 (11th Cir. 2008). The Amended Complaint unequivocally alleges that "Almost immediately after learning of her pregnancy, Carvallo drastically cut Ms. Alvarez's scheduled work hours, which, in turn, substantially reduced Ms. Alvarez's pay." (Am. Compl. ¶ 35). This significant reduction in hours and consequent loss of pay is a clear adverse employment action. *See, e.g., Morales v. Georgia Dep't of Human Res.*, 446 F. App'x 179, 183 (11th Cir. 2011) (unpublished). Furthermore, the pervasive denial of reasonable accommodations (Am. Compl. ¶¶ 42-49, 51-52, 61) can, itself, constitute an adverse employment action. Most significantly, as detailed *infra*, Defendants' egregious conduct culminated in Ms. Alvarez's constructive discharge (Am. Compl. ¶¶ 57-58), an adverse action of the highest order. *See Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997).

Defendants' argument that Ms. Alvarez failed to allege differential treatment (Defs.' Mot. at 7) also fails. It is well-established that a plaintiff need not identify specific comparators by name in the complaint. *See Raja v. Englewood Cmty. Hosp., Inc.*, No. 8:12-CV-02083-JDW, 2013 WL 4016518, at *3 (M.D. Fla. Aug. 6, 2013). The Amended Complaint explicitly states that the adverse actions commenced *after* her pregnancy disclosure (Am. Compl. ¶¶ 33-35, 41), giving rise to a strong and plausible inference of discriminatory animus and differential treatment compared to non-pregnant employees. The assertion that "No similarly situated employees outside of Ms. Alvarez's protected class endured the discriminatory conduct that Ms. Alvarez was forced to endure" (Am. Compl. ¶ 76) is a factual allegation that must be accepted as true. The supervisors' overtly hostile reaction and accusations of deceit (Am. Compl. ¶¶ 33-34) provide direct support for this inference, which cannot be wished away by a premature invocation of the "same actor" doctrine at this stage. *See Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998).

2. **Plaintiff States Plausible Claims for Hostile Work Environment, Undermining Defendants' Efforts to Trivialize the Harassment**

To state a claim for hostile work environment, a plaintiff must show she belongs to a protected group; was subjected to unwelcome harassment based on a protected characteristic; the harassment was sufficiently severe or pervasive to alter employment conditions and create a discriminatorily abusive working environment; and employer liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (*en banc*).

Ms. Alvarez, a pregnant woman, has pleaded substantial facts supporting each element. Defendants' attempt to characterize the harassment as merely "sporadic, limited comments" (Defs.' Mot. at 9) is a gross distortion of the Amended Complaint. The harassment alleged was continuous and severe. It included initial supervisor hostility and accusations of lying (Am. Compl. ¶¶ 33-34); overtly demeaning and sexually harassing comments by Carvallo (Am. Compl. ¶ 36); Supervisor Vargas's persistent denial of basic needs like restroom and meal breaks, accompanied by ridicule (Am. Compl. ¶¶ 44-48); Vargas's callous dismissal of her medical lifting restrictions (Am. Compl. ¶ 49); HR Manager Garcia's shocking endorsement of these dangerous practices (Am. Compl. ¶ 51); and an overarching atmosphere of intimidation and threats (Am. Compl. ¶¶ 34, 52).

Defendants' reliance on the rule against "sporadic and isolated comments" from cases like *Ivey v. Crestwood Med. Ctr.*, No. 23-11936, 2024 U.S. App. LEXIS 7059 (11th Cir. Mar. 26, 2024), is entirely misplaced given the pervasive and multifaceted nature of the conduct alleged here. The Eleventh Circuit requires consideration of all circumstances. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997). The determination of whether conduct is "severe or pervasive" is "quintessentially a question of fact" ill-suited for resolution on a motion to dismiss, especially when, as here, the allegations depict a pattern of conduct far exceeding mere "offensive

utterances." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012). The direct harassment by supervisors and HR's ratification establish a clear basis for employer liability. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The FCRA and MDHRO claims, analyzed under the same Title VII framework, are likewise sufficiently pleaded.

### C. Plaintiff Has Stated Plausible Claims for Retaliation; Defendants' Arguments Lack Merit.

Defendants' challenge to Ms. Alvarez's retaliation claims (Defs.' Mot. at 9-11) is equally unpersuasive, as the Amended Complaint clearly establishes the requisite elements: (1) protected activity; (2) materially adverse action; and (3) a causal connection. *Crawford*, 529 F.3d at 970.

