# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA - MIAMI DIVISION**

CAROL ALVAREZ                Case No.: 1:24-cv-24135-JEM
     *Plaintiff,*

v.

GOAT HOSPITALITY GROUP LLC and
WGOAT15 LLC
     *Defendants.*

_____/

**DEFENDANT GOAT HOSPITALITY GROUP LLC'S VERIFIED RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant GOAT HOSPITALITY GROUP LLC ("GOAT"), by and through undersigned

counsel, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby responds to

Plaintiff's First Set of Interrogatories as follows:

**RESPONSES**

1.    Identify all persons whom you contend have knowledge of the facts and circumstances, including but not limited to any claims and/or defenses, alleged in the Pleadings, including the facts which you contend are known to each person, and for each person so identified, specify the subject matter about which each such person has knowledge, the employer and job title of such person, and the last known address and telephone number of that person.

**Answer**:

**Carol Alvarez**
***Plaintiff's counsel***
**Plaintiff has knowledge of the claims and defenses in this case.**

**Lisa Gonzalez**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**President of WGOAT15, LLC, Ms. Gonzalez has knowledge of the claims and defenses in this case, including knowledge of Ms. Alvarez's performance, duration of the business, and the closure of the business.**

**Eric Garcia**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**Human Resources, Mr. Garcia has knowledge of the claims and defenses in this case.**

**Maximiliano Carabello**
**l/n/a unknown**
**Former Supervising chef of WGOAT15, LLC, Mr. Carabello has knowledge of the claims and defenses in this case.**

**Reina Gutierrez**
**l/n/a unknown**
**Former Food Preparation Assistant of WGOAT15, LLC,, Ms. Gutierrez has knowledge of the claims and defenses in this case.**

**Abelardo 'Tito' Vargas**
**l/n/a unknown**
**Former Supervising chef of WGOAT15, LLC, Mr. Vargas has knowledge of the claims and defenses in this case.**

**Plaintiff's medical providers (unknown)**

**Plaintiff's medical providers have knowledge of Plaintiff's condition, pregnancy, and all restrictions to her ability to work, including whether she was able to work during the two (2) weeks following her voluntary resignation.**

2.      Identify the name, address, telephone number and email address of any person, entity or internal department who provided information, consultation, or assistance with answering these Interrogatories. If applicable, please include an identified person's official position or relationship to Defendants.

**<u>Answer</u>**:

  **Lisa Gonzalez**
  **c/o Pathman Law, LLC**
  **One Biscayne Tower, Suite 2400**
  **2 South Biscayne Boulevard**
  **Miami, FL  33131**
  **T - 305-379-2425**

**Ms. Gonzalez prepared these interrogatories with the assistance of counsel.**

3.      List all documents, with particularity, that you consulted, relied on, or have any relation to the substance of these interrogatories even if you did not consult with such

documents to prepare these Interrogatories. Please state the title of each document, identify its signatories, including their titles, the date the document was prepared or signed, and the name of its present custodian and present location. Please include and list separately, any and all drafts of each document. Finally, if a document is stored electronically and/or in binary format, please state the location of the hard drive or other media where the information is stored.

**Answer**:

**Defendant objects to this interrogatory to the extent that it seeks privileged information and attorney work product. Defendant objects to this interrogatory to the extent it seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this interrogatory to the extent it require the Defendant to prepare a compilation of information. Defendant objects to this interrogatory to the extent it is vague and confusing, _e.g._ "List all documents, with particularity, that you** consulted, relied on, or have any relation to the substance of these interrogatories even if you did not consult with such documents to prepare these Interrogatories." **Defendant objects to this interrogatory as unduly burdensome, overly broad, and irrelevant, as it relates to, "all documents….or have any relation to the substance of there interrogatories."**

**Notwithstanding and without waiving the foregoing objections, as to non-privileged documents, Defendant attaches them in the response to Request for Production.**

4.    Do you contend that GOAT Hospitality Group LLC and WGOAT15 LLC did not operate as a joint employer or integrated enterprise with respect to Ms. Alvarez's employment? If so, state: (a) how you reached that conclusion; (b) the identity of every person involved in reaching that conclusion; (c) every fact upon which you base this conclusion, organized by the following factors: (i) interrelation of operations, (ii) common management, (iii) centralized control of labor relations, and (iv) common ownership or financial control; and (d) the identity of every document that supports this conclusion.

**Answer**:

**Defendant objects to this interrogatory to the extent that it explicitly seeks privileged information and attorney work product. Defendant objects to this interrogatory to the extent it seeks legal conclusion. Defendant objects to this interrogatory to the extent it is compound, comprising of multiple discreet and separate questions. Notwithstanding and without waiving the foregoing objections, Defendant responds:**

**Defendant asserts that GOAT Hospitality Group LLC and WGOAT15 LLC did not operate as a joint employer or integrated enterprise with respect to Plaintiff's employment.**

**(a)** Plaintiff's interrogatory specifically requests privileged information and Defendant asserts such privilege. **To the extent that any response is not privileged, Defendant asserts that it provided limited Human Resources services to WGOAT and other companies for**

**the brief period of time that WGOAT operated. Defendant asserts that IT did not have any positions that Plaintiff could work, nor could IT assign work to Plaintiff, hire/fire/promote Plaintiff for any role, control daily employment activities, schedule Plaintiff, or otherwise control salary or pay other than administration of payroll. WGOAT employed Plaintiff, with Defendant assisting with some of the Human Resources functions.**

**(b)** Plaintiff's interrogatory specifically requests privileged information and Defendant asserts such privilege. **To the extent that any response is not privileged, Eric Garcia and Lisa Gonzalez.**

**(c)** Plaintiff's interrogatory specifically requests privileged information and Defendant asserts such privilege. **Notwithstanding and without waiving the foregoing objections, Defendant responds substantially (excluding the requested privileged information) and asserts that GOAT was not a co-employer and responds specifically below:**

**(i)      Operations of GOAT and WGOAT15 LLC were separate. WGOAT15 LLC was a restaurant. GOAT is a hospitality consulting company which provides payroll, human resources assistance, and other operational and consulting assistance to various companies. GOAT is owned by a different owner than WGOAT15 LLC, which is no longer in existence. WGOAT15, LLC ceased operations in February 2023. GOAT continues to operate and provide drastically different services. GOAT had no ability to assist with hiring, firing, and made no decisions pertaining to employment actions. The profit and loss of GOAT and ADDIKT were completely separate. Defendant, ADDIKT, did not have any profit to distribute to anyone. If profit was realized, it would be distributed to the owner, Lisa Gonzalez. For GOAT, none of the profits were related to ADDIKT.**

**(ii)     GOAT is controlled by Derek Gonzalez. WGOAT15, LLC was owned and controlled by Lisa Gonzalez. Lisa Gonzalez became a manager of GOAT in January 2023, but was not a member at the time of the resignation by Plaintiff. Derek Gonzalez does not have any ownership of WGOAT and vice versa. GOAT did not have any ownership of WGOAT and vice versa.**

