UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-24135-ALTMAN/Sanchez

**CAROL ALVAREZ**,

 *Plaintiff*,

v.

**GOAT HOSPITALITY GROUP LLC,** *et al.*,

 *Defendants.*
_____/

## ORDER DENYING MOTION TO DISMISS

  Our Plaintiff, Carol Alvarez, alleges that the Defendants—Goat Hospitality Group LLC ("GHG") and WGOAT15 LLC—discriminated and retaliated against her on the basis of her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("Title VII"), the Pregnancy Workers Fairness Act ("PWFA"), the Florida Civil Rights Act ("FCRA"), and the Miami-Dade Human Rights Ordinance ("MDHRO"). *See* Amended Complaint [ECF No. 15] ¶¶ 68–216. In her Amended Complaint, Alvarez advances eleven claims: (1) sex discrimination, in violation of Title VII (Count I); (2) retaliation, in violation of Title VII (Count II); (3) hostile work environment, in violation of Title VII (Count III); (4) pregnancy discrimination, in violation of the PWFA (Count IV); (5) retaliation, in violation of the PWFA (Count V); (6) sex discrimination, in violation of the FCRA (Count VI); (7) retaliation, in violation of the FCRA (Count VII); (8) hostile work environment, in violation of the FCRA (Count VIII); (9) sex discrimination, in violation of the MDHRO (Count IX); (10) retaliation, in violation of the MDHRO (Count X); and (11) hostile work environment, in violation of the MDHRO (Count XI). *See ibid.*

  The Defendants have moved to dismiss Alvarez's Amended Complaint on several grounds. *See generally* Motion to Dismiss ("MTD") [ECF No. 16]. After careful review, we **DENY** the MTD.

**THE FACTS**

In September 2023, the Defendants hired Alvarez as a line cook. *See* Amended Complaint ¶ 24. Approximately one month after she was hired, Alvarez learned that she was pregnant. *See id.* ¶ 26. Alvarez "experienced significant physical impairments and limitations related to her pregnancy, including but not limited to, persistent fatigue, frequent nausea, episodes of lightheadedness, difficulty standing for prolonged periods, and an inability to perform heavy lifting," which "substantially limited her ability to perform major life activities such as standing, walking, and lifting." *Id.* ¶ 29. Despite these pregnancy-related impairments, Alvarez was "able to perform the essential functions of her job with reasonable accommodations" and was, she tells us, considered "an exemplary employee." *Id.* ¶ 30.

When Alvarez informed her superiors, Richard Fuentes and Maximilliano Carvallo, that she was pregnant, they "accused [ ] Alvarez of lying during her hiring process, claiming that [ ] Alvarez had concealed her pregnancy to obtain her position with [the] Defendants." *Id.* ¶¶ 31–33. After this exchange, "Carvallo drastically cut [ ] Alvarez's scheduled work hours, which, in turn, substantially reduced [ ] Alvarez's pay." *Id.* ¶ 35. Carvallo also "engaged in sexually harassing conduct towards [ ] Alvarez, often asking [ ] Alvarez if she was in a relationship [and] making inappropriate comments" towards her. *Id.* ¶ 36.

In November 2023, Alvarez reported Fuentes and Carvallo's conduct to Eric Garcia, the Defendants' Human Resources Manager, who assured Alvarez that he would investigate her claims. *See id.* ¶¶ 37–38. "Several weeks later, Fuentes and Carvallo stopped working for Defendants." *Id.* ¶ 39. Alvarez wasn't sure if Fuentes's and Carvallo's "departures were related to her complaints but was nonetheless relieved by the news." *Ibid.* Shortly thereafter, Aberlardo Vargas assumed supervisory duties over Alvarez. *Id.* ¶ 40. Alvarez alleges that Vargas "failed to reasonably accommodate [ ] Alvarez's pregnancy related medical conditions without justification," including her requests for a meal break, sufficient time for restroom breaks, and her request to be excused from tasks that involved

heavy lifting. *Id.* ¶¶ 42–43. Vargas also apparently ridiculed Alvarez, commenting that she was "paid to work, not paid to eat," and telling her that "fifty-year-olds take their breaks faster than you." *Id.* ¶¶ 47–48. Vargas also insisted that Alvarez perform heavy-lifting tasks despite her pregnancy. *See id.* ¶¶ 49–51. Alvarez repeatedly informed Garcia of her need for reasonable accommodations—but, instead of discussing the issue with her, the "Defendants threatened to fire [ ] Alvarez if she could not keep up with the same physical demands." *Id.* ¶ 52.

