**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CAROL ALVAREZ,

               *Plaintiff,*                         CASE NO.: 1:24-CV-24135-RKA

v.

GOAT HOSPITALITY GROUP LLC,
and WGOAT15 LLC,

               *Defendants*.

_____/

### PLAINTIFF'S MOTION TO DEEM JOINT EMPLOYER STATUS ESTABLISHED, OR IN THE ALTERNATIVE, FOR ADVERSE JURY INSTRUCTION AND PRECLUSION OF EVIDENCE

Plaintiff, CAROL ALVAREZ, by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rules of Civil Procedure 37(c)(1) and 37(d), and this Court's inherent authority, for relief arising from Defendants, GOAT Hospitality Group LLC ("GOAT") and WGOAT15 LLC's ("WGOAT15"), inaccurate representations to this Court that material financial and corporate documents do not exist, on which this Court relied in denying Plaintiff's motion to compel, and Defendants' failure to correct the record after their own corporate representative testified under oath that the documents do exist.

Plaintiff respectfully requests the following relief: (a) an order deeming it established for all purposes in this litigation that Defendants GOAT and WGOAT15 are joint employers under Title VII, the Pregnant Workers Fairness Act, the Florida Civil Rights Act, and the Miami-Dade County Human Rights Ordinance, and that both entities are jointly and severally liable for any violations of these statutes proven at trial; or, in the alternative, (b) an order precluding Defendants from presenting evidence or argument that the two entities are separate employers, instructing the

jury that it may presume the entities operated as a single joint employer, and compelling production of all withheld financial and corporate documents within fourteen days.

## BACKGROUND

Plaintiff brought this action for pregnancy discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"); the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA"); and the Miami-Dade County Human Rights Ordinance, Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26 ("MDHRO"). Plaintiff worked as a line cook at ADDiKT, a restaurant in Miami that GOAT's own website describes as one of its "umbrella brands." (L. Gonzalez Dep. 223:6–14.) Central to Plaintiff's claims is whether GOAT and WGOAT15 operated as joint employers, because that determination controls whether both entities are liable for the discrimination, harassment, and retaliation Plaintiff alleges. The financial and corporate records that would resolve that question, including tax returns, bank statements, QuickBooks accounting records, and operating agreements, are the documents Defendants have refused to produce throughout this litigation.

On December 11, 2025, defense counsel represented to Magistrate Judge Sanchez that financial documents responsive to Plaintiff's Requests for Production "do not exist." ECF No. 29 at 2, ¶ 5. The magistrate denied Plaintiff's motion to compel based on that representation, and this Court affirmed. ECF Nos. 29, 34. On January 21, 2026, Defendants' own corporate representative, a licensed attorney who serves as outside general counsel for both entities and who is the sole owner of WGOAT15, testified under oath that those same documents do exist and identified exactly where they are: tax returns at the entities' accountant, bank statements at Bank of America, and QuickBooks records in electronic storage. She then admitted that she never contacted the

accountant, never called the bank, and chose not to review any financial documents to prepare for her testimony because she "didn't see how" doing so "would have helped." (L. Gonzalez Dep. 17:15–17.) When Plaintiff's counsel attempted to confer about supplementing these documents, defense counsel refused to answer three straightforward yes-or-no questions and stated: "There is no conferral." Ex. B.

For these reasons, and those set forth in further detail below, Plaintiff respectfully requests that this Court enter an order deeming joint employer status established for all purposes in this litigation, or in the alternative, an order precluding Defendants from presenting evidence that the entities are separate employers and directing Defendants to produce all withheld financial and corporate documents within fourteen days.

