**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CAROL ALVAREZ,                                        Case No.: 1:24-cv-24135-RKA

  *Plaintiff*,

v.

GOAT HOSPITALITY GROUP LLC and
WGOAT15 LLC

  *Defendants*.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, GOAT HOSPITALITY GROUP LLC ("GOAT") and WGOAT15 LLC ("ADDIKT") (collectively "Defendants"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, hereby move for summary judgment on all counts of Plaintiff's Amended Complaint. In support thereof, Defendants rely upon the pleadings, the deposition testimony of Plaintiff Carol Alvarez taken on January 22, 2026 ("Alvarez Dep."), the Declaration of Eric Garcia ("Garcia Decl.")[1], the Declaration of Lisa Gonzalez on behalf of WGOAT15 LLC ("Gonzalez Decl."), the Declaration of Derek Gonzalez on behalf of Goat Hospitality Group LLC ("Goat Decl."), the exhibits thereto, Plaintiff's Response to Request for Production, Defendants' Response to Request for Production, and the record evidence.

## I. INTRODUCTION

This case involves a former line cook, Carol Alvarez ("Plaintiff"), who worked at ADDIKT's restaurant at 485 Brickell Avenue, 15th Floor, Miami, Florida, from approximately four (4) months, between October 2023 until her voluntary resignation on or about February 11, 2024. Plaintiff brings eleven counts against both Defendants under Title VII of the Civil Rights Act, 42

---

[1] The Declaration of Eric Garcia together referenced exhibits attached thereto is contained within Defendants' Response to Request for Production.

U.S.C. § 2000e; the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg; the Florida Civil Rights Act ("FCRA"), § 760.01, Florida Statutes; and the Miami-Dade County Human Rights Ordinance ("MDHRO"), alleging pregnancy discrimination, retaliation, and hostile work environment.

Plaintiff's own deposition testimony confirms the fatal defects in her claims. Most critically, Plaintiff admitted under oath that she never requested any accommodation from her employer, that voluntarily quit her job, that she never saw a psychiatrist and declined both medication and therapy for her alleged emotional distress, and that payroll records do not support her claim that her hours were reduced because of her alleged protected activity or her pregnancy. These admissions, together with the undisputed record evidence, entitle Defendants to summary judgment on all counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party must present more than a "scintilla" of evidence; there must be evidence "on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendant, WGOAT15 LLC operated a restaurant called "ADDIKT" at 485 Brickell Avenue, 15th Floor, Miami, Florida 33131. (Gonzalez Decl. ¶ 2).

2. Defendant, Goat Hospitality Group LLC, is a separate company that provided consulting services, including payroll administration through ADP and human resources consulting, to hospitality businesses including ADDIKT. (Gonzalez Decl. ¶ 4-9; Goat Decl. ¶ 10-14).

3. Goat and ADDIKT are separate legal entities with different owners, different office locations, separate bank accounts, and no shared operations. (Gonzalez Decl. ¶ 4-9; Goat Decl. ¶ 10-14).

4. Goat did not hire, fire, schedule, supervise, manage, discipline, or control the terms and conditions of Plaintiff's employment with ADDIKT. (Gonzalez Decl. ¶ 9; Goat Decl. ¶ 8).

5. At all relevant times, Goat employed fewer than fifteen (15) employees. (Goat Decl. ¶ 15).

6. Plaintiff was hired by ADDIKT as a Line Cook in or around October 2023. (Gonzalez Decl. ¶ 10).

7. Plaintiff informed ADDIKT of her pregnancy at some point during her employment. (Garcia Decl. ¶ 2).

8. Plaintiff reported to Goat's human resources consultant, Eric Garcia, a complaint regarding her supervisor, Maximiliano Carvallo. (Garcia Decl. ¶ 19). In Plaintiff's deposition, Plaintiff characterized this complaint as follows: "What I complained to Eric about Maximiliano was that he was harassing me sexually." (Alvarez Dep. 150:9–10). Plaintiff also acknowledged that Garcia's notes reflected her complaint that Carvallo provided "too much instruction" and that she felt he "wanted her." (Alvarez Dep. 149:18–19).

