# DECLARATION OF LISA GONZALEZ
# ON BEHALF OF WGOAT15 LLC d/b/a ADDIKT
# IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Lisa Gonzalez, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

## I. Background

1. I am over the age of 18 and have personal knowledge of all the information in this Declaration.
2. I am the owner of WGOAT15 LLC ("ADDIKT"). ADDIKT is a Delaware Limited Liability Company that operated a restaurant under the name "ADDIKT" at 485 Brickell Avenue, 15th Floor, Miami, Florida 33131. The restaurant serviced a hotel, residential buildings, and limited retail customers at the Icon Brickell location.
3. I was personally involved in the oversight and management of ADDIKT's restaurant operations and am familiar with the events and circumstances described in this Declaration.

## II. ADDIKT and GOAT Are Separate Entities

4. I have no ownership interest in Goat Hospitality Group LLC ("Goat"). I am not, and have never been, an owner, member, or officer of Goat. Goat is owned by a different individual.
5. ADDIKT and Goat are separate and distinct legal entities. ADDIKT is a Delaware Limited Liability Company. Goat is a Florida Limited Liability Company. There is no parent-subsidiary, affiliate, or common-ownership relationship between the two companies.
6. ADDIKT operated its restaurant on the 15th floor of 485 Brickell Avenue. Goat maintained offices on the 49.5th floor of the same building. These were entirely separate locations.
7. ADDIKT and Goat maintained separate bank accounts.
8. ADDIKT contracted with Goat to provide certain administrative services, including payroll processing through ADP and human resources consulting. Goat provided these services as an independent contractor. Goat also provided similar consulting services to other hospitality clients beyond ADDIKT.
9. ADDIKT maintained sole and exclusive control over all aspects of its employees' employment, including hiring, firing, scheduling, supervising, disciplining, assigning work, and setting rates of pay. Goat had no authority over any of these decisions.

## III. Plaintiff's Employment at ADDIKT

10. ADDIKT hired Plaintiff Carol Alvarez as a line cook on or about October 10, 2023. Plaintiff was employed solely by ADDIKT.

11. Plaintiff was informed of and received ADDIKT's Employee Handbook, which included anti-discrimination and anti-harassment policies, as well as complaint reporting procedures. Plaintiff signed an acknowledgment confirming her receipt of the handbook.
12. A true and correct copy of the ADDIKT Employee Handbook, including Plaintiff's signed acknowledgment of receipt. This document was created and maintained in the regular course of ADDIKT's business, it was ADDIKT's regular practice to provide this handbook to all new employees and to obtain signed acknowledgments at or near the time of hire, and this copy was kept in ADDIKT's personnel files as a business record maintained in the ordinary course of business. A true and correct copy of the handbook was attached to the Declaration of Eric Garica.
13. From approximately October 10, 2023 through January 9, 2024, Plaintiff was supervised by Maximiliano Carvallo, Head Chef. Beginning on or about January 9, 2024, after Carvallo's departure, Plaintiff was supervised by Abelardo "Tito" Vargas.

## IV. Uniform Workplace Policies

14. ADDIKT maintained a standard policy requiring all employees to provide a minimum of three (3) hours' advance notice before canceling a scheduled shift. This policy existed to ensure the kitchen could be properly staffed, as an absent line cook could render the kitchen unable to serve customers. This policy applied uniformly to all employees regardless of pregnancy status or any other characteristic.
15. Chef Vargas reduced the advance-notice requirement from three (3) hours to two (2) hours for Plaintiff as an accommodation. This was more lenient than the standard policy applied to all other employees.
16. ADDIKT did not permit employees to eat while working in the kitchen, cooking, or serving food. This prohibition was a food safety requirement to ensure the food preparation area remained free of contamination and sanitary, consistent with health code standards and best practices. This policy applied equally to all employees.
17. ADDIKT had policies permitting employees to eat free food during meal breaks in a designated break area or in another part of the building away from the food preparation area. ADDIKT did not deny meal breaks to any employee, including Plaintiff. However, employees were required to ensure proper coverage of their station before taking breaks, which is standard in any busy restaurant kitchen.
18. ADDIKT did not have any policies refusing restroom breaks to employees. All employees, including Plaintiff, were permitted to use the restroom as needed. ADDIKT only required that employees coordinate with their supervisor to ensure the kitchen station was covered during their absence, which is a basic operational necessity in a restaurant.
19. Any employee requiring more frequent meal breaks or rest breaks due to a medical condition or pregnancy was free to present a requested accommodation. To the extent

reasonably possible, ADDIKT would endeavor to accommodate any such request. No such request was made by Plaintiff.

### V. Hours, Scheduling, and Business Decline

20. ADDIKT experienced declining business conditions throughout the period of Plaintiff's employment. Revenue decreased and the restaurant was unable to sustain its operations at prior levels.
21. To the extent any reduction in employee hours occurred during this period, it was part of a company-wide reduction driven by declining business volume that affected all employees, not just Plaintiff. The reduction in hours was not targeted at Plaintiff and was not related to her pregnancy or any protected characteristic.
22. ADDIKT's payroll and scheduling records have been produced in this litigation, confirm that Plaintiff's scheduled hours were comparable to, and in some months exceeded, the hours of other line cooks during the same period.
23. Plaintiff's terms and conditions of employment, including her schedule, rate of pay, and job title, did not change during the approximately four (4) months of her employment with ADDIKT.