#### 1. Plaintiff Plainly Engaged in Multiple Protected Activities.

Ms. Alvarez engaged in protected activities when she reported the discriminatory conduct of Fuentes and Carvallo to HR Manager Garcia in November 2023 (Am. Compl. ¶ 37). Internal complaints are well-recognized as protected activity. *See, e.g., Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989). She further engaged in protected activity by repeatedly requesting reasonable accommodations for her pregnancy (Am. Compl. ¶¶ 42, 52), an activity explicitly protected under the PWFA, 42 U.S.C. § 2000gg-2(f), and implicitly under Title VII. Her subsequent complaint to Garcia in January 2024 about Supervisor Vargas's ongoing mistreatment also constitutes protected activity (Am. Compl. ¶ 50).

#### 2. Plaintiff Suffered Clear Materially Adverse Actions.

Following these protected activities, Ms. Alvarez suffered materially adverse actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). These included the drastic reduction in her work hours and pay (Am. Compl. ¶ 35), the persistent denial

of her requested reasonable accommodations (Am. Compl. ¶¶ 43-49, 51-52), and her ultimate constructive discharge (Am. Compl. ¶¶ 57-58).

### 3. The Causal Connection Between Protected Activity and Adverse Actions is Overwhelmingly Plausible

A clear causal connection is established through compelling temporal proximity and a pattern of antagonism. The adverse actions commenced and escalated following her protected activities. "Almost immediately" after her pregnancy became known (a necessary precursor to her complaints), her hours were cut (Am. Compl. ¶ 35). After her November 2023 HR report, the hostile environment and denial of accommodations continued and intensified under Vargas, with HR ultimately siding against her medical needs following her January 2024 complaint about Vargas. Am. Compl. ¶¶ 40-41, 44-49, 51. This culminated in Vargas pressuring her while on approved medical leave, directly leading to her constructive discharge days later (Am. Compl. ¶¶ 56-58). Such close temporal proximity strongly supports causation. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). A pattern of antagonism after protected complaints also establishes causation. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 925 (11th Cir. 2018). The continuous mistreatment following her complaints plausibly constitutes a retaliatory hostile work environment. *See Gowski*, 682 F.3d at 1312. Defendants' attempts to break this causal chain are unavailing.

### 4. Plaintiff Has Stated a Plausible Claim under the Pregnant Workers Fairness Act (PWFA)

Defendants' arguments against Ms. Alvarez's PWFA claim (Defs.' Mot. at 11-13) fundamentally misapprehend the statute's requirements and protections. The PWFA, 42 U.S.C. § 2000gg-1(1), unequivocally requires employers to make reasonable accommodations for known

13

pregnancy-related limitations, absent undue hardship. The statute also makes it unlawful to fail the interactive process or retaliate for accommodation requests. 42 U.S.C. § 2000gg-1(2), (5).

Ms. Alvarez, a "qualified employee" (Am. Compl. ¶ 12) with "known limitations" (Am. Compl. ¶¶ 29, 117), repeatedly sought reasonable and common accommodations like adjusted breaks and relief from heavy lifting (Am. Compl. ¶¶ 42, 118). The EEOC's proposed PWFA guidance itself suggests that such accommodations should often be approved without extensive documentation, absent undue hardship. 88 Fed. Reg. 54714 (Aug. 11, 2023).

The Amended Complaint extensively details Defendants' failure to provide these accommodations and their utter failure to engage in a good-faith interactive process. The Complaint asserts Defendants "failed to reasonably accommodate Ms. Alvarez' pregnancy-related medical conditions without justification" (Am. Compl. ¶ 43) and "never engaged in any interactive dialogue, never offered any alternative, and instead threatened to fire Ms. Alvarez if she could not keep up" (Am. Compl. ¶ 52). Supervisor Vargas's persistent denial of basic needs (Am. Compl. ¶¶ 44, 46, 47) and dismissal of lifting restrictions (Am. Compl. ¶ 49), compounded by HR Manager Garcia's endorsement of these dangerous practices (Am. Compl. ¶ 51), is the very antithesis of the interactive process mandated by law. Forcing an employee to secure her own coverage for basic needs, or to endure conditions contrary to medical advice, is not accommodation. Defendants' claim that *they* engaged in an interactive process which Plaintiff rejected is a stark misrepresentation of the pleaded facts. Ultimately, Defendants took adverse actions, including constructive discharge, because of her accommodation requests (Am. Compl. ¶¶ 57-58, 120, 122). *See Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1260 (11th Cir. 2017). The PWFA was enacted to prevent exactly this type of unlawful conduct.