**(iii)    As it relates to centralized control of labor relations, GOAT had no power to hire or fire any employee at WGOAT 15, LLC. GOAT provided a standalone service to WGOAT15, LLC purely for convenience. The employees of WGOAT15, LLC were not controlled by GOAT.  As a consequence, GOAT had no power to terminate any employee, including Plaintiff, who resigned.**

(iv)    **As it relates to "common ownership or financial control," GOAT operated separately and maintained separate revenue streams, from WGOAT15, LLC. GOAT is owned by Derek Gonzalez. WGOAT15, LLC was owned by Lisa Gonzalez.**

**As it relates to, "**(d) the identity of every document that supports this conclusion," **Defendant objects to this interrogatory as unduly burdensome, overly broad, explicitly seeking privileged communications and attorney work product, and otherwise seeking irrelevant information. Notwithstanding the foregoing conclusion, GOAT asserts that all non-privileged documents are attached to GOAT's document production.**

5.      Regarding the Family and Medical Leave Act (FMLA) paperwork issued to Ms. Alvarez that identified her employer as "GOAT Hospitality Group," state: (a) the identity of the person who prepared the paperwork; (b) the date the paperwork was prepared; (c) the date the paperwork was given to Ms. Alvarez; (d) why the paperwork was prepared; and (e) why "GOAT Hospitality Group" was listed as the employer.

**Answer**:

**Defendant asserts that this information was prepared by Eric Garcia, who was a Human Resources professional at GOAT. Mr. Garcia was accustomed to working for larger companies, in different capacities, and was unaware that neither GOAT nor WGOAT15, LLC were subject to the Family Medical Leave Act (FMLA), and Plaintiff, as a short-term employee, would regardless be ineligible for such benefits. Mr. Garcia prepared the documents at Plaintiff's request. Plaintiff was under the misguided belief that: (1) WGOAT15, LLC was subject to the FMLA; (2) that she was entitled to any paid leave time; (3) that she had been with any company long enough to qualify for paid or unpaid leave. Mr. Garcia's use of the name "GOAT Hospitality Group" was a mistake, in that he worked for GOAT, not WGOAT15, LLC.**

6.      For each of the following individuals, (i) Richard Fuentes, (ii) Maximilliano Carvallo, (iii) Eric Garcia, and (iv) Abelardo 'Tito' Vargas, please state:
          (a)     Whether the individual ever performed work for or on behalf of Defendant WGOAT15 LLC, and if so, for each period of work, state the dates of the work performed; the nature of the work performed; and the applicable rate and method of pay; and
          (b)     Whether the individual ever performed work for or on behalf of Defendant GOAT Hospitality Group LLC, and if so, for each period of work, state (i) the dates of the work performed; (ii) the nature of the work performed; and (iii) the applicable rate and method of pay.

**Answer**:

**Defendant objects to the extent that this Interrogatory is compound and comprises of several discreet and separate Interrogatories. These Interrogatories are thereby renumbered to reflect the separate nature of the responses for four (4) separate individuals. Defendant objects to the extent this Interrogatory seeks irrelevant information not likely to lead to the discovery of admissible evidence, for example, the applicable rate and method of pay for alleged supervisors (regardless if they are not actually superiors), is not relevant to this case. None of the persons, by their nature, are "similarly situated," and all have different roles.**

**Richard Fuentes was not an employee of WGOAT15 LLC at any time. Richard Fuentes was not an employee of GOAT at any time. Richard Fuentes was a consultant working with WGOAT15 LLC as a 1099 independent contractor to assist in sourcing products for that restaurant location of WGOAT15 LLC**

**Maximilliano Carvallo was an employee of WGOAT15 LLC and was not, during the relevant periods, an employee of GOAT. Mr. Carvallo was the Head Chef for WGOAT15, LLC until January 2023.**

**Eric Garcia was an employee of GOAT, and not an employee of WGOAT15, LLC at any time. Eric Garcia was the Human Resources Manager at GOAT, responsible for payroll and human resources functions.**

**Abelardo 'Tito' Vargas was an employee of WGOAT15 LLC and was not, during the relevant periods, an employee of GOAT. Mr. Carvallo was the Head Chef for WGOAT15, LLC until February 2023 when the restaurant shut down.**

7.  State the date on which any supervisor or manager of Defendants was first informed of Ms. Alvarez's pregnancy, and for that initial disclosure, identify: (a) the person(s) who were informed; (b) the person(s) who provided the information; and (c) the substance of the communication.

**<u>Answer</u>**:

**Defendant does not have records pertaining to any written notification that Plaintiff was pregnant to any manager at WGOAT15 LLC. Defendant GOAT does not possess specific records as to the date that Plaintiff advised of her pregnancy. Defendant is unaware of any of the managers at WGOAT15 LLC were aware of Plaintiff's pregnancy at the time she was hired, as she was visibly pregnant within a short period of time after beginning to work for WGOAT15 LLC, and according to her paperwork to GOAT, could have been close to five (5) months pregnant at hiring. It is unclear if WGOAT15 LLC knew at the time she was hired that she was pregnant.**

8.  Regarding any communication(s) in or around October 2023 where Ms. Alvarez first informed Richard Fuentes and Maximilliano Carvallo of her pregnancy, please state: (a) The date and location of each such conversation; (b) The identity of all persons present for each conversation; (c) The substance of the specific statements made by Mr. Fuentes and Mr. Carvallo in response to Ms. Alvarez's announcement; and (d) Whether you contend that Mr. Fuentes and Mr. Carvallo did not accuse Ms. Alvarez of concealing her pregnancy to obtain her position, and the factual basis for that contention.

**<u>Answer</u>**:

**Defendant does not have records pertaining to any notification that Plaintiff was pregnant to any manager at WGOAT15 LLC or independent contractor, like Mr. Fuentes. GOAT has no independent information regarding any third party's discussions with Plaintiff. GOAT was not present, and the Plaintiff would request GOAT to speculate as to discussions with persons who are not its employees. Regardless of whether such statement was made, Plaintiff would have likely been four (4) to five (5) months pregnant at the time of hiring; therefore, it is unclear if WGOAT15 LLC was aware of her pregnancy at the time she was hired.**

9.      With respect to any reduction in Ms. Alvarez's scheduled work hours during her employment with Defendants, please state: (a) The specific business reason(s) for the reduction; (b) The identity of the person(s) who made the decision to reduce her hours; (c) The date the decision was made; and (d) The identity of all other non-pregnant Line Cooks whose hours were also reduced during the same time period.

**Answer**:

**Defendant GOAT did not schedule any hours for WGOAT15 LLC employees and therefore cannot answer this question.**

10.     Identify every request for an accommodation made by Ms. Alvarez related to her pregnancy from October 2023 through February 2024, and for each request, state: (a) the date of the request; (b) the specific accommodation requested; and (c) the identity of the supervisor or manager to whom the request was made.