On February 7, 2024, Alvarez told Vargas that she had to miss her shift because she had been hospitalized as a result of some pregnancy-related pain. *See id.* ¶ 53. Subsequently, Alvarez informed Vargas and Garcia that her "medical provider recommended she take medical leave from February 7, 2024, to February 12, 2024[.]" *Id.* ¶ 55. Despite this suggestion from Alvarez's doctor, on February 10, 2024, Vargas "demanded to know whether [Alvarez] would [ ] be reporting to work." *Id.* ¶ 56. "By this point, [ ] Alvarez recognized that [the] Defendants' unrelenting hostility and refusal to accommodate her pregnancy rendered her work environment intolerable" and "concluded that she had no choice but to resign, as remaining under these oppressive conditions threatened her own safety and well-being, and that of her unborn child." *Id.* ¶ 57.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will

reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

Alvarez asserts eleven claims under Title VII, the PWFA, the FCRA, and the MDHRO. *See generally* Amended Complaint. In their Motion to Dismiss, the Defendants advance five arguments. *First*, they contend that the Amended Complaint fails "to plead facts such as to require the Court to consider the two separate Defendants, [GHG] and [WGOAT15], as 'joint employers.'" MTD at 5. Alvarez, the Defendants say, thus fails to meet the various statutes' minimum-employee requirements. *See id.* at 6. *Second*, they say that the Amended Complaint doesn't state *either* a discrimination *or* a hostile work environment claim because Alvarez hasn't alleged that she suffered "any adverse employment action" or "that she was treated differently than any other employee." *Id.* at 7. *Third*, they argue that Alvarez hasn't stated a retaliation claim because she's failed to demonstrate that she suffered any adverse employment actions "as a result" of her complaint to the HR manager (Garcia). *See id.* at 10 ("'[The] Plaintiff's [complaint] to [the Defendants'] Human Resources professional, [Garcia], would constitute protected activity. Following this complaint, [the] Plaintiff alleged no retaliation as a result of that complaint. Initially, Plaintiff alleged the opposite, that the Human Resources professional investigated and that the two persons complained about [ ] were no longer working with her."); *see also id.* at 11 ("[The] Plaintiff's Amended Complaint merely includes claims for retaliation, without any different allegations, separate from alleged discrimination." (cleaned up)). *Fourth*, they claim that the Amended Complaint is "impermissibly vague" and doesn't "provide clear notice as to the nature of

4

her claims, [or] what facts apply to which alleged 'employer' or how [the] Plaintiff reaches statutory minimums[.]" *Id.* at 11. *Fifth*, they insist that Alvarez hasn't pled a viable constructive-discharge claim because the Amended Complaint "does not plead facts regarding [Alvarez's] working conditions, let alone that conditions were intolerable or deliberate." *Id.* at 14. We'll address (and reject) each argument in turn.

## I.    Numerosity & Joint Employers

Each of the statutes that governs Alvarez's claims defines an "employer" as a person or entity with a minimum number of employees. Title VII defines "employer" as an individual or firm that's "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person[.]" 42 U.S.C. § 2000e(b); *see also* 42 U.S.C. § 2000gg(2)(i) (defining "employer" under the PWFA as "a person engaged in industry affecting commerce who has 15 or more employees"); FLA. STAT. § 760.02(7) (defining "employer" under the FCRA as "any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person"); Miami-Dade Cnty. Code § 11A-25(2) (defining "employer" under the MDHRO as "any person who in the regular course of business has five (5) or more employees in Miami-Dade County in each of four (4) or more calendar weeks in the current calendar year and any agent, acting manager, contractor or subcontractor of such person").

Alvarez tells us that the Defendants meet these numerosity requirements because the "Defendants solely and/or jointly employed at least fifteen (15) employees or more for the applicable statutory period." Amended Complaint ¶ 10. The Defendants counter on two fronts. *First*, they say that the "Plaintiff failed to plead any fact, including that either Defendant meets the standard under any statute, to meet the minimum number of employees." MTD at 6. But, as we've just said, Alvarez expressly tells us that the Defendants employed at least fifteen people. *See* Amended Complaint ¶ 10.

5

The Defendants may disagree with this factual assertion—it may even be wrong *as a matter of fact*—but, at this stage of the case, we must assume that it's true. *See Dusek*, 832 F.3d 1246 ("[We] must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.")