### A. The Financial and Corporate Records at Issue

Whether GOAT and WGOAT15 are joint employers determines whether both entities are liable for the violations Plaintiff alleges. Courts in the Eleventh Circuit evaluate joint employer status by examining the interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control between the entities. *Scott v. Sarasota Doctors Hosp., Inc.*, 688 F. App'x 878, 887 (11th Cir. 2017). To develop evidence on each of these factors, Plaintiff served two categories of discovery. First, Plaintiff served Requests for Production targeting the financial and corporate relationship between the entities. RFP No. 29 sought financial documents reflecting the relationship between GOAT and WGOAT15, including profit and loss statements, tax returns, and bank records. RFP No. 31 sought corporate formation documents, operating agreements, and organizational records. ECF No. 25 at 3. Second, Plaintiff noticed a Rule 30(b)(6) deposition on 36 topics, including financial integration between the entities (Topic 33) and accounting systems, bank accounts, and tax returns (Topic 34). Ex. C. Defendants objected

to the document requests, and Plaintiff moved to compel production of the documents sought by RFP Nos. 29 and 31. ECF No. 25.

### B.  The December 11, 2025, Hearing and Resulting Orders

Magistrate Judge Sanchez held a hearing on Plaintiff's motion to compel on December 11, 2025. ECF No. 29. Defendants had not filed any written response. ECF No. 26. At the hearing, defense counsel represented that the financial documents sought by RFP No. 29 "do not exist." The magistrate denied Plaintiff's request to compel production as moot, finding it unnecessary to order production of documents that, according to Defendants, do not exist. ECF No. 29 at 2, ¶ 5 ("Denied as Moot given that Defendants had responded, and confirmed at the hearing, that the requested documents do not exist."). The magistrate similarly denied as moot Plaintiff's request under RFP No. 31, based on defense counsel's representation that no responsive documents exist "other than those publicly available on Sunbiz." ECF No. 29 at 2, ¶ 6. This Court affirmed the magistrate's order on January 12, 2026, relying on the same factual findings. ECF No. 34 at 2–3. These were not qualified representations. Defense counsel did not state that the documents might exist in the possession of third parties, that they were privileged, or that Defendants had been unable to locate them. The representation was categorical: the documents do not exist.

### C.  The January 21, 2026, Corporate Representative Deposition

Defendants designated Lisa Gonzalez as their Rule 30(b)(6) representative for both GOAT and WGOAT15. (L. Gonzalez Dep. 10:7–10.) Ms. Gonzalez is not a lay witness unfamiliar with litigation. She is a licensed attorney who serves as outside general counsel for both entities through her firm, Lisa S. Gonzalez, P.A. (L. Gonzalez Dep. 20:11–12.) She is the 100% owner of WGOAT15 (L. Gonzalez Dep. 33:10–14), her husband Derek Gonzalez is the sole owner of GOAT, and she conducted all document searches in this litigation (L. Gonzalez Dep. 81:15–17)

and signed the verified interrogatory responses on behalf of both entities (L. Gonzalez Dep. 81:22–23). She has been deposed more than five times in prior matters. (L. Gonzalez Dep. 5:22–24.) At the outset of the deposition, she confirmed that she had reviewed all 36 noticed topics and was prepared to testify on each of them. (L. Gonzalez Dep. 10–15.) Her testimony, however, revealed that the documents defense counsel told the magistrate 'do not exist' do, in fact, exist, and that Ms. Gonzalez knows exactly where they are.

On tax returns, Ms. Gonzalez testified that GOAT has filed taxes (L. Gonzalez Dep. 290:9–14), that the entities' accountant is Josh Kornick (L. Gonzalez Dep. 291:4–5), and that she could access the tax returns through Mr. Kornick (L. Gonzalez Dep. 291:6–12). She then admitted: "No, I didn't contact him. I searched for them but I didn't contact him." (L. Gonzalez Dep. 291:18–20.)