9. Goat, as the outside human resources consultant, conducted an investigation of Plaintiff's complaint, interviewing multiple ADDIKT employees by and through Eric Garcia. Plaintiff confirmed that Garcia asked her to come to his office and took notes during the

investigation. (Alvarez Dep. 148:1–6). No other employees corroborated Plaintiff's allegations. (Garcia Decl. ¶ 43-46).

10. After the investigation, Carvallo departed from ADDIKT, and no further complaints of sexual harassment were reported by Plaintiff.

11. Plaintiff admitted under oath that she never requested any accommodation from her employer. When asked, "When is the first time that you asked for any form of accommodation from either Eric or the chef that you worked with?" Plaintiff responded: "I didn't ask for any accommodation." When further pressed, "Did you ever ask for any accommodation?" she answered, "No." (Alvarez Dep. 170:1–3, 170:16–19).

12. On or around February 7, 2024, Plaintiff called in approximately 45 minutes before her shift to report she had visited a hospital. Plaintiff confirmed: "Chef Tito said that 45 minutes was not enough time for me to advise him that I was having" an issue. (Alvarez Dep. 170:10–12). ADDIKT's standard policy required three (3) hours' advance notice; Vargas accommodated Plaintiff by reducing the requirement to two (2) hours.

13. Plaintiff's medical provider recommended leave from February 7 through February 12, 2024, and ADDIKT granted this leave without any adverse employment action. (Garcia Decl. ¶ 110).

14. Plaintiff admitted she voluntarily resigned. When asked, "And, Ms. Alvarez, you, in fact, quit your job; is that correct?" Plaintiff answered: "Yes." (Alvarez Dep. 193:3–5). At the time of her resignation, Plaintiff was on approved medical leave and was not subject to any working conditions.

15. Plaintiff's resignation text stated that she felt she had "no choice but to resign due to the health of my pregnancy," but the text was sent after she received notification that she was not

eligible for FMLA leave. Specifically, Eric Garcia informed Plaintiff that "since you came to work, you have only worked 627 hours in total, and you have not completed a year of work." (Alvarez Dep. 187:19–23; Garcia Decl. ¶108-109). Plaintiff confirmed she "determined to resign after [she was] told that [she was] not eligible for FMLA leave." (Alvarez Dep. 190:10–11).

16. Regarding hours, Plaintiff conceded she did not know whether all employees' hours were reduced. When asked, "Were you aware that the hours had been cut for everybody?" Plaintiff responded: "Like I said, I was only worrying about my business." (Alvarez Dep. 160:21–24). Payroll records do not reflect that Plaintiff's hours were reduced substantially, and in fact show she worked more hours in certain months than other line cooks. (Alvarez Dep. 162:10–14).

17. Plaintiff never saw a psychiatrist for her claimed emotional distress. When asked, "Did you, in fact, see a psychiatrist?" she answered: "No." (Alvarez Dep. 193:23–24). Plaintiff declined medication and also refused to follow through with therapy, testifying: "I didn't want to follow it." (Alvarez Dep. 195:3).

18. Plaintiff admitted she never asked Eric Garcia for medical leave pertaining to her pregnancy, testifying: "Never. I never asked for free days of my own. It was all through medical notes." (Alvarez Dep. 188:17-18).

19. Plaintiff did not preserve copies of any job applications she submitted after leaving ADDIKT. When asked if she made copies of job applications, she answered: "No." (Alvarez Dep. 114:10).

20. ADDIKT ceased all operations approximately two (2) weeks after Plaintiff's resignation. (Gonzalez Decl. ¶¶ 38–40; Garcia Decl. ¶ 115.)