### VI. Complaint Handling and Anti-Harassment Compliance

24. When Plaintiff reported a complaint regarding Carvallo in or around November 2023, ADDIKT took the matter seriously. Goat's human resources consultant, Eric Garcia, promptly investigated the complaint, interviewed multiple employees, and counseled Carvallo regarding appropriate workplace conduct. Carvallo subsequently departed from ADDIKT. His departure was not related to Plaintiff's complaint.
25. After the investigation and Carvallo's departure, Plaintiff did not report any further complaints of harassment, discrimination, or retaliation to ADDIKT, to Goat's HR consultant, or through the Employee Handbook's complaint procedures. At no time did Plaintiff report that Chef Vargas was discriminating against her, harassing her, or retaliating against her.
26. ADDIKT did not receive any complaint from Plaintiff, at any time, regarding pregnancy discrimination, failure to accommodate, reduction in hours, or any other unlawful conduct by Chef Vargas or any other supervisor following Carvallo's departure.
27. Eric Garcia, in his role as outside HR consultant, volunteered to visit the ADDIKT restaurant every one to three days after the Carvallo investigation to check in on Plaintiff and ensure no further issues arose. Despite this proactive follow-up, Plaintiff did not raise any concerns.

### VII. Accommodation Requests and Leave

28. Plaintiff did not request any accommodation from ADDIKT related to her pregnancy or otherwise at any time during her employment.

29. ADDIKT granted every request for time off that Plaintiff made. Plaintiff requested and was granted time off from approximately January 10 through January 15, 2024, and again from approximately February 7 through February 12, 2024. No adverse employment action was taken against Plaintiff in connection with either leave request.
30. At no time did any supervisor attempt to demote, discipline, or terminate Plaintiff. At no time did any supervisor deny a request for time off made by Plaintiff.

### VIII. Proactive Maternity Planning

31. Prior to Plaintiff's resignation, ADDIKT had proactively begun planning for Plaintiff's anticipated maternity leave. Although the leave would be unpaid, as ADDIKT, like many restaurants, did not offer paid maternity leave, ADDIKT intended to hold Plaintiff's position and welcome her back following the birth of her child.
32. ADDIKT planned to arrange a designated lactation room within its premises for Plaintiff's anticipated use upon her return to work after giving birth.
33. These proactive steps, taken before Plaintiff raised any complaint about her working conditions, demonstrate ADDIKT's good-faith intent to support Plaintiff through her pregnancy and beyond, not to discriminate against her.

### IX. Plaintiff's Voluntary Resignation

34. On or about February 7, 2024, Plaintiff called in approximately 45 minutes before her scheduled shift to report that she had visited a hospital. ADDIKT granted Plaintiff leave from approximately February 7 through February 12, 2024.
35. While Plaintiff was on this approved medical leave, Chef Vargas contacted Plaintiff to inquire about her anticipated return date. This inquiry was made for scheduling purposes, to ensure the kitchen could be properly staffed. It was not intended to pressure Plaintiff to return or to disregard her medical leave.
36. On or about February 11, 2024, while still on approved leave, Plaintiff voluntarily resigned from her position via text message. No one at ADDIKT asked Plaintiff to resign, suggested that she resign, or took any action intended to compel her resignation.
37. ADDIKT took no efforts to terminate Plaintiff and did not attempt to replace her. ADDIKT continued to place Plaintiff on the schedule and intended for her to continue in her role.

### X. Business Closure

38. ADDIKT permanently ceased all restaurant operations on or about February 23, 2024, approximately two (2) weeks after Plaintiff's voluntary resignation. The closure was due to declining business and financial conditions unrelated to Plaintiff, her pregnancy, her complaint, or this litigation.
39. ADDIKT currently has no employees and no operations. There is no position, job, or business location for any former employee, including Plaintiff, to return to.

40. Even if Plaintiff had not resigned, her employment would have ended no later than February 23, 2024, when ADDIKT permanently closed.

### XI. Employee Count

41. At all times during Plaintiff's employment, ADDIKT employed more than fifteen (15) employees. ADDIKT does not dispute that it meets the statutory employee threshold under Title VII, the PWFA, and the FCRA as it relates to ADDIKT alone. However, ADDIKT's employee count should not be aggregated with GOAT's employee count, as the two entities are entirely separate.
42. ADDIKT has never had fifty (50) or more employees at any time.

### XII. FMLA Eligibility

43. ADDIKT, as a restaurant with fewer than fifty (50) employees, was not required to provide Family and Medical Leave Act ("FMLA") time off. Even if ADDIKT were a covered employer under the FMLA, Plaintiff was ineligible for FMLA leave because she had worked only approximately 627 hours and had not completed twelve (12) months of employment, both of which are required under 29 U.S.C. § 2611(2).
44. Eric Garcia, in his capacity as Goat's HR consultant, accurately communicated Plaintiff's FMLA ineligibility to her. This communication was a factual and legally required notification, not an act of discrimination or retaliation.

### XIII. No Discriminatory or Retaliatory Intent

45. At no time did I, or any ADDIKT supervisor to my knowledge, make any employment decision regarding Plaintiff based on her pregnancy, sex, or any other protected characteristic.
46. At no time did I, or any ADDIKT supervisor to my knowledge, take any adverse action against Plaintiff in retaliation for her complaint about Carvallo or for any other protected activity.
47. The only issues that arose during Plaintiff's employment related to routine workplace performance matters, including food preparation standards, attendance, and compliance with kitchen protocols. These issues were addressed in the same manner as they would have been addressed with any other employee, regardless of pregnancy.
48. ADDIKT thoroughly and proactively investigated all complaints made by Plaintiff. ADDIKT did not, at any time, reject any reasonable accommodation requested by Plaintiff, because no such request was made.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 23, 2026.

_____
Lisa Gonzalez, Owner, WGOAT15 LLC d/b/a ADDIKT