### E. Plaintiff's Amended Complaint Is Not Impermissibly Vague

Defendants' assertion that the Amended Complaint "remains vague" (Defs.' Mot. at 11) is patently without merit and appears to be a diversionary tactic. Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim." The Amended Complaint far exceeds this standard, providing a comprehensive factual narrative (Am. Compl. ¶¶ 25-67) followed by eleven distinct counts that clearly identify the statutes violated and the specific legal theories (Am. Compl. ¶¶ 68-216). Each count incorporates the factual background. Allegations supporting joint employer status (Am. Compl. ¶¶ 6-9) and statutory numerosity (Am. Compl. ¶ 10) are also explicitly pleaded. Defendants' contention that the Amended Complaint fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015), is simply incorrect. The Amended Complaint provides more than fair notice.

**F. Plaintiff Has Stated a Plausible Claim for Constructive Discharge**

Defendants' argument that Ms. Alvarez failed to state a claim for constructive discharge (Defs.' Mot. at 13-14) is untenable when measured against the Amended Complaint's detailed allegations. Constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). The standard is objective: whether "a reasonable person in the plaintiff's position would have been compelled to resign." *Id.*; *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) (defining the high standard for constructive discharge). Ms. Alvarez's assertion that her work environment became intolerable (Am. Compl. ¶ 57) is not a mere legal conclusion but a factual culmination of the relentless mistreatment she endured.

15

Defendants' reliance on cases decided at summary judgment is improper at the motion to dismiss stage. As noted in *Santiago v. Univ. of Miami*, No. 22-21051-CIV, 2023 U.S. Dist. LEXIS 60880, at *24-25 (S.D. Fla. Apr. 4, 2023) (Singleton, M.J.), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 70170 (S.D. Fla. Apr. 21, 2023), dismissals for failure to plead constructive discharge typically involve vague allegations, not the specific, severe conduct detailed here. The Amended Complaint recounts a sustained campaign of hostility and denial of rights: initial anger and accusations upon her pregnancy announcement (Am. Compl. ¶¶ 33-34); an immediate and drastic pay cut (Am. Compl. ¶ 35); systematic denial by Supervisor Vargas of basic and medically necessary accommodations (Am. Compl. ¶¶ 44-47, 49); HR Manager Garcia's shocking complicity in practices that endangered Ms. Alvarez and her unborn child (Am. Compl. ¶ 51); threats of termination if she could not meet impossible demands (Am. Compl. ¶ 52); and unconscionable pressure from Vargas to work while on approved medical leave (Am. Compl. ¶ 56).

This litany of egregious conduct is far removed from "everyday workplace grievances.". The cumulative effect of this mistreatment, particularly the denial of accommodations and HR's failure to protect her, plausibly rendered continued employment intolerable and unsafe for any reasonable pregnant woman. (Am. Compl. ¶ 57). Cases such as *EEOC v. Nice Sys., Inc.*, No. 19-CV-82, 2021 U.S. Dist. LEXIS 263668, at *15 (E.D.N.Y. July 29, 2021) (denying motion to dismiss where discriminatory actions impacted income, contributing to intolerability), and *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1260 (11th Cir. 2017) (forcing a new mother to choose between her health needs and her job constituted constructive discharge), support that such conditions can meet the high bar for constructive discharge. Ms. Alvarez has more than adequately pleaded facts demonstrating her resignation was a compelled termination.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff Carol Alvarez respectfully submits that her Amended Complaint contains more than sufficient factual allegations to state plausible claims for relief against Defendants GOAT HOSPITALITY GROUP LLC and WGOAT15 LLC for discrimination, hostile work environment, failure to accommodate, and retaliation in violation of Title VII, the PWFA, the FCRA, and the MDHRO. Their attempts to dismantle Plaintiff's well-pleaded claims are without merit and must fail.

Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint in its entirety, and grant such other and further relief as this Court deems just and proper. Alternatively, should this Court find any deficiencies in Plaintiff's Amended Complaint, Plaintiff respectfully requests leave to amend to cure any such deficiencies.

Dated this 16th day of May, 2025,

Respectfully submitted,

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No. 1038749
MacDonald Law, PLLC
420 SW 7th St, Suite 1118
Miami, FL 33130
Office: (786) 500-9675
Direct: (786) 500-9995
kyle@macdonaldemploymentlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on May 18, 2025, on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

## SERVICE LIST

**PATHMAN LAW, LLC**

Tara E. Faenza, Esq.
Florida Bar No.: 106928
tfaenza@pathmanlaw.com
Alejandra Muñiz Marcial, Esq.
Florida Bar No.: 1019266
amunizmarcial@pathmanlaw.com
One Biscayne Tower, Suite 2400
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 379-2425
Telefax No.: (305) 379-2420

*Counsel for Defendants GOAT HOSPITALITY GROUP LLC and WGOAT15 LLC*