**Answer**:

**GOAT can only respond to the requests for accommodation requested through GOAT, and not for any accommodation which Plaintiff may have attempted to make through WGOAT15 LLC directly with her supervisors. As it relates to accommodations: Plaintiff sought paid FMLA leave, despite that the statute does not provide for paid leave and, as a short-term employee working at a company with less than 50 employees, neither the employer (WGOAT15 LLC) and the employee were eligible. For the purposes of argument, and GOAT does not agree, even if GOAT and WGOAT15 LLC were combined, they do not reach 50 employees. Plaintiff requested time off. GOAT communicated same to WGOAT15 LLC. At each instance, GOAT granted any time off request. Plaintiff's requests for time off were conditioned that she provide at least 2 hours advance notice, so that WGOAT15 LLC could locate coverage for Plaintiff's work, and for a doctor's note for extended absences. The request for 2 hours advance notice constitutes the interactive process by which GOAT, on behalf of WGOAT15 LLC sought to ensure that the operation of the business could continue. Otherwise, WGOAT15 LLC would be required to hire and/or schedule a second Line Cook, just in case Plaintiff called in for all her shifts. Then, WGOAT15 LLC would be required to pay a Line Cook to be at work, alongside Plaintiff, and not work.**

11.     Do you contend that you engaged in an "interactive process" with Ms. Alvarez regarding her requests for accommodation? If so, for each such process, state: (a) the date of every communication that was part of the process; (b) the identity of every person who participated in each communication; and (c) the specific accommodations that were offered to Ms. Alvarez as a result of the process.

**Answer**:

**Defendant GOAT states that it was not her employer. Defendant GOAT could not grant time off for WGOAT employees. Defendant asserts that Plaintiff requested time off,**

which WGOAT granted. Other than time off, Defendant does not have records of Plaintiff requesting other accommodations. Defendant does not have any records, for example, that Plaintiff requested a limitation on lifting, breaks, or other equipment to assist her with any medical issue and/or her pregnancy. Without request, however, GOAT and ADDIKT determined that a space would be fashioned from existing office space, for Plaintiff for lactation, upon her planned return after childbirth. As to the allegations in the Complaint and the Amended Complaint, Defendant does not have records of many of these "requests" having been made, or denied. Defendant's records show that all requests Plaintiff made for time off were granted. As to FMLA leave, Plaintiff is not entitled to FMLA leave as neither Defendant alone or combined are eligible and Plaintiff had not been employed for the 12 months preceding her request. Other than that, what Plaintiff appears to allege in the Complaint and Amended Complaint, if requested, would have created an undue burden upon WGOAT in that it would have to pay another Line Cook to be on schedule when Plaintiff was scheduled – just in case she did not show. Defendant GOAT did not have any power to change schedules or otherwise control Plaintiff. The decisions as to accommodations were ultimately made by WGOAT, not Defendant GOAT.

12.    Do you contend that any accommodation requested by Ms. Alvarez would have imposed an "undue hardship"? If so, for each such request, state: (a) the specific accommodation you contend would have been an undue hardship; (b) the factual basis for this contention, including any financial analysis conducted; and (c) the identity of every person with knowledge of the basis for this contention.

**Answer**:

**Defendant GOAT states that it was not her employer. As to the request to WGOAT15 LLC to freely not show up for work without any prior notice, or notice less than 2 hours, such is unreasonable and an undue hardship. Such would require to hire and/or schedule a second Line Cook for all shifts in which Plaintiff was scheduled just in case she failed to provide notice of her absence. While WGOAT15 LLC and GOAT accepted and accommodated all request for time off, an employer is not required to accept from a Line Cook, "no-call, no-show" of an unpredictable nature, on a position which requires a person to physically be present to perform work like a Line Cook. Other staff cannot simply fill in for Plaintiff, in her stead, only those who were qualified to work as Line Cooks. Notably, Plaintiff's doctor's notes do not indicate restrictions in her work to be accommodated other than time off. Defendant GOAT would not be able to accommodate anything, as Plaintiff performed no work for GOAT and GOAT could not change anything about her work, such was determined by WGOAT solely.**

13.    State every reason why Ms. Alvarez was required to seek permission from Abelardo 'Tito' Vargas each time she needed to use the restroom.

**Answer**:

**Defendant does not have records pertaining to any notification that Plaintiff was pregnant to any manager at WGOAT15 LLC, like Mr. Vargas. GOAT was not present,**

**and the Plaintiff would request GOAT to speculate as to discussions with persons who are not its employees. Regardless, for the restaurant industry, staff are required to advise when they leave the kitchen, for any reason, and provide the time of return. Brief breaks are permitted, but health code prevents eating in the cooking spaces, and lengthy breaks, for any reason, would create issues with the kitchen staff's ability to prepare food in response to customer demands.**

14.  Describe every communication between Eric Garcia and Ms. Alvarez regarding her request to be excused from heavy lifting, including the date and substance of Mr. Garcia's response to her.

<u>**Answer**</u>:

**Defendant has no records pertaining to any requests from Plaintiff to Mr. Garcia to "be excused from heavy lifting." Defendant asserts that Plaintiff's assertions pertaining to same are fabricated, like much of her Complaint and Amended Complaint.**

15.  For every instance of alleged harassing or derogatory conduct directed at Ms. Alvarez by Maximilliano Carvallo, state: (a) the date of the conduct; (b) a description of the conduct or statements made; and (c) the identity of all persons who witnessed the conduct.

<u>**Answer**</u>:

**Defendant GOAT asserts that there were no instances of harassing or derogatory conduct directed towards the Plaintiff by Maximilliano Carvallo. GOAT notes that the investigation revealed no corroboration to any of Plaintiff's alelgations.**

16.  For every instance of alleged harassing or derogatory conduct directed at Ms. Alvarez by Abelardo 'Tito' Vargas, state: (a) the date of the conduct; (b) a description of the conduct or statements made; and (c) the identity of all persons who witnessed the conduct.

<u>**Answer**</u>:

**Defendant GOAT asserts that there were no instances of harassing or derogatory conduct directed towards the Plaintiff by Abelardo Vargas.**

17.  Describe in detail the investigation, if any, that was conducted in response to Ms. Alvarez's complaint to Eric Garcia in or around November 2023 concerning the conduct of Mr. Fuentes and Mr. Carvallo.

<u>**Answer**</u>:

**Mr. Garcia interviewed Plaintiff, Mr. Carvallo, and other staff to determine that no unlawful "harassment" took place. None of the employees interviewed, including a female employee, corroborated Plaintiff's allegations.**

18.    Do you contend that Ms. Alvarez's resignation on or about February 11, 2024, was voluntary and not a constructive discharge? If so, please state: (a) the factual basis for your conclusion that her resignation was voluntary; (b) the date you believe the Plaintiff voluntarily resigned from her position and the reason for the resignation, and (c) the identity of every person with knowledge to support this conclusion; and (c) the identity of every document that supports this conclusion.