*Second*, the Defendants argue that Alvarez hasn't pled sufficient facts for us to consider GHG and WGOAT15 as "joint employers" for purposes of these statutory minimums. MTD at 5. But that's not true. The Eleventh Circuit has identified three circumstances in which we may aggregate two ostensibly separate entities as a single "employer" under Title VII:

> First, where two ostensibly separate entities are highly integrated with respect to ownership and operations, we may count them together under Title VII. . . . Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as joint employers and aggregate them. . . . Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees.

*Peppers v. Cobb Cnty., Ga.*, 835 F.3d 1289, 1298 (11th Cir. 2016) (cleaned up). Alvarez easily meets this standard by alleging that the Defendants were her *joint* employers because they "collectively exercised shared authority and control over the terms and conditions of [ ] Alvarez's employment, including hiring, firing, and work assignments." Amended Complaint ¶¶ 6–7, 11. Alvarez adds that the Defendants maintain "interrelated operations, centralized management, and economic dependence on their combined businesses." *Id.* ¶ 9. By way of example, Alvarez explains that Defendant WGOAT15 administered her payroll, while Defendant GHG's "management was directly and actively involved in the events surrounding Alvarez's complaints of unlawful discrimination," including by "issuing her [Family Medical Leave Act] paperwork that identified her employer as 'GOAT Hospitality Group.'" *Id.* ¶ 8. That's all more than enough at this early stage of the case.

In any event, as Alvarez correctly observes, "determining the existence of a joint employment relationship requires fact intensive inquiries that need to be developed and are not readily amenable

to resolution on a motion to dismiss." Response at 7–8 (citations omitted). Precisely because the joint-employment inquiry is often fact-intensive, courts in our District have been reluctant to dismiss employment claims (like Alvarez's) that hinge on an allegation of joint employment. *See, e.g.*, *Downie v. BF Weston, LLC*, 2016 WL 7451427, at *4 (S.D. Fla. Dec. 23, 2016) (Marra, J.) ("[T]he determination requested by Defendants; *i.e.*, that Defendants are not joint employers, is ill-suited at this early stage. Indeed, such a decision requires a factual inquiry that is best left until an adequate record is developed."); *Diaz v. U.S. Century Bank*, 2012 WL 3597510, at *3 (S.D. Fla. Aug. 20, 2012) (Moreno, C.J.) ("[A]n exhaustive joint employment analysis would thus be premature at this stage where Plaintiffs have submitted a plausible claim. Accordingly, the Court denies Century Bank's motion to dismiss."). We thus **DENY** this portion of the Defendants' MTD.

## II.     Discrimination

Next, the Defendants argue that Alvarez has failed to state a plausible discrimination claim. A plaintiff makes out a *prima facie* case of sex or pregnancy discrimination by establishing that she: "(1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (cleaned up)).[1] A plaintiff "need not necessarily establish a *prima facie* case [of discrimination] to survive a motion to dismiss, but she must nevertheless satisfy the

---

[1] The parties agree (and we'll therefore assume) that FCRA and MDHRO discrimination, hostile work environment, and retaliation claims are all analyzed under the same framework as Title VII claims. *See* MTD at 6 ("Both the FCRA and the MDHRO are reviewed under the same standard as Title VII." (cleaned up)); Response at 12 ("The FCRA and MDHRO claims, analyzed under the same Title VII framework, are likewise sufficiently pleaded."); *see also Harkins v. Hillstone Rest. Grp., Inc.*, 2025 WL 522674, at *8 (S.D. Fla. Feb. 18, 2025) (Moreno, J.) ("The Florida Civil Rights Act [and MDHRO] [are] modeled after Title VII, and thus, claims brought under [them] are analyzed by federal courts using the same framework[.]").

pleading requirements of *Iqbal* and *Twombly*." *Melendez v. Town of Bay Harbor Islands*, 2014 WL 6682535, at *4 (S.D. Fla. Nov. 25, 2014) (Altonaga, J.) (cleaned up).