On bank statements, Ms. Gonzalez confirmed that GOAT maintained a bank account at Bank of America with Derek Gonzalez as the sole signer. (L. Gonzalez Dep. 88:16–23.) She stated that she tried to access the records through the Bank of America online portal but found the account "closed." (L. Gonzalez Dep. 89:19–20.) She then conceded: "I did not call Bank of America for the records." (L. Gonzalez Dep. 90:18.) She does not know whether Derek Gonzalez, the sole owner and sole signer on the account, ever contacted the bank to request the records. (L. Gonzalez Dep. 91:11.)

On accounting records, Ms. Gonzalez confirmed that GOAT used QuickBooks, managed by accounting manager Ana Rangel. (L. Gonzalez Dep. 53:7–12.) She acknowledged that the system was accessed as recently as "last year" (L. Gonzalez Dep. 54:3–4) and that she herself has accessed it in the past (L. Gonzalez Dep. 79:1–14). She did not access or review any QuickBooks records in preparation for this litigation or the deposition.

On corporate documents, when asked about written policies for manager duties, Ms. Gonzalez volunteered the phrase "like in an operating agreement?" (L. Gonzalez Dep. 39:12), demonstrating awareness that such documents may exist. RFP No. 31, which sought corporate formation documents including operating agreements, was denied as moot based on defense counsel's representation that only Sunbiz records exist. ECF No. 29 at 2, ¶ 6.

Ms. Gonzalez did not fail to obtain these documents because they were unavailable. She chose not to obtain them. Her own testimony makes this plain:

> I don't see how that would have helped me like better prepare for today to review a bank statement. (L. Gonzalez Dep. 17:15–17.)
>
> I don't need to go full, you know, balance sheets to know that there's no financial integration between the companies. (L. Gonzalez Dep. 18:2–5.)
>
> [A] bank statement or a P&L or a ledger is not going to tell me who exercises financial control of these companies. (L. Gonzalez Dep. 18:9–11.)

She did not review any financial documents to prepare. (L. Gonzalez Dep. 17:6–8.) She did not interview Derek Gonzalez. (L. Gonzalez Dep. 25:1.) She did not interview Eric Garcia. (L. Gonzalez Dep. 25:6.) She did not contact accountant Josh Kornick. (L. Gonzalez Dep. 291:18–20.) She did not call Bank of America. (L. Gonzalez Dep. 90:18.) She did not review GOAT's employee handbook and stated she does not know "if one even exist." (L. Gonzalez Dep. 156:8.)

When asked about the topics she was designated to address, Ms. Gonzalez repeatedly testified that she did not know. Asked when GOAT's bank account was closed: "I don't know." (L. Gonzalez Dep. 89:1.) Asked whether Derek Gonzalez had contacted Bank of America to obtain records for this litigation: "I don't know." (L. Gonzalez Dep. 91:11.) Asked about ownership percentages in GOAT's portfolio companies (entities that GOAT's own website markets as its portfolio brands): she could not answer. Asked whether Derek Gonzalez owns more than 50% of

one such entity, she stated: "I just said I don't know." (L. Gonzalez Dep. 121:1.) Asked who owns another: "I said I don't know." (L. Gonzalez Dep. 122:2.) Pressed on whether she knows how much her own spouse owns of the restaurant where Plaintiff worked: "I just told you I don't know off the top of my head." (L. Gonzalez Dep. 122:11.)

Asked whether she had searched for GOAT's employee handbook or operating agreement, Ms. Gonzalez stated: "I don't know if one even exist. I'm telling you I didn't read it before this deposition and I told you I didn't." (L. Gonzalez Dep. 156:8–9.) She then offered to suspend the deposition rather than continue answering questions: "Yes, I'm saying I don't know. If there's a line of [questioning] that's going to come from this handbook do you want to suspend this deposition?" (L. Gonzalez Dep. 156:11–13.) She is outside general counsel for both entities and does not know whether either has an operating agreement or employee handbook. She also could not identify all categories of employee leave at WGOAT15, managing to name only one. (L. Gonzalez Dep. 145:22–146:3.)