21. Plaintiff received and acknowledged ADDIKT's employment policies handbook containing anti-harassment policies and complaint procedures. (Garcia Decl. ¶ 17; Gonzalez Decl. ¶ 11).

22. ADDIKT proactively planned for Plaintiff's maternity leave (although unpaid) and arranged a room for Plaintiff's anticipated return to work. (Gonzalez Decl. ¶¶ 31–32).

## IV. ARGUMENT

### A. All Claims Against Goat Must Be Dismissed Because Goat Was Not Plaintiff's Employer

Title VII, the PWFA, the FCRA, and the MDHRO impose liability upon "employers." Courts have identified three circumstances in which it is appropriate to aggregate multiple entities for the purposes of counting employees.

> First, where two ostensibly separate entities are "'highly integrated with respect to ownership and operations,'" we may count them together under Title VII. This is the "single employer" or "integrated enterprise" test. Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "joint employers" and aggregate them. This is the "joint employer" test. Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees. This is the "agency" test.
> *Lyes v. City of Riviera Beach*, 166 F.3d 1332 (11th Cir. 1999).

First, under the "single employer" test, Goat was an independent contractor providing administrative services, such as payroll processing through ADP and human resources consulting, to ADDIKT and other hospitality clients. There is no overlap in ownership. (Gonzalez Decl. ¶ 4-9; Goat Decl. ¶ 10-14).

Second, under the "joint employer" test, ADDIKT contracted with Goat. Goat did not hire, fire, schedule, supervise, or control any aspect of ADDIKT's employees or Plaintiff's working

conditions. Even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Goat exercised the degree of control necessary to establish employer status.

Third, under the "agency" test, ADDIKT did not delegate control to Goat any traditional rights over employees employment. ADDIKT maintained its control to hire, fire, schedule, and supervise its own employees.

None of these factors support a finding that Goat was Plaintiff's employer under any test. Plaintiff was employed solely by ADDIKT. Additionally, Goat employed fewer than fifteen employees at all relevant times, failing to meet the statutory threshold for coverage under Title VII (42 U.S.C. § 2000e(b)), the PWFA (42 U.S.C. § 2000gg(2)), and the FCRA (§ 760.02(7), Fla. Stat.).

**B. Plaintiff Cannot Establish a Prima Facie Case of Pregnancy Discrimination (Counts I, IV, VI, IX)**

Plaintiff fails to state a claim for relief under Title VII, the FCRA, and the MDCRO. Both the FCRA and the MDCRO are reviewed under the same standard as Title VII. "[P]arallel hostile work environment sexual harassment claims ... brought pursuant to § 760.10 (7) of the Florida Civil Rights Act and ... pursuant to § llA-26(1) of the Miami-Dade County Human Rights Ordinance ..... The Florida Civil Rights Act is modeled after Title VII, and thus, claims brought under it are analyzed by federal courts using the same framework .... " *Harkins v. Hillstone Rest. Grp., Inc.*, No. 24-23800-CIV-MORE, 2025 U.S. Dist. LEXIS 28775, at *23 (S.D. Fla. Feb. 18, 2025).

> A plaintiff makes out a prima facie case of sex or pregnancy discrimination under Title VII or the FCRA by establishing she or: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.

*Melendez v. Town of Bay Harbor Islands*, No. 14-22383-CIV, 2014 U.S. Dist. LEXIS 164959, at \*8-9 (S.D. Fla. Nov. 25, 2014).

While Plaintiff alleged she was a member of a protected class, she failed to allege (1) any adverse employment action or (2) that she was treated differently than any other employee. "[A]n adverse employment action is a serious and material change in the terms, conditions, or privileges of employment. A tangible employment action constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Id*. at \*11.