**Answer**:

**Defendant GOAT asserts that Plaintiff resigned in response to being requested to provide her return to work date, so that WGOAT15 LLC could schedule its employees for work. In order to operate a kitchen, WGOAT15 LLC needs to provide advance notice of all schedules to employees. Upon request for this date, while on medical leave, Plaintiff resigned via text message. The communications internally show that neither GOAT nor WGOAT15, LLC had any prior requests from Plaintiff for breaks or for any request not to lift heaving things. Plaintiff did not present any doctor's notes regarding the need for accommodation of frequent breaks or not lifting heavy things. Instead, rather than present any form of doctor's note to request these accommodations, Plaintiff merely resigned. Plaintiff also does not appear to be present that she would have been, nevertheless, *able* to work.**

19.    Describe every communication between Abelardo 'Tito' Vargas and Ms. Alvarez between February 7, 2024, and February 12, 2024, regarding her medical leave and her expected return to work.

**Answer**:

**The communications referred to were on non-Defendant cellular phones and accounts for non-GOAT employees. Defendant is not and has not been in possession of the complete communications between employees of WGOAT. Defendant cannot speculate as to what communications existed and/or how the communications occurred. As it relates to the five (5) day period, Defendant does not have the documents, communications, or information necessary to "describe" these. Defendant would have to speculate as to what could have been said, what was intended or meant, and/or what may also have been communicated verbally or otherwise on non-company devices. Defendant cannot describe communications it does not posses, did not posses, or did not witness. For any written communications GOAT has received from WGOAT15 LLC, same are attached hereto.**

20.    Identify every non-pregnant employee of Defendants who was disciplined or counseled for the frequency or duration of their restroom or meal breaks between September 2023 and February 2024.

**Answer**:

**Defendant asserts there are no records of any written disciplinary actions against Plaintiff at any time. Defendant's records reveal that Plaintiff was verbally counseled for failing to prepare a "smashburger" to industry standards (the meat was raw) to the owner, Lisa Gonzalez. Plaintiff was also verbally counseled multiple times for taking frequent breaks to use her cellular telephone during working hours, not breaks.  GOAT has no records indicating that Plaintiff was "disciplined or counseled" for frequency or duration of "restroom" or "meal breaks."**

21.     Do you contend that Ms. Alvarez was not a "qualified employee" under the Pregnant Workers Fairness Act (PWFA) or the Americans with Disabilities Act (ADA) at any point during her employment? If so, state: (a) how you reached that conclusion; (b) the identity of every person involved in reaching that conclusion; (c) the facts upon which you base this conclusion.

**Answer**:

**Defendant asserts that this interrogatory seeks privileged communication and/or attorney-work product. Defendant objects to the extent that this interrogatory is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. To the extent applicable, the only indication of any limitations upon Plaintiff's employment were requests for time off, which were always granted by WGOAT15 LLC. As it relates to being qualified, for all periods in time when Plaintiff could not have worked, because she was not medically cleared to work, Plaintiff is ineligible for any purported "lost wages."**

22.     Describe all training provided to your managers, including Richard Fuentes, Maximilliano Carvallo, Eric Garcia, and Abelardo 'Tito' Vargas, regarding: (a) pregnancy discrimination; (b) the Pregnant Workers Fairness Act; and (c) hostile work environment prevention.

**Answer**:

**Defendant GOAT attached the Employee Manual with the required notifications and policies/procedures for the restaurant and all WGOAT15, LLC employees.**

23.     State the terms of any insurance agreement under which any person or entity may be liable to satisfy part or all of any judgment which may be entered against Defendant GHG in this action or to indemnify or reimburse for payments made to satisfy the judgment.

**Answer**:

**None.**

24.     Identify each person you intend to call as a fact or expert witness in this action. For each person identified, provide the following information: (a) the name, address, and

telephone number for that person; (b) a description of your relationship to the identified person, if any; and (c) the substance of the proposed testimony of that witness.

**<u>Answer</u>:**

**Defendant reserves the right to disclose additional witnesses as they become available and any witnesses disclosed by the Plaintiff. Notwithstanding the foregoing, at this time, Defendant intends to call the following witnesses:**

**Carol Alvarez**
***Plaintiff's counsel***
**Ms. Alvarez is the Plaintiff in this case, who will be required to testify as to her experiences in this case.**

**Lisa Gonzalez**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**President of WGOAT15, LLC, Ms. Gonzalez will testify to her knowledge as to the facts, evidence, and events associated with the claims and defenses in this case.**

**Eric Garcia**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**Former Human Resources, Mr. Garcia will testify to his actions, observations, inspections, and regarding any and all documents associated with this case and to the facts regarding any claim or defense in this case.**

**Maximiliano Carabello**
**l/n/a unknown**
**Former Supervising chef of WGOAT15, LLC, Mr. Caraballo will testify to his actions, observations, inspections, and regarding any and all documents associated with this case and to the facts regarding any claim or defense in this case.**

**Reina Gutierrez**
**l/n/a unknown**
**Former Food Preparation Assistant of WGOAT15, LLC, Ms. Gutierrez will testify to her actions, observations, inspections, and regarding any and all documents associated with this case and to the facts regarding any claim or defense in this case.**

**Abelardo 'Tito' Vargas**
**l/n/a unknown**

**Former Supervising chef of WGOAT15, LLC, Mr. Vargas will testify to his actions, observations, inspections, and regarding any and all documents associated with this case and to the facts regarding any claim or defense in this case.**

**Any and all witnesses disclosed by Plaintiff and her medical providers.**
**Plaintiff's witnesses shall testify to Plaintiff's medical condition, fitness to work, and any restrictions communicated regarding return to work.**

**VERIFICATION PAGE**

**GOAT HOSPITALITY GROUP LLC**

Signature: *Lisa Gonzalez*

Printed Name: Lisa Gonzalez

Title: Corporate Representative

STATE OF ~~Florida~~ Virginia

COUNTY OF ~~Miami-Dade~~ Virginia Beach

BEFORE ME, the undersigned authority, personally appeared Lisa Gonzalez, as Corporate Representative of Goat Hospitality Group LLC, a Florida limited liability company, who, being first duly sworn, under oath, deposes and says that the attached is true and correct to the best of her knowledge and belief and that she has read the attached and knows the contents thereof.

The foregoing instrument was acknowledged before me by means of: ☐ physical presence or ☑ online notarization, this 19th day of November 2025, by the above-named officer on behalf of the company. She ☐ is personally known to me, or ☑ has produced __FL STATE LICENSE__ as identification.



Latasha Renee Jones

COMMONWEALTH OF VIRGINIA
ELECTRONIC NOTARY PUBLIC
REGISTRATION NUMBER
8085483
COMMISSION EXPIRES
January 31, 2027

Notarized remotely online using communication technology via Proof.

*Latasha Renee Jones*

NOTARY PUBLIC, State of ~~Florida~~ Virginia

Latasha Renee Jones

(Print, Type or Stamp Commissioned Name of Notary Public)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 1:24-cv-24135-JEM

CAROL ALVAREZ
     *Plaintiff,*

v.