In the Defendants' view, Alvarez hasn't pled a viable Title VII discrimination claim because she hasn't alleged that she suffered "any adverse employment action" or "that she was treated differently than any other employee." *Id.* at 7; *see also ibid.* ("Employers are free to reduce employees' hours, even if a person is pregnant.").[2] Alvarez (obviously) disagrees. She says that the reduction in her hours, the resulting loss of pay, the Defendants' refusal to provide her with reasonable accommodations, and her constructive discharge all qualify as adverse employment actions. *See* Response at 10 ("[The] significant reduction in [Alvarez's] hours and consequent loss of pay is a clear adverse employment action. Furthermore, the pervasive denial of reasonable accommodations can, itself, constitute an adverse employment action. Most significantly, [the] Defendants' egregious conduct culminated in [ ] Alvarez's constructive discharge an adverse action of the highest order." (cleaned up)). At this early stage of the case, we agree with Alvarez.

To establish an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "The employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Ibid.* Put another way, an adverse employment action is "a decision of the employer [that] impacted the terms, conditions, or privileges of the plaintiff's job in a real and demonstrable way." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018) (cleaned up). Unsurprisingly, therefore, the Eleventh Circuit has found that *both* a "reduction in an employee's hours, which reduces the employee's take-home pay," *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434

---

[2] The Defendants concede that Alvarez is a member of a protected class, *see* MTD at 7 ("Plaintiff alleged she was a member of a protected class"), and don't dispute that she was qualified for her position, *see generally ibid.*

8

F.3d 1227, 1231 (11th Cir. 2006), *and* a "constructive discharge," *Menzie v. Ann Taylor Retail, Inc.*, 549 F. App'x 891, 894 (11th Cir. 2013), *can* constitute adverse employment actions, *see Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) ("Tangible employment actions consist of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone.").

Having reviewed these cases, we agree that Alvarez has identified two allegedly adverse employment actions in her Amended Complaint: the reduction in her hours (and pay) and her constructive discharge. *See* Amended Complaint ¶ 35 ("Almost immediately after learning of her pregnancy, Carvallo drastically cut [ ] Alvarez's scheduled work hours, which in turn, substantially reduced [ ] Alvarez's pay); *see also id.* ¶¶ 57–58 ("Alvarez recognized that Defendants' unrelenting hostility and refusal to accommodate her pregnancy rendered her work environment intolerable[ ] [and] concluded that she had no choice but to resign, as remaining under these oppressive conditions threatened her own safety and well-being, and that of her unborn child. . . . Defendants constructively terminated [ ] Alvarez."). That's enough for now.

We reject the Defendants' second argument—that Alvarez has "failed to allege that other employees also did not have their hours reduced," MTD 7—because a plaintiff needn't "identify each similarly situated [ ] employee for a discrimination claim to pass muster at the motion to dismiss stage," nor must she "name a specific comparator to sufficiently plead a claim of discrimination," *Melendez*, 2014 WL 6682535, at *4 (cleaned up). At this phase of the case, Alvarez need only allege that she was "treated less favorably than [ ] similarly-situated individual[s] outside [her] protected class." *Maynard*, 342 F.3d at 1289. And that's what she's done. *See* Amended Complaint ¶¶ 75–76 ("[Defendants] den[ied] [ ] Alvarez the same terms and conditions of employment afforded to other employees . . . [and] [n]o similarly situated employees outside of [ ] Alvarez's protected class endured the

discriminatory conduct that [ ] Alvarez was forced to endure."). For all these reasons, we **DENY** the Defendants' motion to dismiss Counts I, IV, VI, and IX.

### III. Hostile Work Environment

The Defendants also contend that Alvarez hasn't pled sufficient facts to support her hostile work environment claims. "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986). "To prove a hostile work environment, the plaintiff must show (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (citation omitted). "Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Ibid.* (citation omitted).

According to the Defendants, Alvarez's hostile work environment claims fail because she's only cited "a few sporadic comments directed towards her gender, not her pregnancy." MTD at 9 (citing *Ivey v. Crestwood Med. Ctr.*, 2024 WL 1269765, at *1 (11th Cir. Mar. 26, 2024)). But this argument makes no sense. *First*, it's axiomatic that a party may succeed on a hostile work environment claim "by proving that . . . discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank*, 477 U.S. at 66. *Second*, 42 U.S.C. § 2000e defines "[t]he terms 'because of sex' or 'on the basis of sex'" to include "because of or on the basis of pregnancy[.]" 42 U.S.C. § 2000e. Alvarez, therefore, may succeed on her hostile work environment claims by proving mistreatment based *either* on her gender *or* her pregnancy.