Defense counsel's conduct at the deposition followed the same pattern. On the very topics where counsel had represented to the magistrate that no responsive documents exist, counsel raised speaking objections, asserted privilege over non-privileged questions, and instructed the witness not to answer. (*See, e.g.*, L. Gonzalez Dep. 22–26 (privilege objection to the existence of a fee agreement between counsel and the entities); L. Gonzalez Dep. 24–26 (instruction not to answer regarding preparation); L. Gonzalez Dep. 153–154 (accusing Plaintiff's counsel of "chastis[ing]" the witness when Plaintiff noted the obligations of a Rule 30(b)(6) designee).)

### D.  Defendants' Refusal to Supplement or Confer

Following the deposition, Plaintiff's counsel emailed defense counsel on January 27, 2026, requesting production of the documents Ms. Gonzalez identified under oath: tax returns from

accountant Josh Kornick, bank statements from Bank of America, and QuickBooks records. Plaintiff cited Defendants' continuing obligation under Federal Rule of Civil Procedure 26(e) to supplement prior discovery responses that were incomplete or incorrect. Ex. B.

Defense counsel responded that same day by mischaracterizing the deposition testimony, stating that Defendants "did not testify that they 'never' reached out to Bank of America" (Ms. Gonzalez's actual testimony: "I did not call Bank of America for the records" (L. Gonzalez Dep. 90:18), invoking Fifth Amendment protections regarding tax filings, and asserting that the documents are "not in their care, custody, or control." Ex. B.  On January 28, Plaintiff's counsel attempted to narrow the dispute by posing three specific yes-or-no questions: (1) Is it Defendants' position that no tax return documents exist for either entity for the past five years, including in the possession of their CPA? (2) Is it Defendants' position that no bank statements exist for either entity, including in the possession of Bank of America? (3) Is it Defendants' position that no QuickBooks records exist for either entity? Ex. B.

Defense counsel refused to answer any of the three questions. Instead, counsel stated: "There is no conferral. You are trying to create legal issues which do not exist and you have vexatiously litigated with a Motion to Compel, a hearing, and an objection." Ex. B.  Discovery closed the following day.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 37(d) authorizes sanctions when a party's designated Rule 30(b)(6) representative fails to appear for deposition. Fed. R. Civ. P. 37(d)(1)(A). An inadequately prepared Rule 30(b)(6) designee is treated as a failure to appear. *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1297 (S.D. Fla. 2019); *Curtis v. SNL Distribution Servs. Corp.*, No. 1:19-cv-3083, 2020 U.S. Dist. LEXIS 259385, at *12 (N.D. Ga. 2020). Rule 37(d) does not require a

prior court order before sanctions may be imposed. Fed. R. Civ. P. 37(d)(1)(A). When triggered, the court may impose any sanction listed in Rule 37(b)(2)(A), including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A)(i).

Rule 37(c)(1) provides a separate and automatic sanction for failures to disclose or supplement discovery. If a party fails to provide information required by Rule 26(a) or to supplement a prior response as required by Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to exclusion, the court may impose any sanction available under Rule 37(b)(2)(A)(i) through (vi), including deeming facts established. *Id.*

A corporation producing a Rule 30(b)(6) designee has "an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable, and binding answers on its behalf." *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995). The designee must prepare by reviewing "documents, past employees, or other sources." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). A corporate representative has no discretion to unilaterally decide which noticed topics warrant preparation or which documents are worth reviewing. *See Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 564 (S.D. Fla. 2001). The adequacy of preparation is measured by the "totality of the testimony." *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012).