### 1. Plaintiff Cannot Establish an Adverse Employment Action

Plaintiff was not demoted, reduced in pay, or terminated. She voluntarily resigned while on approved medical leave. At her deposition, Plaintiff unequivocally admitted: "Yes," she quit her job. (Alvarez Dep. 193:3–5). A voluntary resignation is not an adverse employment action. To convert it into a constructive discharge, Plaintiff must show conditions were "so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

Critically, at the time of her resignation, Plaintiff was on approved medical leave; leave she requested and ADDIKT granted. She was not working and not subject to any working conditions. The record reveals that Plaintiff resigned after learning she was ineligible for FMLA leave because she had worked only 627 hours and had not completed a year of employment. (Alvarez Dep. 187:19–23, 190:10–11). Ineligibility for FMLA leave is not an act of discrimination; it is the application of a neutral statutory requirement. Under these circumstances, no reasonable person would conclude that conditions were so "extraordinary and egregious" as to compel resignation. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

Plaintiff's own deposition testimony fatally undermines her constructive discharge claim, which is the sole basis upon which she can establish an adverse employment action, given that she was never demoted, suspended, or terminated. Plaintiff admitted under oath that the sexually harassing conduct that forms the core of her hostile work environment allegations ceased entirely after her complaint to Garcia. When asked, "After this discussion, did — with Eric Garcia, was there any further comments from Maximiliano Caraballo of a sexual nature?" Plaintiff answered: "No." Counsel then asked, "Did it stop after you spoke to Eric Garcia?" and Plaintiff confirmed: "Yes. Because then he got fired." (Alvarez Dep. 165:18–23). Carvallo departed, and Plaintiff never saw or spoke to him again. (Alvarez Dep. 166:1–16). The conduct Plaintiff attributes to her subsequent supervisor, Chef Tito Vargas, assigning shifts, requesting advance notice of absences, and critiquing her work pace, amounts to routine workplace management, not the kind of "extraordinary and egregious" discriminatory conduct that could render working conditions objectively intolerable. *See Hipp* at 1231. Moreover, at the time Plaintiff resigned, she was on approved medical leave and not subject to any working conditions at all. She confirmed that she "determined to resign" only after learning she was ineligible for FMLA leave (Alvarez Dep. 190:10–11), which is a neutral statutory determination, not an act of discrimination. A reasonable employee whose sexual harassment complaint had been investigated and resolved, whose time-off requests had been granted, and who was on approved leave at the time of resignation would not have felt compelled to quit. Plaintiff's voluntary resignation cannot be converted into a constructive discharge, and without it, she has no adverse employment action to sustain any of her discrimination, retaliation, or hostile work environment claims.

### 2. Plaintiff's Hours Reduction Claim Is Unsupported

Plaintiff alleges her hours were cut because of her pregnancy, but the objective payroll records and her own testimony refute this claim. When confronted with ADDIKT's pay summary at her deposition, defense counsel established that "the records do not reflect that [Plaintiff's] hours were reduced substantially" and that Plaintiff "in fact . . . worked more hours in certain months than other line cooks, even when [she] took time off." (Alvarez Dep. 162:10–14). Plaintiff had no response. She could not provide a specific dollar figure for her alleged lost wages and conceded her estimates were "relative." (Alvarez Dep. 162:5–11). When asked whether she was aware that hours had been cut for all employees, not just her, Plaintiff admitted: "Like I said, I was only worrying about my business." (Alvarez Dep. 160:21–24). This is fatal to her claim. Garcia reviewed the record of the schedules issued by the supervising chef and the records of the hours works by the staff of ADDIKT, and he found Plaintiff's hours were similar to that of other line cooks. (Garcia Decl. ¶ 66-67).

Indeed, Plaintiff cannot identify a single similarly situated employee outside her protected class who received more hours or better scheduling during the same period. This failure is independently dispositive. To establish disparate treatment, a plaintiff must show that a similarly situated comparator was treated more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The comparator must be "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc). Plaintiff bears this burden and has wholly failed to meet it. The payroll records affirmatively show she was treated comparably to, and in some months better than, her fellow line cooks despite her time off. No reasonable jury could find that Plaintiff's scheduling was an adverse employment action driven by pregnancy discrimination.