GOAT HOSPITALITY GROUP LLC and
WGOAT15 LLC
     *Defendants.*

_____/

## <u>DEFENDANT WGOAT15 LLC'S VERIFIED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>

     Defendant WGOAT15 LLC ("ADDKIT"), by and through undersigned counsel, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby responds to Plaintiff's First Set of Interrogatories as follows:

### <u>RESPONSES</u>

1.    Identify all persons whom you contend have knowledge of the facts and circumstances, including but not limited to any claims and/or defenses, alleged in the Pleadings, including the facts which you contend are known to each person, and for each person so identified, specify the subject matter about which each such person has knowledge, the employer and job title of such person, and the last known address and telephone number of that person.

    <u>**Answer**</u>:

**Carol Alvarez**
***Plaintiff's counsel***
**Plaintiff has knowledge of the claims and defenses in this case.**

**Lisa Gonzalez**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**President of WGOAT15, LLC, Ms. Gonzalez has knowledge of the claims and defenses in this case, including knowledge of Ms. Alvarez's performance, duration of the business, and the closure of the business.**

**Eric Garcia**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**Human Resources, Mr. Garcia has knowledge of the claims and defenses in this case.**

**Maximiliano Carabello**
**c/o Pathman Law, LLC[1]**
**1500 NE Miami Plaza**
**Unit 3302**
**Miami, FL 33132**
**Former Supervising chef of WGOAT15, LLC, Mr. Carabello has knowledge of the claims and defenses in this case.**

**Reina Gutierrez**
**c/o Pathman Law, LLC[2]**
**1651 Southwest 2nd Street, Apt.6**
**Miami, FL 33135**
**Former Food Preparation Assistant of WGOAT15, LLC,, Ms. Gutierrez has knowledge of the claims and defenses in this case.**

**Abelardo 'Tito' Vargas**
**c/o Pathman Law, LLC[3]**
**1022 Bay Drive**
**Apt# 260**
**Miami Beach, FL 33141**
**Former Supervising chef of WGOAT15, LLC, Mr. Vargas has knowledge of the claims and defenses in this case.**

**Plaintiff's medical providers (unknown)**

**Plaintiff's medical providers have knowledge of Plaintiff's condition, pregnancy, and all restrictions to her ability to work, including whether she was able to work during the two (2) weeks following her voluntary resignation.**

2.      Identify the name, address, telephone number and email address of any person, entity or internal department who provided information, consultation, or assistance with answering these Interrogatories. If applicable, please include an identified person's official position or relationship to Defendants.

<u>**Answer**</u>:

---

[1] All former managers and employees of either Defendant will be represented by Pathman Law, LLC.
[2] All former managers and employees of either Defendant will be represented by Pathman Law, LLC.
[3] All former managers and employees of either Defendant will be represented by Pathman Law, LLC.

**Lisa Gonzalez**
**c/o Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, FL  33131**
**T - 305-379-2425**

**Ms. Gonzalez prepared these interrogatories with the assistance of counsel.**

3.    List all documents, with particularity, that you consulted, relied on, or have any relation to the substance of these interrogatories even if you did not consult with such documents to prepare these Interrogatories. Please state the title of each document, identify its signatories, including their titles, the date the document was prepared or signed, and the name of its present custodian and present location. Please include and list separately, any and all drafts of each document. Finally, if a document is stored electronically and/or in binary format, please state the location of the hard drive or other media where the information is stored.

<u>**Answer**</u>:

**Defendant objects to this interrogatory to the extent that it seeks privileged information and attorney work product. Defendant objects to this interrogatory to the extent it seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this interrogatory to the extent it require the Defendant to prepare a compilation of information. Defendant objects to this interrogatory to the extent it is vague and confusing,** *e.g.* **"**List all documents, with particularity, that you consulted, relied on, or have any relation to the substance of these interrogatories even if you did not consult with such documents to prepare these Interrogatories." **Defendant objects to this interrogatory as unduly burdensome, overly broad, and irrelevant, as it relates to, "all documents….or have any relation to the substance of these interrogatories."**

**Notwithstanding and without waiving the foregoing objections, as to non-privileged documents, Defendant attaches them in the response to Request for Production.**

4.    Do you contend that GOAT Hospitality Group LLC and WGOAT15 LLC did not operate as a joint employer or integrated enterprise with respect to Ms. Alvarez's employment? If so, state: (a) how you reached that conclusion; (b) the identity of every person involved in reaching that conclusion; (c) every fact upon which you base this conclusion, organized by the following factors: (i) interrelation of operations, (ii) common management, (iii) centralized control of labor relations, and (iv) common ownership or financial control; and (d) the identity of every document that supports this conclusion .

<u>**Answer**</u>:

**Defendant objects to this interrogatory to the extent that it explicitly seeks privileged information and attorney work product. Defendant objects to this interrogatory to the extent it seeks legal conclusion. Defendant objects to this interrogatory to the extent it is compound, comprising of multiple discreet and separate questions. Notwithstanding and without waiving the foregoing objections, Defendant responds:**

**Defendant asserts that GOAT Hospitality Group LLC and WGOAT15 LLC did not operate as a joint employer or integrated enterprise with respect to Plaintiff's employment.**

**(a)** Plaintiff's interrogatory specifically requests privileged information and Defendant asserts such privilege. **To the extent that any response is not privileged, Defendant asserts that GOAT provided limited Human Resources services to Defendant and other companies for the brief period of time that Defendant operated. Defendant asserts that GOAT did not have any positions that Plaintiff could work, nor could GOAT assign work to Plaintiff, hire/fire/promote Plaintiff for any role, control daily employment activities, schedule Plaintiff, or otherwise control salary or pay other than administration of payroll. Defendant employed Plaintiff, with GOAT assisting with some of the Human Resources functions.**

**(b)** Plaintiff's interrogatory specifically requests privileged information and Defendant asserts such privilege. **To the extent that any response is not privileged, Eric Garcia and Lisa Gonzalez.**

**(c)** Plaintiff's interrogatory specifically requests privileged information and Defendant asserts such privilege. **Notwithstanding and without waiving the foregoing objections, Defendant responds substantially (excluding the requested privileged information) and asserts that GOAT was not a co-employer and responds specifically below:**

**(i)** **Operations of GOAT and ADDIKT were separate. ADDIKT was a restaurant. GOAT is a hospitality consulting company which provides payroll, human resources assistance, and other operational and consulting assistance to various companies. GOAT is owned by a different owner than ADDIKT, which is no longer in existence. ADDIKT ceased operations in February 2023. GOAT continues to operate and provide drastically different services. GOAT had no ability to assist with hiring, firing, and made no decisions pertaining to employment actions. The profit and loss of GOAT and ADDIKT were completely separate. Defendant, ADDIKT, did not have any profit to distribute to anyone. If profit was realized, it would be distributed to the owner, Lisa Gonzalez. For GOAT, none of the profits were related to ADDIKT.**

**(ii)** **GOAT is controlled by Derek Gonzalez. ADDIKT was owned and controlled by Lisa Gonzalez. Lisa Gonzalez became a manager of GOAT in January 2023, but was not a member at the time of the resignation by Plaintiff. Lisa Gonzalez does not have any ownership of GOAT. ADDIKT did not have any ownership of GOAT and vice versa.**

**(iii)** **As it relates to centralized control of labor relations, GOAT had no power to hire or fire any employee at ADDIKT. GOAT provided a standalone service to ADDIKT purely for convenience. The employees of ADDIKT were not controlled by GOAT.  As a consequence, GOAT had no power to terminate, hire, promote,**

Case No.: 1:24-cv-24135-JEM

reassign, or otherwise exercise any control over any ADDIKT employee, including Plaintiff, who resigned.