10

And Alvarez isn't relying on "sporadic comments" alone. MTD at 9. She tells us that Carvallo "*often* ask[ed] [ ] Alvarez if she was in a relationship" and repeatedly made inappropriate comments, like "'[m]assage that chicken like you massage your Cuban husband' and '[y]ou put makeup on your face so you should put it on your ass too.'" Amended Complaint ¶ 36. Alvarez also alleges that Vargas ridiculed her because of her pregnancy, telling her that "'[f]ifty-year-olds take their breaks faster than you,' and openly laughing whenever [ ] Alvarez pointed out that her slower pace stemmed from her pregnancy-related limitations." *Id.* ¶ 48. Finally, Alvarez identifies what she describes as "intolerable" conditions that went well beyond mere commentary. *See id.* ¶ 46 ("Vargas went so far as to impose an unreasonable requirement that [ ] Alvarez seek his explicit permission every single time she needed to use the restroom[.]"); *id.* ¶ 49 ("Because of her pregnancy, [ ] Alvarez requested that she be excused from lifting heavy objects. Instead of accommodating this reasonable request, Vargas flatly dismissed her concerns, stating her pregnancy 'meant nothing,' and insisting she perform the same strenuous lifting tasks as other employees without limitations.").[3]

When we take all these allegations together—and drawing all reasonable inferences for Alvarez—we think she's done just enough to state a viable hostile work environment claim here. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."). We therefore **DENY** the Defendants' motion to dismiss Counts III, VIII, and XI.

---

[3] For all these reasons, the Defendants' reliance on *Ivey* is misplaced. In *Ivey*, the Eleventh Circuit affirmed the district court's decision granting summary judgment to the defendant because the plaintiff had only "presented a single incident of an inappropriate comment about her race." *Ivey*, 2024 WL 1269765, at *1. As we've said, however, Alvarez has alleged much more than a single derogatory comment.

## IV. Retaliation

"A plaintiff asserting a retaliation claim under Title VII [or the FCRA or the MDHRO] must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)). Alvarez has done enough to satisfy each of these elements for now.

### a. Protected Activity

The Defendants concede that Alvarez engaged in statutorily protected activity when she reported Fuentes's, Carvallo's, and Vargas's discriminatory conduct to Garcia, the Defendants' HR Manager. *See* MTD at 10 ("Plaintiff's Amended Complaint [*sic*] to Human Resources professional, [Garcia], would constitute protected activity."). And we agree. *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes internal complaints of sexual harassment to superiors[.]"). Alvarez alleges that she lodged at least two complaints with Garcia. *See* Amended Complaint ¶ 37 ("In or around November of 2023, [ ] Alvarez reported Fuentes and Carvallo's discriminatory conduct to Eric Garcia [ ], an individual male who was employed by [the] Defendants as Human Resources Manager."); *id.* ¶ 50 ("In or around January 2024, [ ] Alvarez notified Garcia of Vargas's conduct, specifically informing him that she was being compelled to lift weighty items in direct conflict with her medical restrictions." (cleaned up)).[4] That's plenty for now.

---

[4] The Amended Complaint alleges that, "[i]n or around January *2023*, [ ] Alvarez notified Garcia of Vargas's conduct[.]" *Ibid.* (emphasis added). But, because this date predates her September 2023 hiring, *see id.* ¶ 26, we'll assume that Alvarez meant to allege that she registered her complaint with Garcia in January *2024*.

12

### b. Adverse Action

We've already found that Alvarez has properly identified two adverse employment actions in her complaint. *See supra* § II (finding that Alvarez's reduction in hours and constructive discharge may constitute adverse employment actions).

### c. Causal Connection

And Alvarez has pled "a causal connection between the protected activity and the adverse action." *Howard*, 605 F.3d at 1244. The Defendants, of course, disagree. *See* MTD at 10 ("Following [the November 2023 complaint to Garcia], [the] Plaintiff alleged no retaliation as a result of that complaint. Initially, [the] Plaintiff alleged the opposite, that the Human Resources professional investigated and that the two persons complained about, RF and MC, were no longer working with her."); *see also ibid* ("[The] Plaintiff alleges that she complained of her third alleged supervisor, AV. Again, Plaintiff alleged that EG investigated her complaints. Following this complaint, Plaintiff alleged no change, but instead 'continuing' conduct of any unchanging nature." (cleaned up)).