In determining whether to impose severe sanctions such as deeming facts established, courts in this Circuit consider "(1) whether the party's failure resulted from willfulness, bad faith, or fault, rather than inability to comply; (2) whether the other party has been prejudiced; and (3)

whether lesser sanctions are adequate." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

Both Rule 37(b)(2)(C) and Rule 37(d)(3) contain mandatory fee-shifting provisions requiring the court to order the party or the attorney who failed to act, or both, to pay the reasonable expenses caused by the failure, including attorney's fees, unless the failure was substantially justified or other circumstances make an award unjust. Fed. R. Civ. P. 37(b)(2)(C), 37(d)(3). Independent of Rule 37, federal courts possess inherent authority to manage their proceedings and to sanction conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991).

## LEGAL ARGUMENT

The discovery violations at issue in this motion are not isolated incidents involving unrelated topics. They are coordinated, and they target a single factual question: whether GOAT and WGOAT15 are joint employers. Each category of withheld evidence maps directly to the factors courts examine under *Scott*, 688 F. App'x at 887. Tax returns reveal ownership structure and whether the entities file consolidated returns. Bank statements reveal financial commingling, shared funding, and transfers between entities. Operating agreements define management authority and the formal legal relationship between the entities. QuickBooks records show whether the entities maintain integrated or separate accounting systems. The inaccurate representation to the magistrate, the manifestly unprepared corporate representative, and the refusal to supplement all served the same purpose: preventing Plaintiff from developing evidence of joint employer status.

### A. The Representation to Magistrate Judge Sanchez Was Inaccurate and Has Never Been Corrected

On December 11, 2025, defense counsel represented to Magistrate Judge Sanchez that financial documents responsive to RFP No. 29 "do not exist," and both the magistrate and this

Court relied on that representation in denying Plaintiff's motion to compel. ECF Nos. 29, 34. Six weeks later, Defendants' own corporate representative testified under oath that the documents do exist: tax returns are maintained by accountant Josh Kornick (L. Gonzalez Dep. 291:4–12), bank statements are available through Bank of America (L. Gonzalez Dep. 88:16–23), and QuickBooks records exist in electronic form (L. Gonzalez Dep. 53:7–8). Ms. Gonzalez admitted she could have obtained the tax returns by contacting Mr. Kornick but chose not to do so. (L. Gonzalez Dep. 291:18–20.) This is not a situation where documents were lost, destroyed, or genuinely unavailable. The corporate representative identified the custodians, the institutions, and the systems where the documents are stored. The representation to the magistrate was, at best, inaccurate, and it has never been corrected. In *Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 566–70 (S.D. Fla. 2001), the court confronted the same sequence: counsel told a magistrate that documents did not exist, the party's own witnesses later testified that they did, and the court found that the failure to correct the record demonstrated bad faith warranting sanctions. *Id.* at 572.

There are only two possible explanations. Either defense counsel knew in December that the documents existed and misrepresented their existence to the magistrate, or defense counsel learned no later than January 21 that the prior representation was inaccurate and failed to correct it. Under either explanation, Defendants had a duty to supplement under Rule 26(e), which requires correction "in a timely manner" when a party learns that a prior response was "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Discovery closed the next day, and no supplementation was ever made.

**B.  Defendants Produced a Manifestly Unprepared Corporate Representative**

A corporation that designates a Rule 30(b)(6) witness takes on an obligation to prepare that witness to testify "fully and completely" on the noticed topics. *King*, 161 F.R.D. at 476. The witness must prepare by reviewing all reasonably available sources, including "documents, past employees, or other sources." *Brazos River Authority*, 469 F.3d at 433. The witness may not decide for herself that certain noticed topics are unimportant or that certain documents are not worth reviewing. *See Inmuno Vital*, 203 F.R.D. at 564.