11

### 3. Defendants' Legitimate, Non-Discriminatory Reasons Defeat Pretext

Even assuming a prima facie case, Defendants articulate legitimate, non-discriminatory reasons for every challenged action, and Plaintiff cannot show pretext. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

ADDIKT's advance-notice policy was a neutral business requirement applied to all employees. A line cook's unplanned absence could shut down the kitchen. Far from enforcing this policy more harshly against Plaintiff, Vargas reduced the standard three-hour notice requirement to two hours for her (Alvarez Dep. 170:10–12); an accommodation, not discrimination. All of Plaintiff's time-off requests were granted without adverse consequence. Plaintiff admitted she "never asked for free days of my own" (Alvarez Dep. 188:17), yet every medical absence she requested was approved. ADDIKT even proactively planned for her maternity leave and arranged a lactation room, which is hardly the conduct of an employer bent on punishing a pregnant employee. (Gonzalez Decl. ¶ 4-9; Goat Decl. ¶ 10-14).

And Plaintiff's FMLA ineligibility was a neutral statutory determination: she had worked only 627 hours and had not completed a year of employment. (Alvarez Dep. 187:19–23). Communicating that fact was a legal obligation, not retaliation.

To survive summary judgment, Plaintiff must produce "significantly probative" evidence that these reasons are false and that discrimination was the real motive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). She has none. She cannot point to a single statement by any supervisor linking any employment decision to her pregnancy. She cannot identify a similarly situated non-pregnant employee treated more favorably. And the objective payroll records confirm comparable treatment. Where every challenged action has a legitimate

justification that Plaintiff cannot rebut, summary judgment is warranted. *Chapman v. AI Transport*, 229 F.3d 1012, 1024–25 (11th Cir. 2000).

### C. Plaintiff's PWFA Claims Fail Because She Admitted She Never Requested Accommodations (Counts IV, V)

The PWFA requires employers to make "reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). The employer's duty is triggered when the employee communicates her limitations and need for accommodation.

Plaintiff's own testimony is dispositive on this point. When asked whether she ever requested any form of accommodation, Plaintiff stated unequivocally:

> *"I didn't ask for any accommodation." (Alvarez Dep. 170:16).*
> *"No." (Alvarez Dep. 170:19, in response to "Did you ever ask for any accommodation?").*

Plaintiff further admitted she "never asked for free days of my own" and that her time off was "all through medical notes." (Alvarez Dep. 188:17–18). Defendants cannot be held liable for failing to accommodate limitations that were never communicated through an accommodation request. Moreover, all of Plaintiff's requests for time off were granted, and ADDIKT proactively planned for her maternity leave and arranged a lactation room. Absent a request for accommodation, there is no obligation to engage in an interactive process, and Defendants are entitled to summary judgment on both PWFA counts.

### D. Plaintiff's Retaliation Claims Fail (Counts II, V, VII, X)

To establish retaliation, a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists. *Burlington Northern*

*& Santa Fe Railway Co. v. White*, 548 U.S. 53, 67–68 (2006). Plaintiff's claims fail on all three elements.

### 1. Protected Activity

Plaintiff's sole formal complaint was her November 2023 report to Garcia regarding Carvallo's sexual harassment. (Alvarez Dep. 147:21–148:1). The complaint was promptly investigated, Carvallo was coached, and the sexually harassing conduct stopped as Plaintiff herself admitted. (Alvarez Dep. 165:18–23). Although, Plaintiff now attributes retaliatory intent to Vargas's subsequent conduct. Plaintiff never reported that conduct as discrimination or retaliation through the established complaint procedures. An employer cannot retaliate against protected activity it does not know about. With respect to any post-Carvallo actions, Defendants had no notice of any further protected activity to retaliate against.