(iv)   **As it relates to "common ownership or financial control," GOAT operated separately and maintained separate revenue streams, from ADDIKT. GOAT is owned by Derek Gonzalez. ADDIKT was owned by Lisa Gonzalez.**

**As it relates to, "(d) the identity of every document that supports this conclusion," Defendant objects to this interrogatory as unduly burdensome, overly broad, explicitly seeking privileged communications and attorney work product, and otherwise seeking irrelevant information. Notwithstanding the foregoing conclusion, ADDIKT asserts that all non-privileged documents are attached to ADDIKT'S document production.**

5.   Regarding the Family and Medical Leave Act (FMLA) paperwork issued to Ms. Alvarez that identified her employer as "GOAT Hospitality Group," state: (a) the identity of the person who prepared the paperwork; (b) the date the paperwork was prepared; (c) the date the paperwork was given to Ms. Alvarez; (d) why the paperwork was prepared; and (e) why "GOAT Hospitality Group" was listed as the employer.

**Answer**:

**Defendant asserts that this information was prepared by Eric Garcia, who was a Human Resources professional at GOAT. Mr. Garcia was accustomed to working for larger companies, in different capacities, and was unaware that neither GOAT nor ADDIKT were subject to the Family Medical Leave Act (FMLA), and Plaintiff, as a short-term employee, would, regardless, be ineligible for such benefits. Mr. Garcia prepared the documents at Plaintiff's request. Plaintiff was under the misguided belief that: (1) ADDKIT was subject to the FMLA; (2) that she was entitled to any paid leave time; (3) that she had been with any company long enough to qualify for paid or unpaid leave. Mr. Garcia's use of the name "GOAT Hospitality Group" was a mistake, in that he worked for GOAT, not ADDIKT.**

6.   For each of the following individuals, (i) Richard Fuentes, (ii) Maximilliano Carvallo, (iii) Eric Garcia, and (iv) Abelardo 'Tito' Vargas, please state:
(a)   Whether the individual ever performed work for or on behalf of Defendant WGOAT15 LLC, and if so, for each period of work, state the dates of the work performed; the nature of the work performed; and the applicable rate and method of pay; and
(b)   Whether the individual ever performed work for or on behalf of Defendant GOAT Hospitality Group LLC, and if so, for each period of work, state (i) the dates of the work performed; (ii) the nature of the work performed; and (iii) the applicable rate and method of pay.

**Answer**:

**Defendant objects to the extent that this Interrogatory is compound and comprises of several discreet and separate Interrogatories. These Interrogatories are thereby renumbered to reflect the separate nature of the responses for four (4) separate**

**individuals. Defendant objects to the extent this Interrogatory seeks irrelevant information not likely to lead to the discovery of admissible evidence, for example, the applicable rate and method of pay for alleged supervisors (regardless if they are not actually superiors), is not relevant to this case. None of the persons, by their nature, are "similarly situated," and all have different roles.**

**Richard Fuentes was not an employee of ADDIKT at any time. Richard Fuentes was not an employee of GOAT at any time. Richard Fuentes was a consultant working with ADDIKT as a 1099 independent contractor to assist in sourcing products for that restaurant location of ADDIKT.**

**Maximilliano Carvallo was an employee of ADDIKT  and was not, during the relevant periods, an employee of GOAT. Mr. Carvallo was the Head Chef for ADDIKT until January 2023.**

**Eric Garcia was an employee of GOAT, and not an employee of WGOAT15, LLC at any time. Eric Garcia was the Human Resources Manager at GOAT, responsible for payroll and human resources functions.**

**Abelardo 'Tito' Vargas was an employee of ADDIKT  and was not, during the relevant periods, an employee of GOAT. Mr. Carvallo was the Head Chef for ADDIKT until February 2023 when the restaurant shut down.**

7.    State the date on which any supervisor or manager of Defendants was first informed of Ms. Alvarez's pregnancy, and for that initial disclosure, identify: (a) the person(s) who were informed; (b) the person(s) who provided the information; and (c) the substance of the communication.

**<u>Answer</u>:**

**Defendant does not have records pertaining to any written notification that Plaintiff was pregnant to any manager at ADDIKT.  Defendant GOAT does not possess specific records as to the date that Plaintiff advised of her pregnancy. Defendant is unaware of any of the managers at ADDIKT were aware of Plaintiff's pregnancy at the time she was hired, as she was visibly pregnant within a short period of time after beginning to work for ADDIKT, and according to her paperwork to GOAT, could have been close to five (5) months pregnant at hiring.**

8.    Regarding any communication(s) in or around October 2023 where Ms. Alvarez first informed Richard Fuentes and Maximilliano Carvallo of her pregnancy, please state: (a) The date and location of each such conversation; (b) The identity of all persons present for each conversation; (c) The substance of the specific statements made by Mr. Fuentes and Mr. Carvallo in response to Ms. Alvarez's announcement; and (d) Whether you contend that Mr. Fuentes and Mr. Carvallo did not accuse Ms. Alvarez of concealing her pregnancy to obtain her position, and the factual basis for that contention.

**Answer**:

**Defendant does not have records pertaining to any notification that Plaintiff was pregnant to any manager at ADDIKT or independent contractor, like Mr. Fuentes. ADDIKT has no independent information regarding any third party's discussions with Plaintiff. Regardless of whether such statement was made, Plaintiff would have likely been four (4) to five (5) months pregnant at the time of hiring; therefore, it is unclear if ADDIKT was aware of or suspected her pregnancy at the time she was hired.**

9.    With respect to any reduction in Ms. Alvarez's scheduled work hours during her employment with Defendants, please state: (a) The specific business reason(s) for the reduction; (b) The identity of the person(s) who made the decision to reduce her hours; (c) The date the decision was made; and (d) The identity of all other non-pregnant Line Cooks whose hours were also reduced during the same time period.

**Answer**:

**ADDIKT did not reduce Plaintiff's scheduled work hours. Plaintiff reduced her hours when she repeatedly requested medical leave, which was granted. Below is the chart of hours worked by each line cook each month.**

|  | Acosta, W. | Alvarez, C. | Junior, A. |
|---|---|---|---|
| *October* | 36.29 | 123.95 | 168.1 |
| *November* | 172.58 | 152.91 | 166.12 |
| *December* | 173.68 | 178.21 | 181.82 |
| *January* | 178.23 | 158.84 | 149.94 |
| *February* | 135.01 | 23.95 | 115.37 |

**In January, Plaintiff took off from January 10-15, due to a doctor's note, which is why she has less hours during that week. Plaintiff had, in fact, been scheduled for an additional 25.5 hours that month, which would have placed her at 184.34 hours for the month, the highest of all line cooks. Additionally, just two (2) weeks later, Plaintiff requested to take off from February 7-12. Each month, Plaintiff's hours increased. The only reduction was made by Plaintiff, who requested January 10-15 off, which was granted, and again on February 7-12.**

10.    Identify every request for an accommodation made by Ms. Alvarez related to her pregnancy from October 2023 through February 2024, and for each request, state: (a) the date of the request; (b) the specific accommodation requested; and (c) the identity of the supervisor or manager to whom the request was made.