"At the motion-to-dismiss stage, a plaintiff need not prove causation but must plead sufficient facts to make it plausible." *Vega v. City of Sweetwater*, 2025 WL 2306197, at *4 (S.D. Fla. Aug. 11, 2025) (Altonaga, C.J.) (citations omitted). To establish a causal link between protected activity and an adverse employment action, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith*, 513 F.3d at 1278 (cleaned up). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Here, Alvarez has stated a plausible claim of retaliation under Title VII, the PWFA, the FCRA, and the MDHRO based on the temporal proximity between her January 2024 report to Garcia and her February 2024 constructive discharge.

Alvarez alleges that, in January 2024, "she notified Garcia of Vargas's conduct, specifically informing him that she was being compelled to lift weighty items in direct conflict with her medical restrictions." Amended Complaint ¶ 50. Despite her condition, "Garcia agreed with Vargas and informed [ ] Alvarez that she could, in fact, lift heavy objects because she was only seven [ ] months pregnant." *Id.* ¶ 51. According to Alvarez, this (alleged) refusal to accommodate her request for a reasonable accommodation—coupled with Vargas's disregard for Alvarez's need for medical leave, *see id.* ¶ 56 ("On or around February 10, 2024, while [ ] Alvarez remained on authorized medical leave, Vargas demanded to know whether she would still be reporting to work, disregarding her doctor's specific instructions to rest and recover.")—caused her constructive discharge in February 2024, just one month after her final report to Garcia. This close temporal proximity between Alvarez's protected activity and the adverse employment action is enough for us to **DENY** the Defendants' motion to dismiss Counts II, V, VII, and X.

### V. Vagueness

The Defendants maintain that Alvarez's complaint is so "vague" that it doesn't "provide clear notice as to the nature of her claims[.]" MTD at 11. So, they ask us to order her "to file a more definite statement." *Id.* at 14. This argument borders on frivolity. "A motion for a more definite statement may only be granted [ ] if a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Hernandez v. Two Bros. Farm, LLC*, 579 F. Supp. 2d 1379, 1381–82 (S.D. Fla. 2008) (Martinez, J.) (citing *Betancourt v. Marine Cargo Mgmt.*, 930 F. Supp. 606, 608 (S.D. Fla.1996) (King, J.)). A motion for a more definite statement is appropriate only when a complaint is drafted in such a way that it's "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996).

Alvarez's Amended Complaint is not so vague as to prevent the Defendants from understanding which claims it's asserting—or which facts support those claims. As we've explained, the Amended Complaint sufficiently provides a factual basis for each of Alvarez's claims. And the Defendants understood the Amended Complaint well enough to file an intelligent and targeted motion to dismiss, which correctly identified Alvarez's claims and the grounds on which they rest. We thus **DENY** the Defendants' request for a more definite statement.

### VI. Constructive Discharge

Finally, the Defendants contend that Alvarez has failed to state a constructive-discharge claim because she "does not plead facts regarding her working conditions, let alone that [the] conditions were intolerable or deliberate," and because she has "failed to allege any treatment specific to her which was deliberate, let alone so intolerable that any employee would be compelled to resign." MTD at 14. We reject this argument for two reasons. *First*, Alvarez doesn't assert an independent constructive-termination claim. Instead, she identifies her constructive termination as one of the adverse employment actions that undergirds her other claims. *See generally* Amended Complaint. *Second*, Alvarez *has* sufficiently alleged that she was constructively discharged from her position. A "[c]onstructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Piccirillo v. City of Pembroke Pines*, 2016 WL 1028333, at *5 (S.D. Fla. Mar. 14, 2016) (Bloom, J.) (citing *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 1536 (2010)). To qualify as constructive discharge, an employee's working conditions must be objectively "unbearable," such that "a reasonable person in that person's position would be compelled to resign." *Ibid.*

Alvarez's Amended Complaint meets this standard because she alleges that the Defendants' "unrelenting hostility" (as described throughout her Amended Complaint) and "refusal to accommodate her pregnancy" rendered the prospect of her continued employment intolerable.

15

Amended Complaint ¶ 57. Specifically, Alvarez believed that the Defendants' insistence that she lift heavy objects threatened *both* her own health *and* the well-being of her unborn child. *Ibid.* These allegations, which we must assume to be true, are enough for us to conclude that Alvarez may have been constructively discharged. We therefore **DENY** this final part of the Defendants' MTD.

## CONCLUSION

After careful review, therefore, we **ORDER** and **ADJUDGE** that the Defendants' Motion to Dismiss [ECF No. 16] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on January 21, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record