Ms. Gonzalez was noticed on, among other topics, Topic 33, which required testimony on financial integration between the entities, and Topic 34, which required testimony on accounting systems, bank accounts, and tax returns. She confirmed at the outset that she was prepared to testify on these topics. (L. Gonzalez Dep. 10–15.) But she did not review any financial documents (L. Gonzalez Dep. 17:6–8), did not contact the accountant who maintains the entities' tax returns (L. Gonzalez Dep. 291:18–20), did not call Bank of America to request account records (L. Gonzalez Dep. 90:18), did not interview Derek Gonzalez (L. Gonzalez Dep. 25:1), did not access QuickBooks, and did not review the employee handbook, which she stated she does not know "if one even exist" (L. Gonzalez Dep. 156:8). She testified that she made a deliberate decision not to review financial documents because she did not believe they were relevant to her preparation. (L. Gonzalez Dep. 17:15–17; 18:2–5; 18:9–11.)

This level of preparation does not satisfy the obligations of a Rule 30(b)(6) designee. A corporate representative does not have discretion to unilaterally decide which noticed topics warrant review or which documents are irrelevant. *Inmuno Vital*, 203 F.R.D. at 564. The result was testimony that, measured by the "totality" standard of *QBE*, 277 F.R.D. at 691, amounts to a failure to appear under Rule 37(d). She could not identify when the bank account was closed. (L.

Gonzalez Dep. 89:1.) She could not say whether the sole owner of GOAT contacted the bank. (L. Gonzalez Dep. 91:11.) She could not testify to ownership percentages in GOAT's portfolio companies. (L. Gonzalez Dep. 121:1; 122:2; 122:11.) She did not know whether GOAT has an operating agreement. (L. Gonzalez Dep. 156:8–9.) In a pregnancy discrimination case, she could name only one category of employee leave. (L. Gonzalez Dep. 145:22–146:3.) When an inadequately prepared designee is unable to answer questions on the noticed topics, Rule 37(d) treats that as a failure to appear and authorizes sanctions without a prior court order. *Kartagener*, 380 F. Supp. 3d at 1297.

### C. Defendants Failed to Supplement and Are Barred from Using the Withheld Evidence

Under Rule 26(e)(1)(A), a party that has responded to a discovery request must supplement or correct its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Defendants' responses stated that the financial documents sought by RFP No. 29 do not exist. Defense counsel confirmed that position to the magistrate. ECF No. 29 at 2, ¶ 5. Defendants' own corporate representative then testified under oath that the documents do exist and identified exactly where they are. Defendants never supplemented their prior responses. Discovery closed the next day.

When Plaintiff attempted to confer about supplementation, defense counsel refused to answer three specific yes-or-no questions about whether the documents exist and declared: "There is no conferral." Ex. B.  Defendants could have supplemented their responses, sought a protective order, or sought guidance from the magistrate. They chose instead to refuse all engagement. *Cf. Inmuno Vital*, 203 F.R.D. at 571–72 (party's failure to correct false representation to court after learning the truth demonstrated bad faith warranting sanctions).

Under Rule 37(c)(1), Defendants' failure to supplement their materially incorrect responses bars them from using the withheld documents, or Ms. Gonzalez's unprepared testimony, to oppose a finding of joint employer status at summary judgment or trial. Defendants cannot withhold financial evidence during discovery and then rely on the absence of that evidence to argue the entities are separate.

### D.  The Relief Sought is Warranted and Proportional Under the Eleventh Circuit's Three-Factor Framework

The relief Plaintiff seeks is directly proportionate to the discovery violations described above, and all three factors of the Eleventh Circuit's sanctions analysis support it. Every violation in this case targeted a single factual question: whether GOAT and WGOAT15 are joint employers. The remedy of deeming that status established matches the scope of the violation. It does not grant default judgment on any claim. Plaintiff must still prove discrimination, harassment, retaliation, constructive discharge, and damages at trial. Defendants retain every defense on the merits. The order would resolve only whether both entities are liable for violations that Plaintiff proves.

In deciding whether to impose severe sanctions for discovery violations, courts in this Circuit consider three factors: (1) whether the party's failure to comply resulted from willfulness, bad faith, or fault, rather than inability to comply; (2) whether the other party has been prejudiced as a result of the failure to comply; and (3) whether dismissal or other severe sanctions are warranted as a lesser alternative. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Each factor supports the relief sought here.