### 2. Materially Adverse Action

Plaintiff was never demoted, suspended, or terminated. She voluntarily quit while on approved leave (Alvarez Dep. 193:3–5), prompted by learning she was ineligible for FMLA because she had not worked the required hours. (Alvarez Dep. 187:19–23, 190:10–11). Accurately communicating statutory FMLA ineligibility, while granting every time-off request and proactively planning maternity leave and a lactation room, would not dissuade any reasonable employee from engaging in protected activity. *Burlington Northern*, 548 U.S. at 68.

### 3. Causal Connection

The temporal sequence defeats Plaintiff's claim rather than supporting it. Defendants' response to her complaint was corrective. Plaintiff's complaint was investigated, Carvallo was coached, and the harassment ceased. The subsequent actions Plaintiff challenges occurred months later under a different supervisor, Vargas, who had no involvement in or connection to the original complaint. Where the alleged retaliatory actor is different from the subject of the protected activity and there

is no evidence the new supervisor was motivated by the prior complaint, the causal chain is broken. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001). Vargas's conduct, assigning shifts, requesting advance notice, and expecting job performance, constitutes legitimate management, not retaliation.

**E. Plaintiff's Hostile Work Environment Claims Fail (Counts III, VIII, XI)**

A hostile work environment claim requires proof that harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). The standard is demanding — Title VII does not establish "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Plaintiff's claims fall well short.

**1. Carvallo's Conduct Was Isolated and Remedied**

Plaintiff identifies only two sexually harassing remarks by Carvallo: the "massage the chicken" comment and the "put makeup on your ass" comment. (Alvarez Dep. 151:8–13). While these may be crude, these alleged isolated remarks occurred during a limited period and do not constitute severe or pervasive harassment. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam). More critically, Plaintiff admitted the harassment ended after her complaint. When asked whether there were any further sexual comments from Carvallo, she answered: "No." Asked directly whether it stopped after she spoke to Garcia, she confirmed: "Yes. Because then he got fired." (Alvarez Dep. 165:18–23). She never saw or spoke to Carvallo again. (Alvarez Dep. 166:11–16). Conduct that ceases after a complaint cannot be pervasive.

### 2.   Vargas's Conduct Was Workplace Management, Not Harassment

Plaintiff attempts to fill the gap by attributing hostile conduct to Vargas, but his alleged actions are fundamentally different. There are no alleged sexual remarks, no comments about her gender, and no facially discriminatory statements. Plaintiff herself distinguished Carvallo's conduct as "more of a verbal harassment," while Vargas's involved workload and scheduling. (Alvarez Dep. 164:14–15). Plaintiff testified Vargas assigned her shifts requiring her to "do the work of three people" (Alvarez Dep. 164:4–6), required advance notice of absences, and critiqued her pace. These are routine supervisory actions, not actionable harassment. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). Plaintiff points to no comment by Vargas referencing her pregnancy or gender. Her subjective belief that Vargas intended to "harass me and have me quit" (Alvarez Dep. 164:6) is insufficient. The standard requires conduct that is both objectively and subjectively offensive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993).

### 3.   The Conduct Cannot Be Aggregated

Plaintiff cannot combine Carvallo's isolated comments with Vargas's subsequent management actions into a single course of severe or pervasive harassment. The two supervisors' conduct was separated in time, different in character, and attributable to different individuals with no demonstrated connection whose employment did not even overlap. *See Mendoza*, 195 F.3d at 1247. On this record, no reasonable jury could find that Plaintiff endured a hostile work environment.

## F. Defendants Are Entitled to the *Faragher/Ellerth* Defense

Even assuming a hostile work environment, Defendants are entitled to the *Faragher/Ellerth* affirmative defense. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). The employer must show: (1) it

exercised reasonable care to prevent and correct harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of corrective opportunities.

Both elements are satisfied. ADDIKT maintained an anti-harassment policy, and Goat as HR consultant promptly investigated Plaintiff's initial complaint. Plaintiff confirmed that Garcia conducted an investigation (Alvarez Dep. 148:1–6), and the complained-of conduct ceased.