**Answer**:

Case No.: 1:24-cv-24135-JEM

**As it relates to accommodations: Plaintiff sought paid FMLA leave, despite that the statute does not provide for paid leave and, as a short-term employee working at a company with less than 50 employees, neither the employer (ADDIKT) and the employee were eligible. For the purposes of argument, and ADDIKT does not agree, even if GOAT and ADDIKT LLC were combined, they do not reach 50 employees. Plaintiff requested time off. At each instance, time off was granted. Plaintiff's requests for time off were conditioned that she provide at least 2 hours advance notice, so that ADDIKT could locate coverage for Plaintiff's work, and for a doctor's note for extended absences. The request for 2 hours advance notice constitutes the interactive process by which GOAT, on behalf of ADDIKT sought to ensure that the operation of the business could continue. Otherwise, ADDIKT would be required to hire and/or schedule a second Line Cook, just in case Plaintiff called in for all her shifts. Then, ADDIKT would be required to pay a Line Cook to be at work, alongside Plaintiff, and not work.**

11.  Do you contend that you engaged in an "interactive process" with Ms. Alvarez regarding her requests for accommodation? If so, for each such process, state: (a) the date of every communication that was part of the process; (b) the identity of every person who participated in each communication; and (c) the specific accommodations that were offered to Ms. Alvarez as a result of the process.

**<u>Answer</u>:**

**Defendant asserts that Plaintiff requested time off, which Defendant granted. Other than time off, Defendant does not have records of Plaintiff requesting other accommodations. Defendant does not have any records, for example, that Plaintiff requested a limitation on lifting, breaks, or other equipment to assist her with any medical issue and/or her pregnancy. Without request, however, GOAT and ADDIKT determined that a space would be fashioned from existing office space, for Plaintiff for lactation, upon her planned return after childbirth. As to the allegations in the Complaint and the Amended Complaint, Defendant does not have records of many of these "requests" having been made, or denied. Defendant's records show that all requests Plaintiff made for time off were granted. As to FMLA leave, Plaintiff is not entitled to FMLA leave as neither Defendant alone or combined are eligible and Plaintiff had not been employed for the 12 months preceding her request. Other than that, what Plaintiff appears to allege in the Complaint and Amended Complaint, if requested, would have created an undue burden upon Defendant in that Defendant would have to pay another Line Cook to be on schedule when Plaintiff was scheduled – just in case she did not show. Defendant was responsible for lunches for the Marriott hotel staff (which had to be timely), conferences, banquets, pool-side, for hotel guests and residents, and otherwise for any customers who walked in and requested food. A Line Cook is not a flexible role that can be filled by unskilled staff. Appropriate substitutions would need to be qualified as Line Cooks, familiar with the menu and recipes, and able to perform the essential functions of the role. Therefore, it was not possible to have servers, hosts, bartenders, food prep, bar backs, or other staff fill in or flex in their schedules. This would double the labor cost for the Plaintiff's role and create instability to be able to perform the contracted duties of Defendant.**

Case No.: 1:24-cv-24135-JEM

12.    Do you contend that any accommodation requested by Ms. Alvarez would have imposed an "undue hardship"? If so, for each such request, state: (a) the specific accommodation you contend would have been an undue hardship; (b) the factual basis for this contention, including any financial analysis conducted; and (c) the identity of every person with knowledge of the basis for this contention.

**Answer**:

**As to the request to ADDIKT to freely not show up for work without any prior notice, or notice less than 2 hours, such is unreasonable and an undue hardship. Such would require to hire and/or schedule a second Line Cook for all shifts in which Plaintiff was scheduled just in case she failed to provide notice of her absence. While ADDIKT and GOAT accepted and accommodated all request for time off, an employer is not required to accept from a Line Cook, "no-call, no-show" of an unpredictable nature, on a position which requires a person to physically be present to perform work like a Line Cook. Other staff cannot simply fill in for Plaintiff, in her stead, only those who were qualified to work as Line Cooks. Notably, Plaintiff's doctor's notes do not indicate restrictions in her work to be accommodated other than time off. The additional cost of hiring another Line Cook and to pay, potentially, for a Line Cook to work alongside Plaintiff, just in case she did not provide notice, or to perform her work, would be double the labor cost. The alternative of simply going without would create an undue burden upon Defendant to potentially breach agreements and fail to be able to produce food for the restaurant for guests, the hotel itself, and for banquets/conferences.**

13.    State every reason why Ms. Alvarez was required to seek permission from Abelardo 'Tito' Vargas each time she needed to use the restroom.

**Answer**:

**Plaintiff was not required to "seek permission" from Abdelardo 'Tito' Vargas each time Plaintiff needed to use the restroom. Instead, Plaintiff was repeatedly asked to refrain from taking breaks to talk on her cell phone.**

14.    Describe every communication between Eric Garcia and Ms. Alvarez regarding her request to be excused from heavy lifting, including the date and substance of Mr. Garcia's response to her.

**Answer**:

**Defendant has no records pertaining to any requests from Plaintiff to Mr. Garcia to "be excused from heavy lifting." Defendant asserts that Plaintiff's assertions pertaining to same are fabricated, like much of her Complaint and Amended Complaint**

15.    For every instance of alleged harassing or derogatory conduct directed at Ms. Alvarez by Maximilliano Carvallo, state: (a) the date of the conduct; (b) a description of the conduct or statements made; and (c) the identity of all persons who witnessed the conduct.

**Answer**:

**Defendant ADDIKT asserts that there were no instances of harassing or derogatory conduct directed towards the Plaintiff by Maximilliano Carvallo.**

16.    For every instance of alleged harassing or derogatory conduct directed at Ms. Alvarez by Abelardo 'Tito' Vargas, state: (a) the date of the conduct; (b) a description of the conduct or statements made; and (c) the identity of all persons who witnessed the conduct.

**Answer**:

**Defendant ADDIKT asserts that there were no instances of harassing or derogatory conduct directed towards the Plaintiff by Abelardo Vargas.**

17.    Describe in detail the investigation, if any, that was conducted in response to Ms. Alvarez's complaint to Eric Garcia in or around November 2023 concerning the conduct of Mr. Fuentes and Mr. Carvallo.