**i. Willfulness.** The first factor asks whether the failure resulted from willfulness, bad faith, or fault rather than inability to comply. *Id.* Ms. Gonzalez's own testimony establishes that the failure to produce documents and prepare for the deposition was a deliberate choice. Her statement that she "didn't see how" reviewing financial documents "would have helped" (L. Gonzalez Dep.

17:15–17) reflects a decision not to comply, not a lack of ability. Her admission that she "searched for" but "didn't contact" the accountant (L. Gonzalez Dep. 291:18–20) reveals that she checked her own files, found nothing, and stopped, choosing not to pick up the phone. *See Diamond v. Diamond (In re Diamond Tr. U/A/D 10/28/2005)*, No. 16-CV-81923-BRAN, 2019 U.S. Dist. LEXIS 239063, at *8 (S.D. Fla. Dec. 16, 2019) (finding willful violation warranting default sanctions where party's reason for failure to produce recordings was that he "did not look for these"). The timeline of representations reinforces this conclusion. Defense counsel told the magistrate the documents do not exist in December 2025. The corporate representative testified they do exist in January 2026. Defense counsel refused to answer three binary questions about whether they exist on January 28. Ex. B.  This sequence of conduct is consistent with the pattern the court found sanctionable in *Inmuno Vital*, where counsel represented to a magistrate that documents did not exist and the party's own witnesses later testified that they did. 203 F.R.D. at 569–70.

ii. **Prejudice.** The second factor asks whether the opposing party has been prejudiced by the discovery violation. *Malautea*, 987 F.2d at 1542. Discovery closed on January 22, 2026, one day after the deposition. The summary judgment deadline is February 23, 2026. Mediation is scheduled for March 11, 2026. Plaintiff has had no opportunity to analyze the financial records that would establish the corporate relationship between the entities, no opportunity to depose witnesses about the contents of those records, no ability to retain expert assistance to evaluate the financial data, and no basis on which to prepare a mediation strategy that accounts for the entities' actual corporate structure or ability to pay. This informational asymmetry was created entirely by Defendants' discovery conduct. Prejudice may be presumed where a party's discovery violations prevent the opposing party from developing its case. *See Inmuno Vital*, 203 F.R.D. at 572.

15

**iii. Adequacy of lesser sanctions.** The third factor asks whether the sanction sought is warranted in light of lesser alternatives. *Malautea*, 987 F.2d at 1542. An order compelling production would not be adequate. Plaintiff would receive complex financial records after the close of discovery and weeks before summary judgment, with no opportunity to depose witnesses about the contents of those documents, no time to retain expert analysis, and no ability to use the records effectively at mediation. A monetary sanction alone would not remedy the informational harm because it would not restore Plaintiff's ability to develop the joint employer record at a meaningful stage of the litigation. The relief Plaintiff seeks avoids both problems. Deeming joint employer status established resolves only the factual question that Defendants' violations were designed to obscure while preserving every other issue in the case for resolution on the merits. The evidence already in the record independently supports this conclusion: GOAT's own website describes itself as "the umbrella brands" and lists ADDiKT, the restaurant where Plaintiff worked, as one of its portfolio concepts. (L. Gonzalez Dep. 223:6–14.) Deeming joint employer status established does not grant Plaintiff anything the financial records, had they been produced, would not have confirmed. It relieves Plaintiff of the burden of proving a fact that Defendants prevented her from developing evidence to prove.

Accordingly, the three-factor analysis supports the primary relief Plaintiff seeks: an order deeming it established that GOAT and WGOAT15 are joint employers under Title VII, the Pregnant Workers Fairness Act, the Florida Civil Rights Act, and the Miami-Dade County Human Rights Ordinance, and that both entities are jointly and severally liable for any violations of these statutes proven at trial. If the Court declines to deem joint employer status established, the alternative relief is similarly proportionate: an order precluding Defendants from presenting evidence or argument that the entities are separate employers, an instruction that the jury may

presume the entities operated as a single joint employer with the burden shifting to Defendants to rebut that presumption, and an order directing Defendants to produce all withheld financial and corporate documents within fourteen days.