As to the second prong, Plaintiff unreasonably failed to report any subsequent alleged harassment through the established procedures. Despite having her initial complaint investigated and resolved, Plaintiff did not file any further complaints about Vargas or anyone else through the handbook's reporting mechanism. This is dispositive. *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1296–97 (11th Cir. 2000); *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1306 (11th Cir. 2007) (proof that employee failed to use complaint procedure will normally suffice to satisfy the employer's burden under the second element of the defense).

## G. Plaintiff Cannot Establish Cognizable Damages

Even if liability could be established, Plaintiff's damages claims fail.

### 1. Lost Wages

ADDIKT ceased operations approximately two weeks after Plaintiff's voluntary resignation. Plaintiff therefore cannot establish lost wages beyond that brief period. Additionally, Plaintiff failed to mitigate her damage. She admitted she did not preserve copies of any job applications (Alvarez Dep. 114:10) and could not produce documentation of her mitigation efforts.

### 2. Emotional Distress

Plaintiff's emotional distress claims are fatally undermined by her own testimony. When asked whether she saw a psychiatrist, Plaintiff answered: "No." (Alvarez Dep. 193:23–24). When asked about therapy, she admitted: "I didn't want to follow it." (Alvarez Dep. 195:3). Plaintiff also

declined medication, testifying she could not afford to be sleepy because she had two young children. (Alvarez Dep. 194:22–25). Plaintiff's failure to seek or accept treatment for her alleged emotional distress severely undermines the existence and severity of any such damages. Plaintiff has not provided any record evidence to substantiate her damages.

### 3. Punitive Damages

Punitive damages are not warranted because Defendants engaged in good faith compliance efforts: maintaining anti-harassment policies, employing a dedicated HR consultant, and promptly investigating all complaints. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 545 (1999).

## V. CONCLUSION

Plaintiff's own testimony establishes the absence of genuine disputes of material fact on each count of the Amended Complaint. Plaintiff admitted she never requested accommodation, voluntarily quit her job while on leave, failed to report subsequent alleged harassment, and declined any treatment for her claimed emotional distress. Payroll records contradict her hours-reduction claim. Goat was not her employer and independently lacks the statutory employee threshold. For the foregoing reasons, Defendants respectfully request that this Court grant summary judgment in their favor on all counts of Plaintiff's Amended Complaint, or in the alternative, grant partial summary judgment on all claims for which the undisputed facts establish Defendants' entitlement to judgment as a matter of law.

Dated: February 23, 2026

Respectfully submitted,
**Lisa S. Gonzalez, P.A.**
*Attorney for Defendants*
3990 Kumquat Ave.
Miami, Florida 33133
Phone: 561-222-7303
Email: Lgonzalez@lsg.legal
BY: /s/ *Lisa Gonzalez*
**Lisa S. Gonzalez, Esq.**
Florida Bar No: 109486

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2026 a copy of the foregoing was served on all counsel of record identified on the Service List below via CM/ECF.[2]

By: /s/ *Tara E. Faenza, Esq.*
TARA E. FAENZA, ESQ.

## Service List

**Kyle T. MacDonald, Esq.**
Florida Bar No.: 1038749
MacDonald Law, PLLC
420 SW 7th St Suite 1118
Miami, FL 33130
Telephone No.: (786) 500-9675
Email: kyle@macdonaldemploymentlaw.com
*Counsel for Plaintiff*

**Lisa S. Gonzalez, Esq.**
Florida Bar No: 109486
**Lisa S. Gonzalez, P.A.**
3990 Kumquat Ave.
Miami, Florida 33133
Phone: 561-222-7303
Email: Lgonzalez@lsg.legal
*Attorney for Defendants*

---

[2]Counsel files and serves this Motion for Summary Judgment due to an error in Co-Counsel, Lisa Gonzalez's ECF account to file documents.