**Answer**:

**Mr. Garcia interviewed Plaintiff, Mr. Carvallo, and other staff to determine that no unlawful "harassment" took place. None of the employees interviewed, including a female employee, corroborated Plaintiff's allegations.**

18.    Do you contend that Ms. Alvarez's resignation on or about February 11, 2024, was voluntary and not a constructive discharge? If so, please state: (a) the factual basis for your conclusion that her resignation was voluntary; (b) the date you believe the Plaintiff voluntarily resigned from her position and the reason for the resignation, and (c) the identity of every person with knowledge to support this conclusion; and (c) the identity of every document that supports this conclusion.

**Answer**:

**Defendant ADDIKT asserts that Plaintiff resigned in response to being requested to provide her return to work date, so that it could schedule its employees for work. In order to operate a kitchen, ADDIKT needs to provide advance notice of all schedules to employees. Upon request for this date, while on medical leave, Plaintiff resigned via text message. The communications internally show that neither GOAT nor ADDIKT had any prior requests from Plaintiff for breaks or for any request not to lift heaving things. Plaintiff did not present any doctor's notes regarding the need for accommodation of frequent breaks or not lifting heavy things. Instead, rather than present any form of doctor's note to request these accommodations, Plaintiff merely resigned. Plaintiff also does not appear to be present that she would have been, nevertheless, *able* to work.**

19.  Describe every communication between Abelardo 'Tito' Vargas and Ms. Alvarez between February 7, 2024, and February 12, 2024, regarding her medical leave and her expected return to work.

**Answer**:

**The communications referred to were on non-Defendant cellular phones and accounts. Defendant is not and has not been in possession of the complete communications. Defendant cannot speculate as to what communications existed and/or how the communications occurred. As it relates to the five (5) day period, Defendant does not have the documents, communications, or information necessary to "describe" these. Defendant would have to speculate as to what could have been said, what was intended or meant, and/or what may also have been communicated verbally or otherwise on non-company devices. Defendant cannot describe communications it does not posses, did not posses, or did not witness.**

20.  Identify every non-pregnant employee of Defendants who was disciplined or counseled for the frequency or duration of their restroom or meal breaks between September 2023 and February 2024.

**Answer**:

**No employees were disciplined or counseled for the frequency or duration of restroom or meal breaks, including Plaintiff.**

21.  Do you contend that Ms. Alvarez was not a "qualified employee" under the Pregnant Workers Fairness Act (PWFA) or the Americans with Disabilities Act (ADA) at any point during her employment? If so, state: (a) how you reached that conclusion; (b) the identity of every person involved in reaching that conclusion; (c) the facts upon which you base this conclusion.

**Answer**:

**Defendant objects to the extent that Plaintiff explicitly seeks privileged communications and attorney-client work product.**

22.  Describe all training provided to your managers, including Richard Fuentes, Maximilliano Carvallo, Eric Garcia, and Abelardo 'Tito' Vargas, regarding: (a) pregnancy discrimination; (b) the Pregnant Workers Fairness Act; and (c) hostile work environment prevention.

**Answer**:

**ADDIKT asserts that Defendant GOAT provided any and all training, and that the Employee Manual was distributed and required for each employee to read. ADDIKT asserts that Eric Garcia was not a manager of ADDIKT.**

23.     State the terms of any insurance agreement under which any person or entity may be liable to satisfy part or all of any judgment which may be entered against Defendant WGOAT15 LLC in this action or to indemnify or reimburse for payments made to satisfy the judgment.

**Answer**:

**None.**


24.     Identify each person you intend to call as a fact or expert witness in this action. For each person identified, provide the following information: (a) the name, address, and telephone number for that person; (b) a description of your relationship to the identified person, if any; and (c) the substance of the proposed testimony of that witness.

**Answer**:

**Defendant reserves the right to disclose additional witnesses as they become available and any witnesses disclosed by the Plaintiff. Notwithstanding the foregoing, at this time, Defendant intends to call the following witnesses:**

**Carol Alvarez**
***Plaintiff's counsel***
**Ms. Alvarez is the Plaintiff in this case, who will be required to testify as to her experiences in this case.**

**Lisa Gonzalez**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**President of ADDIKT, Ms. Gonzalez will testify to her knowledge as to the facts, evidence, and events associated with the claims and defenses in this case.**

**Eric Garcia**
**c/o Pathman Law, LLC**
**Pathman Law, LLC**
**One Biscayne Tower, Suite 2400**
**2 South Biscayne Boulevard**
**Miami, Florida  33131**
**Former Human Resources of GOAT, Mr. Garcia will testify to his actions, observations, inspections, and regarding any and all documents associated with this case and to the facts regarding any claim or defense in this case.**

**Maximiliano Carabello**
**c/o Pathman Law, LLC**

Case No.: 1:24-cv-24135-JEM

**1500 NE Miami Plaza**
**Unit 3302**
**Miami, FL 33132**
**Former Supervising chef of ADDIKT, Mr. Caraballo will testify to his actions,**
**observations, inspections, and regarding any and all documents associated with this**
**case and to the facts regarding any claim or defense in this case.**

**Reina Gutierrez**
**c/o Pathman Law, LLC**
**1651 Southwest 2nd Street,Apt.6**
**Miami, FL 33135**
**Former Food Preparation Assistant of ADDIKT, Ms. Gutierrez will testify to her**
**actions, observations, inspections, and regarding any and all documents associated with**
**this case and to the facts regarding any claim or defense in this case.**

**Abelardo 'Tito' Vargas**
**1022 Bay Drive**
**Apt# 260**
**Miami Beach, FL 33141**
**Former Supervising chef of ADDIKT, Mr. Vargas will testify to his actions,**
**observations, inspections, and regarding any and all documents associated with this**
**case and to the facts regarding any claim or defense in this case.**

**Any and all witnesses disclosed by Plaintiff and her medical providers.**
**Plaintiff's witnesses shall testify to Plaintiff's medical condition, fitness to work, and**
**any restrictions communicated regarding return to work.**

**VERIFICATION PAGE**

**WGOAT15 LLC**

Signature: *Lisa Gonzalez*

Printed Name: Lisa Gonzalez

Title: Corporate Representative

STATE OF ~~Florida~~ Virginia

COUNTY OF ~~Miami-Dade~~ Virginia Beach

BEFORE ME, the undersigned authority, personally appeared Lisa Gonzalez, as Corporate Representative of WGoat15 LLC, a Delaware limited liability company, who, being first duly sworn, under oath, deposes and says that the attached is true and correct to the best of her knowledge and belief and that she has read the attached and knows the contents thereof.

The foregoing instrument was acknowledged before me by means of: ☐ physical presence or ☑ online notarization, this 19th day of November 2025, by the above-named officer on behalf of the company. She ☐ is personally known to me, or ☑ has produced FL STATE LICENSE as identification.

---

**COMMONWEALTH OF VIRGINIA · ELECTRONIC NOTARY PUBLIC**

**N**

**Latasha Renee Jones**

REGISTRATION NUMBER
8085483

COMMISSION EXPIRES
**January 31, 2027**

Notarized remotely online using communication technology via Proof.

NOTARY PUBLIC, State of ~~Florida~~ VA

Latasha Renee Jones

(Print, Type or Stamp Commissioned Name of Notary Public)