### REQUESTED RELIEF

Plaintiff respectfully requests that this Court enter an order, pursuant to Federal Rules of Civil Procedure 37(c)(1) and 37(d), and this Court's inherent authority, deeming the following facts established for all purposes in this litigation: that GOAT Hospitality Group LLC and WGOAT15 LLC are joint employers under Title VII, the Pregnant Workers Fairness Act, the Florida Civil Rights Act, and the Miami-Dade County Human Rights Ordinance, and that both entities are jointly and severally liable for any violations of these statutes proven at trial.

In the alternative, if the Court declines to deem joint employer status established, Plaintiff requests an order (a) precluding Defendants from presenting any evidence or argument at summary judgment or trial that GOAT and WGOAT15 are separate employers or that they do not constitute a joint employer; (b) precluding Defendants from offering testimony or documents to contradict or supplement the testimony Ms. Gonzalez gave at the January 21, 2026 deposition regarding corporate structure, financial relationships, and operational integration; (c) instructing the jury that it may presume GOAT and WGOAT15 operated as a single integrated enterprise and are joint employers, with the burden shifting to Defendants to rebut that presumption by clear and convincing evidence; and (d) directing Defendants to produce within fourteen days all tax returns for both entities for the past five years (from Josh Kornick or the IRS), all bank statements (from Bank of America or other financial institutions), all QuickBooks accounting records, and all operating agreements and corporate formation documents.

Under either alternative, Plaintiff requests that the Court require Defendants and their counsel, jointly and severally, to pay Plaintiff's reasonable attorney's fees and costs caused by the violations described herein, in an amount to be determined upon submission of time records, pursuant to the mandatory fee-shifting provisions of Rule 37(b)(2)(C) and Rule 37(d)(3). Plaintiff further requests such other and further relief as this Court deems just and proper.

## CONCLUSION

The record establishes a coordinated pattern of discovery abuse targeting a single issue: whether GOAT and WGOAT15 are joint employers. Defense counsel represented to the magistrate that financial documents do not exist. Defendants' own corporate representative, their outside general counsel and co-owner of one of the entities, then testified under oath that those documents do exist, identified exactly where they are, and admitted she chose not to obtain them. She was unprepared to testify on the very topics she was designated to address, and when confronted with the contradiction between her testimony and counsel's prior representation, defense counsel refused to confer and refused to supplement. Every violation targets the same factual question, and the relief Plaintiff seeks is limited to that question. Accordingly, this Court should deem joint employer status established or, in the alternative, preclude Defendants from contesting that status and direct production of the withheld documents.

Respectfully submitted,

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749

**MACDONALD LAW, PLLC**
420 SW 7th Street, Suite 1118
Miami, FL 33130
Tel: (786) 500-9675
Email: kyle@macdonaldemploymentlaw.com

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that he conferred with counsel for Defendants in a good faith effort to resolve by agreement the issues raised herein and has been unable to do so.

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served this 23rd day of February 2026, on all counsel of record on the service list below via Notices of Electronic Filing generated by CM/ECF.

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

## SERVICE LIST

**PATHMAN LAW, LLC**

Tara E. Faenza, Esq.
Florida Bar No.: 106928
tfaenza@pathmanlaw.com
Alejandra Muñiz Marcial, Esq.
Florida Bar No.: 1019266
amunizmarcial@pathmanlaw.com
One Biscayne Tower, Suite 2400
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 379-2425
Telefax No.: (305) 379-2420

*Counsel for Defendants GOAT HOSPITALITY*
*GROUP LLC and WGOAT15 LLC*